AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Arizona

*AGEN*

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>(1)   **Sony VIOA Laptop Computer**<br>**Pink in Color, Model PCG3G5L**<br>**Serial No. 00148134168911** | ) )<br>)<br>)<br>)<br>)<br>)  Case No.   *13-041 MB* |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search

*(identify the person or describe the property to be searched and give its location)*:
See Attachment A – Location to Collect and Seize Evidence

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B – Item to be Seized and Searched, and the Affidavit Submitted in Support of the Application for the Search and Seizure Warrant Which is Incorporated by Reference Herein

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ *February. 22, 2013*
*(not to exceed 14 days)*

☒ in the daytime  6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge *on criminal duty in Dist. ∥Az.* *(name)*

*N/A* ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____

Date and time issued:   *February 8, 2013 @ 11 AM*   _____
*Judge's signature*

City and state:   Phoenix, Arizona   _____   Honorable Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

**EXHIBIT**
**A**
Blumberg No. 5119

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A - LOCATION TO COLLECT EVIDENCE

The following computer is presently stored within the Tempe Police Department offices located at 120 East 5th Street, Tempe, Arizona, 85281:

(1)     Sony VIOA Laptop Computer, Pink in Color, Model PCG3G5L, Serial No. 00148134168911, Stored Under Tempe Police Department Case No. 12-111699, and Bearing Evidence Tag No. TE122315-1.

The computer may only be collected and seized with the consent and assistance of the Tempe Police Department.

## ATTACHMENT B – ITEM TO BE SEIZED AND SEARCHED

1.      All records contained in the following computer and any internal storage medium contained within, or attached to the computer:

(1)     Sony VIOA Laptop Computer, Pink in Color, Model PCG3G5L, Serial No. 00148134168911, Stored Under Tempe Police Department Case No. 12-111699, and Bearing Evidence Tag No. TE122315-1.

hereinafter the "COMPUTER," relating to violations of 20 U.S.C. § 1097 (Financial Aid Fraud), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 641 (Theft of Government Funds), 18 U.S.C. § 1001 (False Statements), 18 U.S.C. § 1341 (Mail Fraud) and 18 U.S.C. § 1343 (Wire Fraud), committed by Heather Carr and/or Tramell Thomas, and occurring during the period of January 1, 2010 through August 30, 2012, including:

2.      Financial aid applications, financial aid worksheets, financial aid records, tax records, and any other documentation containing the names or personal identifying information for any person related to the subject fraudulent student financial aid scheme in violation of the aforementioned statutes.

3.      Records and information containing items such as personal identifiers not belonging to Heather Carr or Tramell Thomas, IP addresses, electronically stored financial aid applications in names other than Heather Carr or Tramell Thomas, all related to financial aid fraud, in whatever digital form and by whatever means they may have been created or stored.

4.     Bank records, checks, including canceled checks, receipts of deposit or withdrawal, and bank statements.

5.     Employment records or documents pertaining to sources of income.

6.     Telephone bills, business cards, debit card records, credit card records, message books, notes, calendars and appointment books.

7.     Evidence in any format of passwords, user identifications, login identifications that may allow or control access to a computer operating system, individual computer files, or websites.

8.     Indicia of occupancy, residency, rental and/or ownership of the premises located at 1822 East Kaibab Drive, Chandler, Arizona 85249, the residence of Heather Carr or Tramell Thomas.

9.     Any and all digital documentation of debit cards, credit cards, banking information, loan documents, personal identifiers, etc, in the names used in furtherance of a student aid fraud scheme including but not limited to Heather Carr and Tramell Thomas.

10.     For the COMPUTER whose collection and seizure is authorized by this warrant, any:

a.     evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and

2

correspondence;

  b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

  c.  evidence of the lack of such malicious software;

  d.  evidence of the attachment to the COMPUTER to other storage devices or similar containers for electronic evidence;

  e.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

  f.  evidence of the times the COMPUTER was used;

  g.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

  h.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

  i.  records of or information about Internet Protocol addresses used by the COMPUTER;

  j.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k.      contextual information necessary to understand the evidence described in this attachment.

l.      Internal or connected routers, modems, and network equipment used to connect the COMPUTER to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.   Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AGENT

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

In Re:

Search Warrant For:

(1)    Sony VIOA Laptop Computer
       Pink in Color, Model PCG3G5L
       Serial No. 00148134168911

13-041 MB

ORDER TO SEAL

(Under Seal)

Based upon the Motion of the United States of America, and good cause appearing,

IT IS ORDERED that the Application and Affidavit for the Search and Seizure Warrant, the Motion to Seal and this Order are hereby sealed on the grounds that disclosure would jeopardize an ongoing investigation and should remain sealed until further order of this Court.

DATED this 8 day of February, 2013.

MICHELLE H. BURNS
United States Magistrate Judge

JOHN S. LEONARDO
United States Attorney
District of Arizona

FREDERICK A. BATTISTA
Assistant U.S. Attorney
Maryland State Bar Member
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Fred.Battista@usdoj.gov

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | 13-041 MB |
| Search and Seizure Warrant For: | MOTION TO SEAL SEARCH WARRANT APPLICATION AND AFFIDAVIT |
| (1)   Sony VIOA Laptop Computer Pink in Color, Model PCG3G5L Serial No. 00148134168911 | (Filed Under Seal) |

The United States of America moves this Court for an Order sealing the Application and Affidavit for the Search and Seizure Warrant, the Motion to Seal and the Order to Seal in this matter, on the grounds that disclosure would jeopardize an ongoing investigation.

Respectfully submitted this _6th_ day of February, 2013.

JOHN S. LEONARDO
United States Attorney
District of Arizona

FRED BATTISTA
Assistant United States Attorney

# UNITED STATES DISTRICT COURT

### for the

### District of Arizona

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched)* | ) |
| | ) Case No. 13-041 MB |
| (1) Sony VIOA Laptop Computer | ) |
| Pink in Color, Model PCG3G5L | ) |
| Serial No. 00148134168911 | ) |

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Brandon Lewis, a Special Agent with the U.S. Department of Education, Office of Inspector General - Investigation Services, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(describe the property to be searched and give its location)*:

### See Attachment A - Location to Collect and Seize Evidence

located in the _____ District of _____ Arizona _____ , there is now stored
*(Describe the property to be seized)*:

### See Attachment B – Item to be Seized and Searched

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

&#x2612; evidence of a crime;

&#x2612; contraband, fruits of crime, or other items illegally possessed;

&#x2612; property designed for use, intended for use, or used in committing a crime;

&#x2610; a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Sections | Offense Descriptions |
|---|---|
| 18 U.S.C. §§ 371, 641, 1001, 1341 & 1343 | Conspiracy, Theft of Government Funds, False Statements, Mail Fraud and Wire Fraud |
| 20 U.S.C. § 1097 | Financial Aid Fraud |

The application is based on these facts:

### See Attached Affidavit Incorporated by Reference Herein

Continued on the attached sheet.

&#x2610; Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Frederick A. Battista   *FAB*

*Applicant's signature*

Brandon D. Lewis   Special Agen
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 8, 2013

*Judge's signature*

City and state:   Phoenix, AZ

Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A - LOCATION TO COLLECT EVIDENCE

The following computer is presently stored within the Tempe Police Department offices located at 120 East 5th Street, Tempe, Arizona, 85281:

(1)     Sony VIOA Laptop Computer, Pink in Color, Model PCG3G5L, Serial No. 00148134168911, Stored Under Tempe Police Department Case No. 12-111699, and Bearing Evidence Tag No. TE122315-1.

The computer may only be collected and seized with the consent and assistance of the Tempe Police Department.

## ATTACHMENT B – ITEM TO BE SEIZED AND SEARCHED

1.      All records contained in the following computer and any internal storage medium contained within, or attached to the computer:

(1)      Sony VIOA Laptop Computer, Pink in Color, Model PCG3G5L, Serial

No. 00148134168911, Stored Under Tempe Police Department Case

No. 12-111699, and Bearing Evidence Tag No. TE122315-1.

hereinafter the "COMPUTER," relating to violations of 20 U.S.C. § 1097 (Financial Aid Fraud), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 641 (Theft of Government Funds), 18 U.S.C. § 1001 (False Statements), 18 U.S.C. § 1341 (Mail Fraud) and 18 U.S.C. § 1343 (Wire Fraud), committed by Heather Carr and/or Tramell Thomas, and occurring during the period of January 1, 2010 through August 30, 2012, including:

2.      Financial aid applications, financial aid worksheets, financial aid records, tax records, and any other documentation containing the names or personal identifying information for any person related to the subject fraudulent student financial aid scheme in violation of the aforementioned statutes.

3.      Records and information containing items such as personal identifiers not belonging to Heather Carr or Tramell Thomas, IP addresses, electronically stored financial aid applications in names other than Heather Carr or Tramell Thomas, all related to financial aid fraud, in whatever digital form and by whatever means they may have been created or stored.

4.     Bank records, checks, including canceled checks, receipts of deposit or withdrawal, and bank statements.

5.     Employment records or documents pertaining to sources of income.

6.     Telephone bills, business cards, debit card records, credit card records, message books, notes, calendars and appointment books.

7.     Evidence in any format of passwords, user identifications, login identifications that may allow or control access to a computer operating system, individual computer files, or websites.

8.     Indicia of occupancy, residency, rental and/or ownership of the premises located at 1822 East Kaibab Drive, Chandler, Arizona 85249, the residence of Heather Carr or Tramell Thomas.

9.     Any and all digital documentation of debit cards, credit cards, banking information, loan documents, personal identifiers, etc, in the names used in furtherance of a student aid fraud scheme including but not limited to Heather Carr and Tramell Thomas.

10.    For the COMPUTER whose collection and seizure is authorized by this warrant, any:

a.     evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and

2

correspondence;

b.      evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.      evidence of the lack of such malicious software;

d.      evidence of the attachment to the COMPUTER to other storage devices or similar containers for electronic evidence;

e.      evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

f.      evidence of the times the COMPUTER was used;

g.      passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h.      documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

i.      records of or information about Internet Protocol addresses used by the COMPUTER;

j.      records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

3

k.    contextual information necessary to understand the evidence described in this attachment.

l.    Internal or connected routers, modems, and network equipment used to connect the COMPUTER to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

SWORN AFFIDAVIT OF BRANDON LEWIS

I, Brandon Lewis, being duly sworn, depose and state:

I.    INTRODUCTION

A.    Professional Background

1.    I am a Special Agent with the United States Department of Education (ED), Office of Inspector General (OIG) - Investigation Services (ED-OIG). I am presently based in Phoenix, Arizona, but am also assigned to investigate allegations of fraud occurring in the Western Region of the United States, including, but not limited to, California, Colorado, and New Mexico. I have been employed in this position since May, 2010.

2.    Prior to my employment with ED-OIG, I graduated from the United States Postal Inspection Service law enforcement academy where I received instruction regarding the investigation of mail fraud and other federal criminal offenses. Upon graduating from the academy, I was employed as a Postal Inspector and as Special Agent with the Bureau of Land Management for nearly six years and conducted complex white-collar fraud investigations. During nearly nine years as a federal agent, I have been the affiant on numerous search warrants, most of which included the search and seizure of computers and electronic storage devices that were used to store, process, and transmit data during the commission of various fraud schemes.

3.    As part of my official duties as a Special Agent, I am authorized to conduct investigations in connection with the enforcement and administration of all laws, regulations,

1

orders, contracts, and programs to which ED is or may be a party of interest, and to perform other duties on behalf of the Secretary of Education. As a Special Agent, I have participated in investigations of various types of crimes including grant fraud, student loan fraud, and mail fraud. I have also worked closely with, and learned from, other federal agents who are experienced in investigating criminal cases, making arrests, executing search warrants, and in the seizure, acquisition, and recovery of electronically-stored evidence.

4.     Based on my training and experience and through my personal participation, as well as information received from other law enforcement sources, I have become familiar with the facts and circumstances of this investigation. The information set forth in this affidavit reflects my personal knowledge or has been provided to me by my colleague, Special Agent Sandra Ennis, who told me she received some of this information from other law enforcement agencies, sources, victims, and other interested parties who have themselves obtained the information and subsequently reported it to her. Special Agent Sandra Ennis also received information through the review of various database searches and institutional documents. Conclusions set forth below are the result of the investigation as communicated to me by Special Agent Sandra Ennis and do not purport to set forth all of her knowledge into this matter. This affidavit is presented for purposes of establishing a basis for a search and seizure warrant to seize and search the digital evidence in the form of a Sony Vaio laptop computer that is currently in the custody of the State of Arizona's Tempe Police Department as further described in Attachment A - Location to Collect and Seize Evidence and

Attachment B - Item to be Seized and Searched, incorporated by reference herein.  As detailed below, I have probable cause to believe records kept on this computer are evidence of fraud perpetrated by Heather Carr and/or Tramell Thomas.

II.     OVERVIEW OF THE ALLEGED CRIME

5.      This investigation began in approximately December, 2011, when the Financial Aid Director of Pikes Peak Community College in Colorado Springs, Colorado, reported to ED-OIG that the school had received student enrollment and Federal Student Aid (FSA) financial aid applications for approximately sixteen (16) students who represented themselves as residing in the Colorado Springs, Colorado area.  Indications of fraud with respect to these sixteen (16) applications included common last names, common mailing addresses, representations of zero income, and multiple dependent family members.

6.      A review of various law enforcement databases, including an inmate search of the various state Department of Corrections (DOC) websites for these applicants, disclosed that all sixteen (16) applicants were incarcerated at various DOC facilities located in Arizona, Colorado, Illinois, Ohio, and Florida and would therefore be ineligible to receive FSA.

7.      Further investigation into the initial complaint from Pikes Peak Community College disclosed from approximately January, 2010 through the present, approximately two-hundred and thirty-five (235) FSA applications were electronically submitted for potential enrollment at various community colleges in Colorado and Arizona.  All but twenty-one (21) of these two hundred and thirty five (235) individuals listed as applicants

3

are currently incarcerated at various DOC facilities and were incarcerated during the electronic submission of these FSA applications.   Five (5) of these twenty-one (21) individuals are former inmates from the Colorado Department of Corrections.   These applicants received or attempted to receive FSA for which they are not eligible.   Many of these applicants shared similar course enrollments and fell into similar patterns such as entering zero income and multiple dependents on their Free Application for Federal Student Aid (FAFSA).   Many of these electronically submitted applications shared the same mailing addresses and many of the same characteristics including the same FSA Personal Identification Number (PIN) and FSA PIN challenge question and answer.   These are all indicators of potential FSA fraud.

8.      The Internet is a global network of computers and other devices.  Every device on the Internet is identified by a unique number called an Internet Protocol, or "IP" address. This number is used to exchange even the smallest amount of information.  Accordingly, when one computer requests information from a second computer, the requesting computer specifies its own IP address so that the responding computer knows where to send its response.   An IP address is analogous to a telephone number.

9.      Based on IP activity and corresponding physical addresses obtained, there is probable cause to believe individuals residing at 1822 East Kaibab Drive, Chandler, Arizona 85249 (Heather Carr and Tramell Thomas), have electronically submitted FAFSA and Master Promissory Note (MPN) applications using the identities of individuals to receive or attempt

4

to receive FSA funds. It appears that upon obtaining the identifying information of approximately two-hundred and fourteen (214) prison inmates from various Department of Corrections (DOC) locations, either through consent or from the unlawful procurement of this information, Carr, Thomas, and others, known and unknown to this investigation, have knowingly enrolled or attempted to enroll prison inmates at community colleges in Colorado and Arizona and filed applications on their behalf for FSA.

10.     As explained more fully below, FSA funds are normally disbursed on behalf of the student to the school. The school applies the funds to the student's account at the school, and any award amount that exceeds the cost of tuition and fees is normally given directly to the student, by the school in the form of a refund. The student's refund can be used to assist the student in paying for living expenses while attending school. Refunds are disbursed in the form of a debit card, a check, or electronic transfer to an outside account.

11.     To date, approximately $562,466.00 in FSA funds have been disbursed to various community colleges under false pretenses, resulting in approximately ninety-one (91) of the potential two hundred and thirty five (235) applicants receiving FSA refunds in the form of a debit card. Approximately $247,676.10 in debit card refunds has been mailed to applicants at one of approximately forty (40) suspect addresses. Although the applicants use different mailing addresses, IP activity collected from ED disclosed applications submitted for approximately seventy-two (72) individuals has traced back to 1822 East Kaibab Drive, Chandler, Arizona 85249, which is the residence of Carr and Thomas.

III.     OVERVIEW OF THE STUDENT AID PROGRAM

A.     Student Aid Eligibility

12.     In order to be eligible for Federal Financial Assistance under Title IV of the Code of Federal Regulations, including funding under the Federal Pell Grant Program and Federal Family Education Loan (FFEL) programs, students are required to meet federal eligibility requirements, which include among others that the student:

a.     Is a regular student enrolled, or accepted for enrollment, in an eligible program at an eligible institution (34 C.F.R. § 668.32 (a)(2)).

b.     For purposes of the FFEL and Direct Loan Programs, is at least a half-time student.

c.     For the purposes of the Federal Pell Grant Program, Federal Perkins Loan, FFEL, and Direct Loan Programs, is not incarcerated in a Federal or State penal institution (34 C.F.R. §§ 668.32 (c)(2) and 668.32 (c)(3)).

13.     Students apply for the above listed federal financial aid programs each academic year by submitting a FAFSA which contains material representations pertaining to the student's need and eligibility, such as income level, dependency status, and marital status.   The student may mail the FAFSA to an ED processing center or transmit it electronically via the Internet.   Alternatively, the school may electronically transmit the FAFSA to a processing center contracted with ED.   Processing of the FAFSA occurs at the Central Processing System (CPS), which is located in Plano, Texas.   After processing is

6

complete, the CPS produces output documents or records that show the information the student originally provided. Colleges may require additional supporting documentation relating to an individual's application for financial aid for verification purposes.

14. Information captured on the FAFSA at the time of the on-line application, includes name, date of birth, SSN, address, telephone number, email address, and IP address. The CPS uses the application data to calculate the Expected Family Contribution (EFC), which is used to determine financial aid eligibility and amount of aid to be awarded. Relying on representations made on the FAFSA, ED determines how much the student and/or the student's family is able to pay towards the cost of attendance. Schools award financial aid based on or up to the cost of attendance and offer those funds to students at the beginning of each enrollment period. Students may elect to receive all or a portion of their financial aid award, and must notify the school of their decision.

15. After a student accepts his or her financial aid award, FSA funds are normally disbursed on behalf of the student to the school where the student is enrolled. The school applies the funds to the student's account at the school, and any award amount that exceeds the cost of tuition and fees is normally given directly to the student, by the school, in the form of a refund. As noted, refunds are disbursed in the form of a debit card, a check, or electronic transfer to an outside account. If issued a refund check, the school will mail the check to the student's address on record with the school or it can be picked up in person, depending on the school's internal procedures.

16.     Should an individual falsify information relating to obtaining a high school diploma or its equivalent, fail to complete courses or withdraw from courses, or fail to maintain satisfactory academic progress, the individual would become ineligible for further federal financial aid and would be required to repay any funding previously received. The accuracy of the information provided by the individual during the application process is important because it is used to determine eligibility for federal financial aid. The FAFSA also includes a warning that by purposely providing false and misleading information, the applicant may receive a fine up to $20,000, a prison sentence, or both.

B.     Federal Loan Programs and Colorado Community Colleges

17.     The Colorado Community College System (CCCS) operates a website called www.ccconline.org. This website allows a prospective student to create an on-line account which collects basic information such as name, address, email address, telephone number, and Social Security Number required for admission to all community colleges in Colorado. Community colleges within the CCCS deliver some of their courses in an on-line distance learning format.

18.     It is the policy of community colleges in the CCCS to use a contracted vendor, "Higher One" to process the student's financial aid refunds. CCCS students can receive their refund from Higher One in three ways: (1) Easy Refund – the funds will be available within 24 hours to the student in the form of a Higher One Bank debit card that is mailed to the student's address; (2) EFT Transfer – Higher One will electronically wire the refund to the

8

student's own independent bank account within 2-3 business days; or (3) Paper Check –
Higher One will prepare and mail a paper check for the refund within 21 days.  A paper
check will automatically be issued if the Higher One card is never activated.

IV.    Execution of Search Warrant at 1822 East Kaibab Drive, Chandler, Arizona 85249.

19.    On November 27, 2012, United States Magistrate Judge Bridget Bade
authorized a search warrant for the premises of 1822 East Kaibab Drive, Chandler, Arizona
85249.  Case No. 12-7626MB.  This warrant was executed by Special Agents from ED-OIG,
Postal Inspectors from the United States Postal Inspection Service (USPIS), and entry
assistance from Chandler Police Department.  Investigation and information received from
the United States Postal Service (USPS) confirmed Carr and Thomas were residing at 1822
East Kaibab Drive, Chandler, Arizona 85249.

20.    During search warrant entry, law enforcement officers made repeated knock
and announce attempts requesting that occupants of the premises answer the door.  After a
lengthy delay and the use of a flash bang device, the door was answered by one of the
occupants.  Upon entry into the premises, law enforcement officers discovered pieces of
paper floating in the toilet and a destroyed cell phone in one of the master bedroom closets.
These items were taken into evidence and a later review of the scraps of paper disclosed
common FSA acronyms such as FAFSA, MPN (Master Promissory Note), and SAR (Student
Aid Report) written on the various scraps of paper.  The name Byanca Johnson was also
written on one of the scraps of paper.  Johnson is currently incarcerated in the Florida DOC.

9

21.    Evidence recovered at the search warrant premises connect Carr and Thomas to the allegations of FSA fraud occurring at community colleges located in Arizona and Colorado. Specifically, various Pikes Peak Community College application documents that were in the names of incarcerated individuals, documents containing personal identifying information for prison inmates, and/or for other individuals not known to reside at 1822 East Kaibob Drive, Chandler, Arizona 85249, were found in the premises.

22. This search warrant, recorded under Case No. 12-7626MB, remains under seal.

V.    Evidence Associated with the Arrest of Tramell Thomas

23.    On or about December 6, 2012, the Financial Aid Director of Pikes Peak Community College advised Special Agent Sandra Ennis that the CCCS office had been contacted by Tempe Police Department Sergeant Rick Vasquez.

24.    On or about December 6, 2012, communication with Sergeant Vasquez conveyed Tempe Police Department arrested Tramell Thomas for possession of marijuana and an open container of alcohol in the passenger compartment of a vehicle on or about August 30, 2012. Initially, Thomas had been stopped for a traffic violation.

25.    During initial contact with Thomas, the arresting officer observed a Ziploc baggie with what appeared to be approximately fifty (50) credit cards in the back seat of the vehicle. The arresting officer asked Thomas what was in the bag and pointed toward the back seat. The arresting officer asked for Thomas to hand him the bag. Thomas replied "Sure" and grabbed the bag containing what appeared to be credit cards and placed the bag

on the floorboard.  Thomas then picked up an empty Ziploc bag that was already on the floorboard.  Thomas handed the arresting officer the empty bag.

26.     Back up was requested and the arresting officer asked the backup officer to have the narcotic detection K9 do an exterior sniff of the vehicle based on Thomas' suspicious behavior.  The K9 alerted on the driver door by scratching on it.  With the exterior alert, the K9 was sent into the vehicle, where the K9 alerted on the center console and the bottom of the rear seat on the passenger side.  As a result of the K9 alerts, a search of the vehicle was conducted.  A usable quantity of marijuana was located in the center console, which led to the arrest of Thomas for possession of marijuana.

27.     During the search of the vehicle incident to Thomas's arrest, a Sony Vaio laptop computer, a described in Attachment A - Item to be Collected and Seized, and the Ziploc baggie containing the fifty-two (52) MasterCard credit/debit cards were located in the back seat of the vehicle.  Each debit card was in a name different than Thomas's and all but two of the debit cards had the name "Colorado Community College System" printed on the top of the card.  Upon Thomas's arrest, the Sony Vaio laptop computer was subsequently impounded for safekeeping.

28.     Tempe Police Department confirmed Thomas's residence as 1822 East Kaibab Drive, Chandler, Arizona 85249.  Investigation and IP activity has disclosed numerous FAFSA and MPN applications using the identities of incarcerated individuals to receive or attempt to receive FSA funds have been electronically submitted from this address. Thomas

11

was driving a vehicle registered to his girlfriend, Heather Carr at the time of his arrest. Carr is also known to reside at 1822 East Kaibab Drive, Chandler, Arizona 85249.

29.     None of the fifty-two (52) debit cards contained in the Ziploc baggie were in the name of Heather Carr or Thomas. When questioned about the fifty-two (52) debit cards, Thomas initially stated that he didn't know what the officer was talking about. Thomas then stated he did not want to talk about it and would not respond to any further questions.

30.     During the search of the vehicle, the officer located the wallet Thomas had removed from his pocket when providing his driver's license. This wallet would accompany Thomas to jail, so a search of the wallet was conducted. The wallet contained several credit cards with Thomas's name on them. Also inside the wallet, was a MasterCard debit card bearing the name "Manuel Abate." This card had the same "Colorado Community College System" printed on it as the other cards in the Ziploc baggie. This debit card, along with all debit/credit cards that did not belong to Thomas, were seized and impounded as evidence.

31.     On or about October 2, 2012, the Financial Aid Director of Pikes Peak Community College provided ED-OIG with names of applicants and students which appeared questionable. Investigation into these applicants disclosed one individual named "Manuel Abate." FSA funds in the amount of $6,138 were disbursed in the name of "Manuel Abate" to attend Pikes Peak Community College. Approximately $4,746.10 was refunded in the name of "Manuel Abate" in the form of a debit card. A search of Manuel Abate through various law enforcement databases and an inmate search of the Florida DOC website

disclosed Manuel Abate is currently incarcerated in a Florida DOC facility.

32.     On or about January 8, 2012, a review of IP address data collected from ED websites disclosed an electronic application for "Manuel Abate" traced back to IP address 68.2.27.159.  Cox Communications Inc., confirmed subscriber information for IP address 68.2.27.159 to be that of Ayanna Jones at 1822 East Kaibab Drive, Chandler, Arizona 85249. Ayanna Jones is the daughter of Heather Carr.

VI.     Evidence Associated with 1822 East Kaibab Drive, Chandler, Arizona 85249

33.     To date, IP data collected from ED when the student accessed either the FAFSA submission or the FAFSA PIN websites disclosed that applications submitted for approximately seventy-two (72) individuals traced back to the same IP address of 68.2.27.159 which Cox Communications Inc., has confirmed subscriber information for IP address 68.2.27.159 to be that of Ayanna Jones at 1822 East Kaibab Drive, Chandler, Arizona 85249.

34.     Approximately $29,335 in FSA funds in the form of debit cards has been disbursed to twenty-three (23) of the approximately seventy-two (72) applicants using the common IP address of 68.2.27.159.  All but three (3) of the seventy-two (72) applicants who have received or attempted to receive FSA funds are currently incarcerated at various DOC facilities and are ineligible to receive FSA funds.

35.     Based on training, experience, and information provided in the aforementioned paragraphs, there is reason to believe that Carr and Thomas are utilizing the identities of

incarcerated individuals to electronically apply for FSA that they would be ineligible to receive and that information such as names, Social Security numbers, and dates of birth are maintained by the perpetrators to be used year after year.

VII.    PROPERTY TO BE SEARCHED AND ITEMS TO BE SEIZED

36.    This affidavit is in support of an application for issuance of a search and seizure warrant to seize and search the digital device, i.e. the subject Sony Vaio Laptop computer, found in the back seat of the vehicle that is registered to Carr and that Thomas was driving when he was arrested on August 30, 2012.  I believe there is probable cause that evidence, fruits, and instrumentalities of violations of 20 U.S.C. § 1097 (Financial Aid Fraud), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 641 (Theft of Government Funds), 18 U.S.C. § 1001 (False Statement to a Government Agency), 18 U.S.C. § 1341 (Mail Fraud), and 18 U.S.C. § 1343 (Wire Fraud), will be found on the digital device which is described in Attachment A – Item to be Collected and Seized.

a.    The subject digital device has not been used since it was recovered on August 30, 2012, and was impounded for safekeeping by Tempe Police Department.  The current physical location of where the laptop is being held is Tempe Police Department at 120 East 5th Street, Tempe, Arizona, 85281.

37.    From my background and experience I know that individuals, including persons engaged in illicit activities and/or fraud, frequently retain records of their transactions within their residence, computers, vehicles, and other places under their control.

These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts, bank statements, tax documents, school records, and other miscellaneous records. Records of this kind are often stored on computer media.

38.     The forensic examination of a computer will not only reveal IP addresses of additional computers that the seized computer has communicated with, but will also reveal websites visited, including Federal Student Aid (FSA) websites, and electronic communications with other individuals involved in the scheme to defraud the United States Government of FSA monies described above.

VIII.   Search and Seizure of Electronic Devices

39.     Probable cause to search computers: I submit that there is probable cause to believe that records related to the FSA fraud ring will be stored on that computer or storage medium, for at least the following reasons:

a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media – in particular, computers' internal hard drives – contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.   To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files.   Computer users typically do not erase or delete this evidence, because special software is typically required for that task.   However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

40.   Forensic evidence: As further described in Attachment B – Item to be Seized and Searched, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence

16

will be on this computer because:

      a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

      b.      Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

      c.      A person with appropriate familiarity with how a computer works can, after

17

examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.      I know that when an individual uses a computer with respect to on-line learning (that is, for financial aid applications, enrollment and coursework), the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be

a storage medium for evidence of crime.  From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

41.    Necessity of seizing or copying entire computers or storage media – in most cases, a thorough search for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. Seizure is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

a.    The time required for an examination:  The site location of the subject laptop computer is the Tempe Police Department in Tempe, Arizona.  However, as noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the

19

volume of data stored, and would be impractical and invasive to attempt on-site.

b.      Technical requirements:  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.      Variety of forms of electronic media:  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

42.     Nature of examination:  Based on the foregoing, and consistent with Rule 41(e)(2)(B), when persons executing the warrant conclude that it would be impractical to review the media on-site, the warrant I am applying for would permit seizing or imaging storage media that reasonably appear to contain some or all of the evidence described in the warrant, thus permitting its later examination consistent with the warrant.  The examination may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

IX.    CONCLUSION

43.    For the reasons stated above, I believe that probable cause exists to seize and

search the digital device for evidence, fruits, and instrumentalities of violations of 20 U.S.C.

§ 1097 (Financial Aid Fraud), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 641 (Theft of

Government Funds), 18 U.S.C. § 1001 (False Statements), 18 U.S.C § 1341 (Mail Fraud) and

18 U.S.C. § 1343 (Wire Fraud).   Accordingly, I respectfully request that the Court issue the

requested search and seizure warrant.

BRANDON LEWIS
Special Agent
United States Department of Education
Office of Inspector General


Subscribed and sworn to before me this _8th_ day of _February_ , 2013,

MICHELLE H. BURNS
United States Magistrate Judge

21