IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00054-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2.**    **TRAMMEL THOMAS,**

    Defendant.

---

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT TRAMELL THOMAS'S "MOTION TO SUPPRESS #1" (ECF NO. 181)

A uniformed patrol officer observed the defendant in a car trying to hide a clear plastic baggie filled with a large stack of debit cards, which the defendant obtained from his scheme to defraud the Department of Education. The defendant has asked the Court to prevent a jury from seeing this evidence on the grounds that the police extended the stop on a pretext and used the time to get a drug dog to sniff the car. The defendant ignores the fact that the K-9 officer and dog arrived on the scene three minutes into the stop. Despite well-established precedent allowing the police to investigate when they witness a crime, the defendant argues that a police officer — who saw the defendant's car drifting in its lane late at night, observed the defendant's bloodshot, watery eyes, and smelled alcohol wafting from his open window, and who saw the defendant deliberately try to hide a large stack of credit cards — did not have reasonable and articulable suspicion to believe that the defendant was drinking and driving and possibly in possession of stolen property. The police *did* have reasonable suspicion to investigate these crimes, and the defendant's generalized citations to Fourth Amendment cases do not explain why the Court should suppress evidence.

1

For these reasons, and for the additional reasons set forth below, the United States of America (the government), by Robert C. Troyer, Acting United States Attorney, through Martha A. Paluch and Bryan D. Fields, Assistant United States Attorneys, respectfully submits this response in opposition to Defendant Tramell Thomas's "Motion to Suppress #1" (ECF No. 181) (hereinafter the "Motion to Suppress").

I.      **SUMMARY OF ISSUES PRESENTED**

1.      **Did Tempe Police Officer Jonathan Seal have reasonable and articulable suspicion that the defendant, drifting in his lane, late at night, in a car that smelled of alcohol, was engaged in an alcohol-related traffic violation?**  The answer is "yes." And, as set forth in more detail below, this means that the officer had a constitutionally valid reason to extend the traffic stop to investigate the violation.

2.      **Did Tempe Police Officer Jonathan Seal have reasonable and articulable suspicion that the defendant — who ignored a question about a large bag of credit cards in his back seat and then, when asked to hand that bag to Officer Seal, tried to sweep it onto the floorboard and fob off a separate, empty bag, as the one that was of interest — was engaged in some sort of theft?**  The answer is "yes," and just as with the question above, this also provided the officer with a constitutionally valid reason to extend the traffic stop to investigate this violation.

3.      **Was it reasonable for Tempe K-9 Police Officer Jason Papke's certified drug detection dog to sniff the defendant's car when Officer Papke and the dog arrived on the scene soon after the stop and the dog sniff did not independently extend the stop more than was already the case for the investigations described above?**  The answer is "yes." The dog sniff did not independently extend the duration of the officer's investigations which were based

2

on reasonable and articulable suspicion, and was therefore permissible.

**4.      Did the positive alert of a certified drug detection canine provide probable cause to search the defendant's car?** The answer is "yes." Supreme Court and Tenth Circuit precedent clearly establishes that a properly trained dog's positive alert provides probable cause to search a vehicle. And, under the equally well-established "automobile exception" to the warrant requirement, probable cause is all that is required for the police to search a car.

**5.      Was the seizure of the laptop legal, despite the time the laptop was in Tempe Police Department's custody?** The answer is "yes." The Department of Education was notified on December 6, 2012, of the defendant's arrest and the seizure of the evidence from his car. The government obtained a warrant to seize this evidence from the Tempe Police Department on February 8, 2013, two months later. The search was not stale as the evidence was stored in the Tempe Police Department's evidence locker and therefore its location was known.

**6.      Is the defendant entitled to an evidentiary hearing on his motion to suppress?** The answer is "no" given the issue presented is a legal, not factual, one. In addition, the attached audio and transcript of the stop, along with the officers' reports, provide the Court with the best evidence to determine the validity of the search of the vehicle.

II.     **FACTUAL PROFFER – THE AUGUST 30, 2012 TRAFFIC STOP**[1]

Uniformed police officer Jonathan Seal was patrolling the streets of Tempe, Arizona during the wee hours of August 30, 2012, when he saw a white sedan drifting in its lane — a classic indicator of drunk driving. While following the sedan as it drifted to and fro, Seal eventually saw it drift onto the double-yellow line separating the car from oncoming traffic. Seal turned on his lights, and pulled the car over. It was 2:44 in the morning,[2] so he used his spotlight to illuminate the car, flicked on his flashlight, and walked to the driver's side door.

Officer Seal was greeted by the distinct odor of alcohol wafting from the open window. Moreover, the driver in the car had the bloodshot and watery eyes common to someone who had been drinking alcohol. A check of the driver's license revealed that those eyes belonged to the defendant, Trammel Thomas. "I don't drink," he told the officer. *See* Original Officer Narrative, MOA_00000463 (**Attachment 2** (MOA_00000452-472)).

Seal suspected he did. But something else caught Seal's eye. As he used the flashlight to

---

[1] The proffer in this brief is submitted for the purpose of aiding the Court in making evidentiary decisions prior to trial. It is not a full proffer of the evidence the government intends to present at trial and cannot serve as a basis to challenge the factual sufficiency of the government's case. *See, e.g., United States v. Binday*, 908 F. Supp. 2d 485, 490 (S.D.N.Y. 2012) ("'Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial,' any inquiry into the sufficiency of the evidence or assertions of fact contrary to those alleged in the indictment is inappropriate.") (quoting *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998)); *United States v. Urso*, 369 F. Supp. 2d 254, 259 (E.D.N.Y. 2005) (finding that government's memorandum, which briefly summarized the anticipated trial evidence and was submitted for the sole purpose of supporting its motion for pretrial detention, constituted a "limited proffer," not a "full proffer").

2 Specific times referenced in this proffer are pulled from the Tempe Police Department's "CAD Call Hardcopy," a contemporaneous log of events created by police dispatch during the events in question. It is attached to this report as **Attachment 1** (MOI_00000490-495) and is referred to in this response as the "CAD report." Seal initially stopped the defendant at 2:40 a.m., but then asked the defendant to pull over into a safer location, which he accomplished at 2:44 a.m..

4

illuminate the scene and look for other occupants or safety threats in plain view, the beam of the flashlight caught an unusual sight in the back passenger's seat, just across from the driver and within his easy reach. It was a large stack of "credit"[3] cards, clearly identified by a string of numbers across the plastic face of the card on top and the ubiquitous "MasterCard" logo. Seal asked the defendant what was in the bag. The defendant looked into his backseat, looked back at Seal, and ignored the question. Seal then asked the defendant to hand him the bag. The defendant moved as if to comply with the request and reached over to the cards. However, instead of grabbing the bag and handing it to the officer, he casually swept it onto the floorboard, grabbed an empty plastic bag that was already on the floor, and handed the officer an empty bag.

The empty-bag ruse immediately raised Seal's suspicion. Suspecting that he had stumbled onto something other than a routine stop for driving under the influence, Seal decided that the stack of credit cards the defendant was trying to sweep away from discovery needed to be investigated. Just one minute into the stop, at 2:45 a.m., Seal called dispatch for backup and dispatch assigned an officer to respond. However, K-9 officer Jason Papke, who happened to be closer to the stop and who was listening to the radio traffic, called into dispatch that he would be responding to the call. Papke and his trained drug detection canine, "Neo," arrived just two minutes later, at 2:47 a.m.

By the time Papke arrived at the scene, Seal had decided to remove the defendant from the car so that he could safely investigate. Pursuant to police protocol, the defendant was handcuffed and asked to sit on the sidewalk. At 2:50 a.m., Seal also began using a handheld

---

3 They were actually debit cards, but "credit card" is the most popular colloquialism for referring to these devices and Seal's report refers to them as credit cards. This motion uses the two terms interchangeably because the credit or debit distinction has no legal significance on the outcome of this motion.

5

audio recorder to record his interactions with the defendant. *See* Audio Recording of August 30, 2012 Traffic Stop, Synched with Transcript (**Attachment 3**) ("Rec.").[4] A few minutes later, Officer Patrick Shearan, the officer originally assigned by dispatch, also arrived at the scene.

As part of his investigation into the suspected drunk driving, Officer Seal performed a horizontal gaze nystagmus ("HGN") test, which is a standard field test used to determine whether someone is impaired. Tr. 8 – 10. The test was negative. However, since he was already at the scene with K-9 Neo and it would not unreasonably prolong the as-yet-incomplete investigation into the credit cards, Papke asked Seal if Neo could sniff the car. Seal agreed and, again pursuant to police protocol, the officers moved the defendant away from the car before Neo was moved around it. Tr. 11. Out of an abundance of caution, Seal also used this time to read the defendant his *Miranda* rights before interviewing him about the credit cards. Tr. 12-13.

After the defendant acknowledged that he understood his rights, Seal reminded the defendant that he had asked to see the bag of credit cards and twice asked the defendant "what's the deal with those credit cards?" Tr. 13 and 14. The defendant avoided the question each time, generally protesting the stop and denying having any drugs. While Seal asked these questions, Papke and Neo walked around the car. As Neo approached the driver's side door, he pawed at the door — an "alert" that Papke was trained to recognize as a signal that Neo smelled a substance he was trained to recognize (methamphetamine, marijuana, heroin and cocaine) — and

---

4 This attachment, the synched transcript, will be provided to the Court and counsel this same date on a disk. The recording begins with Seal using a phonetic alphabet to report the defendant's name and date of birth to dispatch for the purpose of running routine checks related to the status of the defendant's license and any outstanding warrants. The CAD Report notes this occurrence at 2:50 a.m. This means that if the parties or the Court want to determine how long into the stop something occurred, they can simply add approximately 6 minutes to the time stamp in the recording (that is, the stop was at 2:44 and the recording started at 2:50, which means that, say, 2 minutes into the recording is 8 minutes into the overall stop).

Papke opened the door. Tr. 15 (Thomas: "you got the dog going against my car."). Inside the car, Neo pawed at the center console — another "alert" signaling that Neo smelled a drug. Seal continued to question the defendant about the credit cards and the defendant continued to avoid the question, or deny the presence of any credit cards.

After Papke informed Seal of the results of the dog sniff, Seal searched the car. In the center console, he found the marijuana that had alerted Neo. On the front passenger floorboard, he found a 20-ounce orange plastic cup. The cup, which was about three-quarters full, smelled strongly of alcohol and was cold to the touch. It was also not secured or braced against anything, which strongly suggested that it was moved onto the floorboard just before the stop in an effort to hide it and that it would have tipped over if it had been so positioned when the car was moving. Finally, Seal found the plastic bag with the credit cards he had seen the defendant try to hide, along with a laptop computer.

Seal again confronted the defendant with the cards (that Thomas had previously denied having), but the defendant continued to elide responsibility, either by avoiding questions or by answering questions with cryptic answers suggesting that the cards were "not a big deal" or that the officer might understand "if you do my job and what I do." Tr. 24. Ultimately, the defendant was arrested for possession of marijuana and for having an open container of alcohol in his car. *See* **Attachment 4** (MOI_00000447-451) at MOI_00000450 (MOI of Officer Seal: "Having a useable amount of marijuana is a felony arrest-able offense and arrest is not discretionary" in Arizona). Because there was no one else with the defendant who could drive the defendant's vehicle, the vehicle was towed pursuant to Tempe Police Department policy, and therefore, was subject to an inventory search prior to towing. *Id.* at 1. The bag of credit cards and laptop were seized and placed into evidence at the Tempe Police Department. The

7

Department of Education was notified of the defendant's arrest and of the evidence seized from his vehicle on December 6, 2012.  **Attachment 5** (MOA_00000452).

### III. THERE IS NO BASIS TO SUPPRESS THE EVIDENCE BECAUSE A CERTIFIED DRUG DETECTION CANINE'S ALERT PROVIDED PROBABLE CAUSE AND THE USE OF THE CANINE DID NOT INDEPENDENTLY OR UNREASONABLE EXTEND THE TAFFIC STOP

Officer Seal searched the defendant's car only after a drug dog alerted and gave him probable cause to believe the car contained contraband.  And that dog sniff occurred while Seal was investigating his reasonable and articulable suspicion that the defendant was a drunk driver with stolen property.  Accordingly, the search was valid and the Court should deny the defendant's motion.

#### A. Officer Seal Had Objectively Reasonable and Articulable Suspicion to Believe that the Defendant was Up to No Good:  He was Drinking and Driving and He Was Committing a Theft

The defendant was caught red-handed while transporting the fruits of his fraud scheme: 52 debit cards, all in the names of other people, which names all turned out to be those of prison inmates.  An officer saw that stack of cards in plain view, saw the defendant deliberately try to hide them, and then watched as the defendant tried to pass off an empty bag as a ruse.  Under these circumstances, Seal had reasonable and articulable suspicion that the defendant was committing some kind of theft or identity crime.  It follows that he had lawful authority to extend the traffic stop to investigate that crime.

A traffic stop is a "seizure" that is analyzed under the rubric established by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Doyle*, 129 F.3d 1372, 1375 (10th Cir. 1997).  Here, the defendant concedes that the initial stop was permissible.  And he does not dispute or otherwise quibble with the officer's authority to look into the vehicle and observe what might be in plain view.  The defendant instead argues that Seal's initially legal stop became

8

illegal when he "abandoned his investigation of the driving offense" and asserts that the "use of the drug detection dog Neo was an illegal effort" to gain entry into the vehicle. Motion at 4. Neither claim has merit.

A dog sniff on the exterior of a car during a lawful traffic stop is not a "search" at all because a sniff in those circumstances can *only* reveal evidence of contraband for which there is no legitimate privacy interest. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Thus, the issue is not the *search*; it is the *seizure* of the defendant's person and whether the seizure was unreasonably extended. It was not.

The defendant ignores the well-established rule that a stop may be extended when an officer "has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring." *United States v. Moore*, 795 F.3d 1224, 1228 (10th Cir. 2015). Here, Seal had reason to suspect, and evidence to articulate, two possible criminal endeavors: driving under the influence of alcohol (or driving with an open container of alcohol) and theft.

As to the first, it was reasonable to suspect that the defendant might either already be driving while impaired, or well on his way towards that point: Seal could articulate that the defendant was drifting in his lane (a classic sign of drunk driving), very late at night (the typical time for those inclined to make their way home from drinking establishments), had bloodshot, watery, eyes (another sign of drinking), and that the car itself smelled of alcohol. Any objectively reasonable officer would have extended the stop of such a person to investigate and make sure that the person was safe to drive.

As to the second crime, it was reasonable to suspect that the defendant was engaged in some sort of theft. The officer saw in plain view a large stack of credit cards in a clear plastic bag. This is not typical cargo: in an increasingly paper-less age, such a stash might as well be

9

the equivalent of a large bag of dollar bills. But that is not all. When the officer asked to see the stack of cards, the defendant *actively tried to conceal them*, ignored the inquiry, and then made a farcical effort to pass off an empty bag as the subject of Seal's interest. Any officer in the same position would be suspicious of this behavior. *See United States v. DeJear*, 552 F.3d 1196, 1201 (10th Cir. 2009) (noting that furtive gestures inside a car contribute to reasonable suspicion)*; United States v. Johnson*, 212 F.3d 1313, 1317 (D.C. Cir. 2000) ("[F]urtive gestures in response to being confronted by a police officer [are] suspicious enough to support a reasonable belief that [a person] may have been engaged in criminal activity.")

The recording proves that Seal acted reasonably in response to these suspicions. In order to investigate these suspicions, he removed Thomas from the vehicle and sat him on the sidewalk. Then he did the HGN test. Seal finished the test about 8 minutes into the recording, about 14 minutes after the 2:44 stop.[5] About a minute later, 9:15 into the recording, Seal read the defendant his rights and began questioning him about the credit cards. The defendant agreed to continue speaking with Seal, but always evaded and avoided answering any questions about the cards.

The defendant's argument seems to be that after Seal finished investigating one crime (the driving offense), he could not investigate the other (possession of the credit cards). Or, perhaps, that Seal was legally required to investigate both crimes simultaneously, rather than ruling out one and then the other. However, the defendant cites no legal authority for such a novel position and the government cannot find any. Moreover, the defendant does *not* argue that Seal lacked reasonable and articulable suspicion to investigate a possible crime related to the

---

[5] Seal concluded at that point, on the basis of this test and on his observation that the alcohol smell was not coming from the defendant's person, but rather, was coming from the vehicle, and that therefore, the defendant was not sufficiently impaired to warrant a drunk-driving citation.

10

credit cards.[6]  In short, there is no reason for the Court to conclude that Seal's extension of the traffic stop to investigate the credit cards, during which time a drug dog sniff occurred, was illegitimate or unconstitutional.

### B. The Sniff of the Car by a Certified Drug Detection Canine Was Constitutionally Permissible Because it Did Not Extend the Stop.

If the Court concludes that there was reasonable and articulable suspicion to investigate the credit cards, then there is no way for the defendant to prevail on his motion.  The recording shows that the dog sniff took place *while* Seal was investigating the credit cards by questioning the defendant and there is thus no doubt that the dog sniff did not independently or unreasonably extend the traffic stop.

"[A] positive alert by a certified drug dog is generally enough, by itself, to give officers probable cause to search a vehicle."  *United States v. Ludwig*, 641 F.3d 1243, 1250 (10th Cir. 2011) (citation omitted).  Furthermore, the Supreme Court has concluded that roadside dog sniffs are permissible under the Fourth Amendment, so long as the stop is not "prolonged beyond the time reasonably required" to complete a traffic stop.  *Caballes*, 543 U.S. at 407; *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (reaffirming rule that roadside dog sniff is permissible when it does not prolong the stop beyond the time already required for the "ordinary inquiries incident to [the traffic] stop)."

Of course, this case is not like *Rodriguez* or *Caballes* because this was no ordinary stop: in this case, the officer conducting the stop observed evidence establishing reasonable and articulable suspicion of a crime separate from the traffic violation that started the encounter.  At

---

[6] The defendant should not be allowed to raise such an objection, for the first time, in his reply. Instead, because the defendant has not raised issues regarding the officer's authority to investigate crimes relating to the credit cards, the Court should deem the argument waived.

11

about 9:15 into the recording, Seal read the defendant his rights. From then, until 11:28 into the recording, Seal is heard investigating the credit cards by asking the defendant about them. And at 11:34, the defendant is heard contemporaneously narrating his observation of the dog in his car. In short, the recording unambiguously shows that the dog sniff, and the alert, occurred *while* Seal was already lawfully investigating the credit cards. As such, the officer's investigation was not "prolonged beyond the time reasonably required" to either validate their suspicions, or dispel them. *Caballes*, 543 U.S. at 407.

Because the dog sniff was positive, the officers had probable cause to believe there was contraband in the car. For almost a century, the Supreme Court has repeatedly affirmed that the inherent mobility of automobiles and a reduced expectation of privacy means that probable cause is enough to search a car, even without a warrant. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Ross*, 456 U.S. 798, 804-09 (1982); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam); *California v. Carney*, 471 U.S. 386, 392 (1985); *Carroll v. United States*, 267 U.S. 132, 155-56 (1925).

In short, because the dog sniff did not unreasonably prolong the stop beyond what was already allowed under the law, there is no basis to ignore the dog's alert and suppress the evidence in this case.

## IV.     THERE IS NO LEGAL OR FACTUAL BASIS FOR SUPPRESSING THE LAPTOP

Separate and apart from his arguments regarding the stop, the defendant suggests that the Court should suppress the laptop because the search warrant on the Tempe Arizona Police Department was not executed until five months after Seal took it out of the defendant's car. [7]

---

7 The government obtained a seizure warrant for the debit cards on the same day, February 8, 2013. SW_00001706-1729.

This argument is both factually and legally baseless.

As a factual matter, although Seal took the laptop after the August 2012 traffic stop, the United States did not learn of the defendant's arrest or the seizure of the laptop by the Tempe Police Department until December 6, 2012.  *See* **Attachment 5** (MOA_00000452).

As a legal matter, there is no support for a conclusion that the search was somehow stale. "Probable cause for a search warrant cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Harris,* 369 F.3d 1157, 1165 (10th Cir. 2004) (citation and internal quotations omitted).  However, "the passage of time [is] less critical," *United States v. Mathis,* 357 F.3d 1200, 1207 (10th Cir. 2004), where there is a "fair probability that contraband or evidence of a crime will be found" in the location to be searched.  *United States v. Sells,* 463 F.3d 1148, 1154 (10th Cir. 2006).  Here, there was no question about where the laptop would be found; it was stored in the Tempe Police Department's evidence locker.  For these reasons, defendant's argument that the laptop should be suppressed due to the time between the defendant's arrest and the government's seizure of this evidence should be denied.

## V. ABSENT DELIBERATE MISCONDUCT, SUPPRESSION IS NOT THE PROPER REMEDY

In *Davis v. United States*, the Supreme Court made it clear that that "the *sole* purpose of the exclusionary rule is to deter" Fourth Amendment violations.  564 U.S. 229, 245 (2011) (emphasis in original).  That is, the "extreme sanction of exclusion" should be applied only as a "last resort" to deter police conduct that is "deliberate, reckless or grossly negligent." *United States v. Leon*, 468 U.S. 897, 916, 926 (1984); *Herring v. United States*, 555 U.S. 135, 140, 144 (2009).  Furthermore, the exclusionary rule applies "only where it result[s] in appreciable deterrence" and, even if it might result in deterrence, "the benefits of deterrence must outweigh

13

the costs." *Herring*, 555 U.S. at 141.

The defendant asserts that the officers deliberately extended the stop to make time for a dog sniff. As explained above, such an allegation is belied by the evidence and should be rejected by the Court. Even if the Court determines that the officers violated the Fourth Amendment, the recording and the other evidence shows that their investigatory detention was based on a good faith belief that the defendant was drinking and driving and carrying around stolen property. Applying the exclusionary rule on the unique facts of this case would run against the very purpose of the automobile exception to the warrant requirement, which was crafted to give police officers flexibility to conduct searches of fast-moving vehicles before criminals can move contraband outside the reach of the law.

Similarly, absent a finding of deliberate misconduct or recklessness, excluding the evidence of the search serves no deterrent purpose. And even if it did, preventing the jury from seeing evidence of the truth — that the defendants was in possession of 52 debit cards all in the names of inmates, which names were used in the scheme to defraud the Department of Education, and a laptop which contained evidence of this scheme — would have considerable social costs outweighing any benefit. *See Davis*, 564 U.S. at 237 (recognizing that the bottom-line effect of suppression is that courts "ignore reliable, trustworthy evidence bearing on guilt or innocence," "suppress the truth," and "set the criminal loose in the community without punishment.").

## VI. BECAUSE THE DEFENDANT'S MOTION RAISES PURE ISSUES OF LAW, NO HEARING IS REQUIRED

The defendant's dispute is a legal one, not a factual one. And even if the defendant were inclined to quibble with the facts, the record in this case, comprised of the contemporaneous and regularly kept records of Tempe Police Dispatch and an audio recording of the encounter, leaves

14

no doubt as to what happened.  In such a circumstance, the Court is empowered to rule on the motion without holding a formal hearing.  *See, e.g., United States v. Pettigrew*, 468 F.3d 626, 638 (10th Cir. 2006) (district court did not abuse its discretion in denying evidentiary hearing where no material facts were in dispute).  The Court should not hold an evidentiary hearing where the defendant has failed to identify with particularity the facts that he believes are reasonably subject to dispute and whether those facts are material to his motion.

## VII.     CONCLUSION

For all of the reasons set forth above — 1) because the officers had reasonable suspicion to investigate the defendant for drunk driving; 2) because the officers had reasonable suspicion to investigate the defendant for trying to conceal a large stack of debit cards visible in plain view; 3) because the officers lawfully searched the vehicle after the drug dog alerted for narcotics; 4) because the evidence would have inevitably been found when the officers impounded the defendant's car due to his felony arrest for possession of marijuana; and 5) because the search warrant seeking the laptop was not stale in that the location of the laptop was known  — the Court should deny the defendant's motion as well as his request for an evidentiary hearing.

Respectfully submitted this 27th day of October, 2017.

                ROBERT C. TROYER
                Acting United States Attorney
                District of Colorado

By:    s/ *Bryan David Fields*
        BRYAN DAVID FIELDS
        MARTHA A. PALUCH
        Assistant United States Attorneys
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone 303-454-0100
        Facsimile 303-454-0402
        Bryan.Fields3@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on this 27th day of October, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

s/ *Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov
