IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM-2

UNITED STATES OF AMERICA,

Plaintiff,

v.

2.   TRAMMEL THOMAS,

   Defendant.

**MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT**

   Defendant Trammel Thomas, through counsel, moves this Court for an order suppressing certain evidence seized during the execution of a search warrant on his residence on 29 November 2012, on the grounds that the evidence was seized in violation of the Fourth Amendment to the Constitution of the United States. Specifically, Mr. Thomas seeks to suppress the several cellphones that law enforcement took on that date.   The seizure of the phones was unconstitutional because there was no probable cause to support the warrant that authorized law enforcement taking the phones.

   Background:   In November, 2012, Mr. Thomas resided at 1822 East Kaibab Drive ("Kaibab") in Chandler, Arizona, along with his former co-defendant Heather Carr and some children.   Unbeknownst to Mr. Thomas and to Ms. Carr at the time, they and other individuals were targets of a U.S. Department of Education ("DoEd") investigation into student loan fraud.   In connection with that investigation, on 27 November 2012 DoEd Special Agent Sandra R. Ennis submitted an Application for a Search Warrant

("Application") to the United States District Court for the District of Arizona (Exhibit A).

After reviewing the Application, United States Magistrate Judge Bridget S. Bade issued the requested search warrant (Exhibit B).   On 29 November 2012 numerous law enforcement officers executed the search warrant on the Kaibab premises.   In the course of the search, the officers seized:   a) a slew of hard copy documents ranging from checkbooks to bank statements to spreadsheets to letters to receipts to lists of addresses to cash to i.d.'s; b) computers and related devices, from Apple MacBooks to iPads to hard drives; and, c) ten cellular telephones.   Mr. Thomas seeks to suppress these phones as evidence.

Application for the Warrant:   The Application sought a warrant to search the Kaibab premises.   The Application was accompanied, *inter alia*, by a sworn affidavit from SA Ennis ("Affidavit" [attached independently hereto as Exhibit C).   The Affidavit was divided into six sections:   an introduction, an overview of the alleged crime, an overview of the student aid program, evidence associated with Kaibab, areas to be searched, and search and seizure of electronic devices.   The latter three portions of the Affidavit are of most relevance here.

Section Four of the Affidavit:   Section Four of the Affidavit (pp. 9-15) was titled "**Computer Evidence** Associated with 1822 East Kaibab Drive, Chandler, Arizona" (emphasis added).   Section Four delineated how two IP addresses linked to Kaibab were the electronic points of origin from which fraudulent student loan applications were submitted.   Section Four also hypothesized that Carr and Thomas (and others) were involved in having improper student aid mailings sent to various addresses in Colorado and Arizona and that, at the time of the Affidavit, Carr and Thomas were living

2

at Kaibab. Section Four did not postulate that Carr, Thomas, or others had utilized cellular devices to perpetrate the alleged fraud.

<u>Section Five of the Affidavit</u>: Section Five of the Affidavit (pp. 15-17) described the crimes under investigation, the types of places within Kaibab to be searched, and the types of evidence to be seized. In this lattermost respect, ¶ 45 stated, in relevant part, that "[t]he search warrant is sought for the seizure of documentary evidence, including handwritten or typewritten records and documents, as well as **computer generated records**, any **computer hardware and software**, and other such items as more fully described in Attachment B . . ." (emphasis added). In short, SA Ennis sought authority (which was granted) to search for, and to seize, computer-related records and hardware and for hard copy documents, all as related to the student aid fraud scheme. She again did not focus her request on cellphones.

She did, at ¶ 46, make a single passing reference to cellphones. She stated that, "[b]ased on my experience, knowledge, and training, and that of other agents I have spoken with, suspects in similar investigations possess storage safes, computers, facsimile machines, cell phones, and pagers which they use as part of their method of operation." However, this sole assertion with respect to cellphones was never elaborated on. Of critical importance, the Affidavit was utterly devoid of any explanation as to how the types of evidence that law enforcement was seeking might be found on a cellphone or as to how anyone carrying out a student aid fraud scheme might utilize a cellphone in pursuit thereof.

<u>Section Six of the Affidavit</u>: Section Six of the Affidavit (pp. 18-24) was titled "Search and Seizure of Electronic Devices". The broad title of this section

notwithstanding however, the content of Section Six made clear that the "Electronic Devices" that the Government wanted permission to search and to seize were computers and not cellphones.   To wit, ¶ 50 was titled "*Probable cause to search computers*" (emphasis added) and the explanatory sub-paragraphs that followed talked about computer files, computer software, and computer storage media.   There was no mention of cellphones or of recordation of data thereon.

¶ 51 of Section Six was titled "*Forensic evidence*".   The hypothesis of that paragraph was that "[t]here is probable cause to believe that this forensic electronic evidence will be **on any computer** in the premises . . ." (emphasis added).   Discussion in the ensuing six sub-paragraphs focused exclusively on evidence that might be located in computer files, registries, logs, etc.   There was no suggestion in ¶ 51 that any forensic evidence of interest to law enforcement in the student aid investigation might be found on a cellphone.

¶ 52 of Section Six was titled "*Necessity of seizing or copying entire computers or storage media*", and ¶ 53 was titled "*Nature of examination*".   Again, the content of these two paragraphs was entirely about computers and related storage devices and not at all about cellphones.   There was no suggestion or discussion that the need to search "storage media" might extend to cellular devices.

As such, the three sections of the Affidavit germane to this motion dealt with why Kaibab was a proper location to be searched, with what places within Kaibab needed to be searched, and with what types of items were of interest for seizure.   In this lattermost respect, the Affidavit outlined the need for the seizure of hard copy documents and of computers and related media and storage devices.   The Affidavit

4

did not establish the basis for search and seizure of cellular telephones.[1]

   Attachment B to the Warrant:   This dearth of any meaningful discussion of cellular devices in the Affidavit notwithstanding, however, Attachment B to the Warrant nonetheless contained the following boilerplate references to seizure of cellphones:

   ¶16 "Files to be seized on any computer at 1822 East Kaibab Drive, Chandler, Arizona.

   a.   Any personal computer, **cell phone**, PDA, or other digital device used to facilitate the above-listed violations and forensic copies thereof." (emphasis added).[2]

   ¶ 17:   "As used above, the term records, documents, programs, applications or materials include records, documents, programs, applications or materials created, modified or stored in any form, including in digital form on any digital device and any forensic copies thereof.   As used both above and below, the term 'digital device' includes any electronic system or device capable of storing and/or processing data in digital form, including central processing units; laptop or notebook computers; personal digital assistants; wireless communication devices such as telephone paging devices, beepers, and **mobile telephones**; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communication devices such as modems, cables, and connections, storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes, and memory chips; and security devices.   (emphasis added).

   ¶19:   In order to search for data that is capable of being read or interpreted by a digital device, law enforcement personnel may need to seize the following items:

   . . . .

   c.   Any magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC Cards, memory calculators, electronic dialers, electronic notebooks, **cellular telephones**, and personal digital

---

[1] Indeed, with the exception of the brief allusion to cellphones in ¶ 46 of the Affidavit as discussed, supra., the Affidavit is utterly bereft of any mention of cellphones.

[2] The *pro forma* nature of this language is evident from the listing of "[a]ny personal computer, cell phone, PDA, or other digital device" under the heading of "Files to be seized on any computer at 1822 East Kaibab Drive, Chandler, Arizona."   This simply makes no sense, as a cellphone cannot be a file type on a computer.

assistants;" (emphasis added).

<u>Suppression</u>:   These three boilerplate grants of permission in the warrant to seize cellphones cannot withstand scrutiny under the Fourth Amendment.   It is axiomatic under the Fourth Amendment that, in order to be valid, a warrant must be supported by probable cause.   Indeed, the text of the Amendment itself states, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . ."   Here, there was no probable cause to support seizure of cellphones, because, as outlined *ad nauseam* above, there was virtually no discussion in the Affidavit of any justification for seizing cellphones.

Therefore, insofar as the warrant authorized seizure of cellphones, the warrant was overbroad, rendering it an impermissible general warrant.   Mr. Thomas acknowledges, though, that the entire warrant need not necessarily be invalidated based upon defects in part of it.   Indeed, "[u]nder the severability doctrine, '[t]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant . . .'" <u>United States v. Sells</u>, 463 F.3d 1148, 1150 (10th Cir. 2006), *cert. denied,* 549 U.S. 1229 (2007).

In the instant matter, the seizure of the cellphones was improper because the parts of the warrant authorizing the seizure were unsupported by probable cause. "The ordinary remedy for a search conducted or items seized in violation of the Fourth Amendment's warrant requirements is suppression. <u>Sells</u>, at 1154.   Accordingly, Mr. Thomas respectfully moves for an order from this Court suppressing the cellphones seized (and any data found thereon) from Kaibab.

Dated this 30th day of October, 2017.

Respectfully submitted,

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO   80202
(303) 296-2048x.136
t.goodreid@comcast.net
Attorney for Defendant Trammel Thomas

## CERTIFICATE OF SERVICE

I certify that on this 30th day of October, 2017, I electronically filed the foregoing **MOTION TO SEIZE EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO   80202
(303) 296-2048x.136
t.goodreid@comcast.net
Attorney for Defendant Trammel Thomas