EXHIBIT B

AGENT
ORIGINAL

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Arizona

SEALED

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

1822 East Kaibab Drive
Chandler, AZ 85249

)
)
)
)
)
)
)

Case No.  12-7626MB

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of  Arizona _____
*(identify the person or describe the property to be searched and give its location)*:
SEE ATTACHMENT A incorporated herein by reference.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
SEE ATTACHMENT B incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before      12|11|12
                                                                                                    *(not to exceed 14 days)*

◻ in the daytime  6:00 a.m. to 10 p.m.        ◻ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
any duty magistrate judge in AZ.
      *(name)*

◻ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ◻for _____ days *(not to exceed 30)*.
                              ◻until, the facts justifying, the later specific date of _____

Date and time issued:      11/27/12 @ 9:30am        *[signature]*
                                                                                          *Judge's signature*

City and state:     Phoenix, Arizona        Honorable Bridget S. Bade, U.S. Magistrate Judge
                                                                                    *Printed name and title*

SW_00000001

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>12- 762 6 MB | Date and time warrant executed:<br>11·29·2012  6:30 am | Copy of warrant and inventory left with:<br>Heather Carr |
| Inventory made in the presence of :<br>Evidence Custodian Brandon Lewis | | |
| Inventory of the property taken and name of any person(s) seized: | | |

See attached inventory sheets
pages 1-3
No other information following
   Sheets 1-3

$S$ $E$

$S$ $E$

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant
to the designated judge.


Date: __11·30·2012__

_____
Executing officer's signature

SANDRA FINNIS SPECIAL AGENT
Printed name and title

## ATTACHMENT A- LOCATION TO BE SEARCHED

**1822 East Kaibab Drive**

**Chandler, Arizona, 85249**

The residence is located on the north side of East Kaibab Drive off of South Edith Drive or South Soho Lane at **1822 East Kaibab Drive**. East Kaibab Drive is not a through street and is within the gated community of North Barrington subdivision. **1822 East Kaibab Drive** is further described as an approximately 5,480 square foot, single story home with light brown stucco siding and dark brown trim with a sandy brown colored roof. The address **1822** is in dark numbers on a stone type placard adjacent to the right facing side of the garage door and is below a porch type light.

## **ATTACHMENT B**

## **ITEMS TO BE SEIZED**

The following documents and items including information and/or data stored in a computer readable format to be seized at the premise of **1822 East Kaibab Drive, Chandler, Arizona,** and inside any such areas within the curtilage of the aforementioned location(s) that reasonably serve to store or hide such items, such as storage sheds, outbuildings, storage containers, trailers, or vehicles, which constitute the fruits, instrumentalities and evidence of the crimes of student aid fraud, mail fraud, conspiracy, and related activity in connection with the application for and receipts of federally and or non-federally funded student financial aid, in violation of 20 U.S.C. § 1097 (Financial Aid Fraud), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 641 (Theft of Government Funds), 18 U.S.C. § 1001 (False Statement to a Government Agency), 18 U.S.C. § 1341 (Mail Fraud), and 18 U.S.C. § 1343 (Wire Fraud) for the period of January 2010 through the present:

1.    Financial aid applications, financial aid worksheets, financial aid records, tax records, wage and earning statements, and any other documentation containing the names and/or personal identifying information of individuals who are not occupants of the residence.

2.    Evidence of application and enrollment to post-secondary institutions, and supporting documentation, including, but not limited to, proof of eligibility, (i.e. high school diploma, or GED transcript), evidence of payment of fees, acceptance

letters, academic transcripts, student identification cards, and correspondence from the schools to students.

3.    Student, school, or lender copies of applications relating to federal and non-federal student financial aid, servicing student loans, and supporting documentation including, but not limited to, correspondence, identification documents, social security cards, tax documents, and wage and earning statements.

4.    Any and all envelopes, letters, and other correspondence, memoranda, mail, notes, other documents and records of communications, whether handwritten, electronic, or otherwise, bearing the identification of any school, university, post-secondary institution.

5.    Any and all items and any and all records, documents, ledgers, applications, or materials, including, but not limited to, financial aid award letters, promissory notes, loan deferment requests, e-mails, notes, and outstanding loan balance letters, in whatever form, including e-mails, texts, chats, logs, loan applications, bank statements, letters notes, and photographs, whether stored electronically on a computer or other storage media, or in paper form, that pertain or relate to a scheme to defraud any sum of federal financial aid.

6.    Records reflecting the distribution of federal and non-federal student financial aid including, but not limited to, checks, bank records, ledgers, and deposit slips.

7.    Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, but not limited to, records, documents, receipts, utility and

2

SW_00000005

telephone bills, canceled envelopes, rental purchase or lease agreements, and key(s).

8. Records relating to current and past residences and all records pertaining to U.S. Post Office mail boxes, or any other mail receipt facilities.

9. Any and all identification documents such as driver's licenses, social security cards, birth certificates, and any prison related documentation.

10. All records, documents, programs, applications, or materials, in whatever form, pertaining to accounts held with Internet Service Providers or of Internet use.

11. All safes or other locked compartments that cannot be opened on the premises during the search.

12. Cash, debit cards, and other suspected proceeds of the above referenced offenses.

13. All records, documents, programs, applications or materials, in whatever form, of personal and business activities relating to the operation and ownership of the computer systems in the subject premises.

14. Any and all tapes, cassettes, cartridges, streaming tapes, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drivers, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, tape systems, CD-ROMs, DVRRW, hard drives, and other computer related operation equipment, computers, and any other equipment that would assist in the completion or submission of federal and non-federal student financial aid and/or loan application or supporting documentation relating

3

SW_00000006

to the application for and receipt of student financial aid funds by individuals not living at the residence.

15.   Any and all scanners, fax machines, printers, as well as other digital devices falling within the scope of the foregoing search categories, that could have been used to manufacture, produce, or to facilitate the above-listed violations and forensic copies thereof.

16.   **Files to be seized on any computer at 1822 East Kaibab Drive, Chandler, Arizona.**

   a.   Any personal computer, cell phone, PDA, or other digital device used to facilitate the above-listed violations and forensic copies thereof.

   b.   With respect to any digital devices falling within the scope of the foregoing search categories, records, documents, programs, applications or materials, or the absence of same, sufficient to show the actual user(s) of the digital device during the time period between January 1, 2010 and the date this warrant is executed, including:

      i.   Evidence of who used, owned, or controlled, the digital devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

4

ii.   Evidence of software that would allow others to control the digital devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii.   Evidence of the lack of such malicious software;

iv.   Evidence of the attachment to the digital devices of other storage devices or similar containers for electronic evidence;

v.   Evidence of computer-forensic programs (and associated data) that are designed to eliminate data from the digital devices;

vi.   Evidence of the times the digital devices were used;

vii.   Password, encryption keys, and other access devices that may be necessary to access the digital devices;

viii.   Documentation and manuals that may be necessary to access the digital devices or to conduct a forensic examination of the digital devices;

ix.   Contextual information necessary to understand the evidence described in this attachment.

17.   As used above, the term records, documents, programs, applications or materials include records, documents, programs, applications or materials created, modified or stored in any form, including in digital form on any digital device and any forensic copies thereof. As used both above and below, the term "digital device" includes any electronic system or device capable of storing and/or processing data

5

in digital form, including: central processing units; laptop or notebook computers; personal digital assistants; wireless communication devices such as telephone paging devices, beepers, and mobile telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices such as modems, cables, and connections, storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes, and memory chips; and security devices.

18. Records and things evidencing the use of the Internet to communication with community colleges (and any of their offices, divisions, and employees), including:

    a.    routers, modems, and network equipment used to connect computers to the Internet;

    b.    records of Internet Protocol addresses used;

    c.    records of internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

19. In order to search for data that is capable of being read or interpreted by a digital device, law enforcement personnel may need to seize the following items:

    a.    Any digital device capable of being used to commit, further or store evidence of the offenses listed above;

SW_00000009

b.   Any equipment used to facilitate the transmission, creation, display, encoding or storage of digital data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c.   Any magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC Cards, memory calculators, electronic dialers, electronic notebooks, cellular telephones, and personal digital assistants;

d.   Any documentation, operating logs and reference manuals regarding the operation of the digital device or software used in the digital device;

e.   Any applications, utility programs, compilers, interpreters and other software used to facilitate the direct or indirect communication with the digital device;

f.   Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.   Any passwords, password files, test keys, encryption codes or other information necessary to access the digital device or data stored on the digital device.

7

SW_00000010

<u>SWORN AFFIDAVIT OF SANDRA R. ENNIS</u>

I, Sandra Ennis, being duly sworn, depose and state:

## I.    <u>INTRODUCTION</u>

### A. <u>Professional Background</u>

1.     I am a Special Agent with the United States Department of Education (ED), Office of Inspector   General (OIG)-Investigation Services.   I am presently based in Denver, Colorado but also investigate allegations of fraud occurring in the Western Region of the United States, including but not limited to   Colorado, Arizona, and New Mexico.  I have been employed in this position since March 14, 2010.

2.     Prior to becoming a Special Agent, I was a Postal Inspector with the United States Postal Inspection Service since July 2004.  As part of my training as a Postal Inspector, I attended a twelve-week training course in Potomac, Maryland, which included training in investigating federal financial crimes perpetrated by use of the United States mails.  As a Postal Inspector, I participated in investigations of various types of crimes including conspiracy, mail fraud, wire fraud, and money laundering.

3.     As part of my official duties as a Special Agent, I am authorized to conduct investigations in connection with the enforcement and administration of all laws, regulations, orders, contracts, and programs to which ED is or may be a party of interest, and to perform other duties on behalf of the Secretary of Education.  As a Special Agent, I have participated in investigations of various types of crimes including grant fraud, student loan fraud, and mail fraud.  I have also worked closely with, and learned from, other federal agents who are experienced in investigating criminal cases, making arrests,

executing search warrants, and in the seizure, acquisition, and recovery of electronically-stored evidence.

4.      Based on my training and experience and through my personal participation, including a review of documents, as well as information received from other law enforcement sources, I have become familiar with the facts and circumstances of this investigation. The information set forth in this affidavit reflects my personal knowledge or has been provided to me by other law enforcement officers, sources, victims, and other interested parties who have themselves obtained the information and subsequently reported it to me. I have also received information through the review of various database searches and institutional documents. Conclusions set forth below are the result of my investigation. This affidavit is presented for purposes of establishing a basis for a search warrant at the location described in Attachment A and does not purport to set forth all of my knowledge of or investigation into this matter.

## II.    OVERVIEW OF THE ALLEGED CRIME

5.      This investigation began in approximately December 2011, when the Financial Aid Director of Pikes Peak Community College in Colorado Springs, Colorado, reported to ED-OIG that the school had received student enrollment and Federal Student Aid (FSA) financial aid applications for approximately sixteen (16) students who represented themselves as residing in the Colorado Springs, Colorado area. Indications of fraud with respect to these sixteen (16) applications included common last names, common mailing addresses, representations of zero income, and multiple dependent family members.

2

6.    A review of various law enforcement databases, including an inmate search of the various state Department of Corrections (DOC) websites for these applicants, disclosed that all sixteen (16) applicants were incarcerated at various DOC facilities located in Arizona, Colorado, Illinois, Ohio, and Florida and would therefore be ineligible to receive FSA.  On or about January 27, 2012, investigation into information received from Pikes Peak Community College disclosed an additional one hundred and fifteen (115) applications were submitted from six (6) suspect addresses located in Aurora and Fountain, Colorado and Chandler, Mesa, and Phoenix, Arizona.   These mailing addresses were utilized in the FSA application process and fell into the same pattern of listing zero income and single with multiple family members.

7.    Further investigation into the initial complaint from Pikes Peak Community College disclosed that from approximately January 2010 through the present, approximately one-hundred and seventy-five (175) applications were submitted via electronic means at various community colleges in Colorado where applicants received or attempted to receive FSA for which they are not eligible.  Many of these applicants shared similar course enrollments and fell into similar patterns such as entering zero income and multiple dependents on their Free Application for Federal Student Aid (FAFSA).  Many of these electronically submitted applications shared the same mailing addresses and many of the same characteristics including the same FSA Personal Identification Number (PIN) and FSA PIN challenge question and answer. These are all indicators of potential FSA fraud.

3

SW_00000013

8.     All but approximately twelve (12) of these one hundred and seventy-five (175) individuals listed as applicants are currently incarcerated at various DOC facilities and were incarcerated during the electronic submission of these FSA applications. Two (2) of the twelve (12) applicants who are not incarcerated are parolees from Colorado DOC facilities.

9.     The Internet is a global network of computers and other devices. Every device on the Internet is identified by a unique number called an Internet Protocol, or "IP" address. This number is used to exchange even the smallest amount of information. Accordingly, when one computer requests information from a second computer, the requesting computer specifies its own IP address so that the responding computer knows where to send its response. An IP address is analogous to a telephone number.

10.    Based on IP activity and corresponding physical addresses obtained, this investigation has disclosed that individuals residing at **1822 East Kaibab Drive, Chandler, Arizona** (Heather Carr, Ayanna Jones, and Tramell Thomas), have electronically submitted Free Applications for Federal Student Aid (FAFSA) and Master Promissory Note (MPN) applications using the identities of incarcerated individuals to receive or attempt to receive FSA funds. Investigation also revealed that Mercedes Diaz and Matthew Sanders have utilized their physical addresses to receive debit cards issued in the names of incarcerated inmates as a result of the fraudulently submitted FAFSA and MPN applications. It appears that upon obtaining the identifying information of prison inmates from various Department of Corrections (DOC) locations, either through consent or from the unlawful procurement of this information, Carr, Jones, and Thomas

4

SW_00000014

knowingly enrolled or attempted to enroll prison inmates at community colleges in Colorado and filed applications on their behalf for FSA.

11. As explained more fully below, FSA funds are normally disbursed on behalf of the student to the school. The school applies the funds to the student's account at the school, and any award amount that exceeds the cost of tuition and fees is normally given directly to the student, by the school in the form of a refund. The student's refund can be used to assist the student in paying for living expenses while attending school. Refunds are disbursed in the form of a debit card, a check, or electronic transfer to an outside account.

12. To date, approximately $391,225.00 in FSA funds have been disbursed to various community colleges under false pretenses, resulting in approximately sixty (60) of the potential 175 alleged applicants receiving FSA refunds in the form of debit cards. Approximately $238,929.00 in debit card refunds has been mailed to applicants identified as involved in this scheme. These debit cards have been mailed to one of approximately twenty (20) suspect addresses that have been used in furtherance of the scheme to defraud ED of FSA funds.

## III.    OVERVIEW OF THE STUDENT AID PROGRAM

### A.    Student Aid Eligibility

13. In order to be eligible for Federal Financial Assistance under Title IV of the Code of Federal Regulations, including funding under the Federal Pell Grant Program and Federal Family Education Loan (FFEL) programs, students are required to meet federal eligibility requirements, which include among others that the student:

5

SW_00000015

    a.    Is a regular student enrolled, or accepted for enrollment, in an eligible program at an eligible institution (34 CFR 668.32 (a)(2)).

    b.    For purposes of the FFEL and Direct Loan Programs, is at least a half-time student.

    c.    For the purposes of the Federal Pell Grant Program, Federal Perkins Loan, FFEL, and Direct Loan Programs, is not incarcerated in a Federal or State penal institution (34 CFR 668.32 (c)(2) and 668.32 (c)(3)).

    d.    Has a high school diploma or its recognized equivalent (34 CFR 668.32(e)(1)).

    e.    Maintains satisfactory progress in his or her course of study according to the institution's published standards of satisfactory progress (34 CFR 668.32 (f)).

14.    Students apply for the above listed federal financial aid programs each academic year by submitting a FAFSA which contains material representations pertaining to the student's need and eligibility, such as income level, dependency status, and marital status. The student may mail the FAFSA to an ED processing center or transmit it electronically via the Internet. Alternatively, the school may electronically transmit the FAFSA to a processing center contracted with ED. Processing of the FAFSA occurs at the Central Processing System (CPS), which is located in Plano, Texas. After processing is complete, the CPS produces output documents or records that show the information the student originally provided. Colleges may require additional supporting documentation relating to an individual's application for financial aid for verification purposes.

SW_00000016

15.     Information captured on the FAFSA at the time of the on-line application, includes name, date of birth, SSN, address, telephone number, email address, and IP address.    The CPS uses the application data to calculate the Expected Family Contribution (EFC), which is used to determine financial aid eligibility and amount of aid to be awarded.  Relying on representations made on the FAFSA, ED determines how much the student and/or the student's family is able to pay towards the cost of attendance. Schools award financial aid based on or up to the cost of attendance and offer those funds to students at the beginning of each enrollment period.  Students may elect to receive all or a portion of their financial aid award, and must notify the school of their decision.

16.     PIN:  A Federal Student Aid personal identification number (PIN) is a 4-digit numeric code or 6-digit alphabetic code that is uniquely assigned to an individual to access FSA websites for use during the FSA application process.  This PIN, along with other identifiers, gives students internet access to their information in FSA systems. Students (and parents) can get a PIN by going to the website at www.pin.ed.gov or by choosing to apply for a PIN when completing a FAFSA on the Web.  The PIN is available to use immediately and serves as an electronic signature on the FAFSA or other FSA records.  Students have the option to create their own PIN or choose to have a unique PIN created for them.  A challenge question and answer is also created during the PIN application process.  The challenge question serves as a security measure in the event a student loses his/her PIN.  The FAFSA includes a warning that should any documents related to the federal student aid programs be signed electronically using a

7

PIN, the person using the PIN certifies that he/she is the person identified by the PIN, and that person has not disclosed his/her PIN to anyone else.

17.     After a student accepts his or her financial aid award, FSA funds are normally disbursed on behalf of the student to the school where the student is enrolled. The school applies the funds to the student's account at the school, and any award amount that exceeds the cost of tuition and fees is normally given directly to the student, by the school, in the form of a refund. As noted, refunds are disbursed in the form of a debit card, a check, or electronic transfer to an outside account. If issued a refund check, the school will mail the check to the student's address on record with the school or it can be picked up in person, depending on the school's internal procedures.

18.     Should an individual falsify information relating to obtaining a high school diploma or its equivalent, fail to complete courses or withdraw from courses, or fail to maintain satisfactory academic progress, the individual would become ineligible for further federal financial aid and would be required to repay any funding previously received.     The accuracy of the information provided by the individual during the application process is important because it is used to determine eligibility for federal financial aid. The FAFSA also includes a warning that by purposely providing false and misleading information, the applicant may receive a fine up to $20,000, a prison sentence, or both.

**B.     Federal Loan Programs and Colorado Community Colleges**

19.     The Colorado Community College System (CCCS) operates a website called www.ccconline.org. This website allows a prospective student to create an on-line

8

SW_00000018

account which collects basic information such as name, address, email address, telephone number, and Social Security Number required for admission to all community colleges in Colorado. Once this account is established the student does not need to reenter the information to apply to another school. Community colleges within the CCCS deliver some of their courses in an on-line distance learning format. Of particular relevance in the current investigation are Aurora, Pikes Peak, Red Rocks, Denver, and Pueblo Community Colleges.

20. It is the policy of community colleges in the CCCS to use a contracted vendor, "Higher One" to process the student's financial aid refunds. CCCS students can receive their refund from Higher One in three ways: 1) Easy Refund-the funds will be available within 24 hours to the student in the form of a Higher One Bank debit card that is mailed to the student's address; 2) EFT transfer – Higher One will electronically wire the refund to the student's own independent bank account within 2-3 business days; or 3) Paper Check- Higher One will prepare and mail a paper check for the refund within 21 days. A paper check will automatically be issued if the Higher One card is never activated.

## IV.    Computer Evidence Associated with 1822 East Kaibab Drive, Chandler, Arizona

21. Common IP addresses have been identified in this investigation and an analysis of IP activity obtained for these one-hundred and seventy-five (175) applicants traced back to at least one of approximately four (4) common IP addresses. Activity pertaining to two (2) of the four (4) IP addresses (**72.208.225.151** and **68.2.27.159)** are

9

SW_00000019

detailed below. The third IP address disclosed service had been disconnected in July 2012, and activity for the fourth IP address fell outside of allowable retention periods.

### 1. IP ADDRESS 72.208.225.151

22. Subscriber information received from Cox Communications, Inc., for IP address **72.208.225.151** returned to Ayanna Jones with service at 1351 Pleasant Drive, #1110, Chandler, Arizona. Further subscriber information for Ayanna Jones received from Cox Communications, Inc., disclosed a mailing address of **1822 East Kaibab Drive, Chandler, Arizona.**

23. The IP address of **72.208.225.151** was identified when comparing suspect mailing addresses with captured IP addresses maintained by ED when the applicant accessed either the FAFSA submission or the FAFSA PIN websites. In approximately January 2012, fifty-eight (58) applicants shared the same IP address of **72.208.225.151.** All fifty-eight (58) of these alleged applicants are incarcerated in various DOC facilities and would be ineligible for FSA.

24. FSA records collected by ED disclosed thirty-six (36) of these fifty-eight (58) applicants who had accessed ED websites from the same IP address of **72.208.225.151** also shared the same PIN #1102 and twenty-one (21) shared the same PIN #4547. Thirty-four (34) of these fifty-eight (58) applicants had the same challenge question of the hospital where they were born and answer of Memorial.

25. Approximately $10,316.74 in FSA funds in the form of debit cards has been disbursed to applicants using this IP address. FSA refunds have been mailed in the

10

SW_00000020

name of six (6) incarcerated applicants in the form of debit cards. These six (6) incarcerated applicants also share the same IP address

of **72.208.225.151**. These six (6) incarcerated applicants would be ineligible to receive FSA funds.

26.   724 West Knox Drive, Chandler, Arizona was identified as one of the mailing addresses where approximately twenty-five (25) incarcerated applicants attempted to receive FSA funds and shared the same IP address of **72.208.225.151**. CLEAR records identified Mercedes Diaz as residing at 724 West Knox Drive, Chandler, Arizona. ED records disclosed that in October 2010, Diaz utilized 1351 Pleasant Drive #1110, Chandler, Arizona as her address for her own student loans.

27.   Investigation revealed Heather Carr requested that her mail be forwarded from 1351 Pleasant Drive, #110, Chandler, Arizona to a private mail box at a commercial mail receiving agency (CMRA) located in Chandler, Arizona. The PS Form 1583, Application for Delivery of Mail obtained from the CMRA disclosed Heather Carr was the box holder for private mail box #12-174. Other individuals authorized to receive mail at this mail box were Jones and Thomas. On April 30, 2012, surveillance conducted on the residence at 1351 Pleasant Drive, #1110, Chandler, Arizona disclosed a For Rent sign in the window and the unit appeared vacant.

28.   CLEAR and other records, including Arizona Department of Motor Vehicle (DMV) and ED FSA records, indicated that Heather Carr, Mercedes Diaz, Ayanna Jones, and Tramell Thomas have previously resided at 1351 Pleasant Drive #1110, Chandler, Arizona. This is the same physical location where applications for FSA were

11

SW_00000021

electronically submitted on behalf of approximately fifty-eight (58) incarcerated applicants.

## 2.   IP ADDRESS 68.2.27.159

29.   In approximately May 2012, information from Red Rocks Community College disclosed approximately twenty (20) applicants attempted to enroll and obtain FSA. IP addresses for these twenty (20) applicants were recorded by ED when the student accessed either the FAFSA submission or the FAFSA PIN websites. The IP data collected from ED websites disclosed that applications submitted for these twenty (20) individuals traced back to the same IP address of **68.2.27.159**. Cox Communications Inc., confirmed subscriber information for IP address **68.2.27.159** to be that of Ayanna Jones at **1822 East Kaibab Drive, Chandler, Arizona**.

30.   IP data captured by ED further disclosed that during the time period from approximately April 2012 through the present, approximately thirty-five (35) applicants have accessed either the FAFSA submission or the FAFSA PIN websites from the same IP address of **68.2.27.159**.

31.   FSA records collected by ED disclosed approximately twenty-two (22) of these thirty-five (35) applicants who had accessed ED websites from the same IP address of **68.2.27.159** also shared the same PIN #1102 and these same twenty-two (22) individuals had the same challenge question of the hospital where they were born and answer of Memorial.

32.   Approximately $28,421 in FSA funds in the form of debit cards has been disbursed to eight (8) of the thirty-five (35) applicants using the common IP address of

12

SW_00000022