**68.2.27.159**. All thirty-five (35) of these applicants who have received or attempted to receive FSA funds are currently incarcerated at various DOC facilities and are ineligible to receive FSA funds.

33.     At least two (2) of these thirty-five (35) applicants utilizing the IP address of **68.2.27.159** also had IP activity that returned to the IP address of **72.208.225.151**. As previously mentioned, Cox Communications confirmed IP address **72.208.225.151** traced back to subscriber Ayanna Jones at 1351 Pleasant Drive #1110, Chandler, Arizona, which is the previous address of Carr, Jones, and Thomas.

34.     3239 Blackhawk Circle is a mailing address that thirty (30) incarcerated individuals utilized to either receive or attempt to receive FSA funds. DMV records and surveillance have confirmed that former Department of Corrections Inmate Matthew Sanders currently resides at 3239 Blackhawk Circle, Aurora, Colorado. ED records disclosed six (6) of these thirty (30) incarcerated individuals have IP activity that traces back to the same IP address of **68.2.27.159** associated with **1822 East Kaibab Drive, Chandler, Arizona.**

35.     Additional investigation disclosed that the recently identified mailing address of 1605 Oakland Street, Aurora, Colorado is the residence of Sandra De Mango. 1605 Oakland Street, Aurora, Colorado is a mailing address used by approximately four (4) incarcerated applicants in their attempt to receive FSA funds. IP activity for these applicants traces back to the same IP address of **68.2.27.158**, which traces back to **1822 East Kaibab Drive, Chandler, Arizona.**

13

SW_00013610

36.     CLEAR records indicate that Sandra De Mango has also been known as (AKA) Sandra Sanders.  Colorado DOC visitor records disclosed Sandra De Mango is Matthew Sanders mother.  Colorado DOC inmate trust account records disclosed deposits from Sandra De Mango into Matthew Sanders' account during his incarceration in a Colorado DOC facility.

## A.     Evidence Associated with 1844 East Kaibab Drive, Chandler, Arizona

37.     On or about September 20, 2012, and again on or about October 26, 2012, address verification information received from USPS confirmed mail for Heather Carr, Ayanna Jones, and Tramell Thomas is delivered to **1822 East Kaibab Drive, Chandler, Arizona**.

38.     In approximately October 2010, Thomas utilized a mailing address of 1418 Rushmore, Colorado Springs, Colorado to receive approximately $5,493.25 in FSA funds in the form of debit cards from Pikes Peak Community College.  Twenty-eight (28) incarcerated applicants have also used a mailing address of 1418 Rushmore, Colorado Springs, Colorado to either receive or attempt to receive FSA funds.

39.     Thomas is a former parolee from the Colorado Department of Corrections and had authorization to serve out his Colorado parolee sentence in the state of Arizona. Thomas' parole was discharged on November 2, 2012.

40.     Records obtained from CLEAR disclosed Thomas previously resided at 1351 Pleasant Drive #1110, Chandler, Arizona.  On or about June 12, 2012, Arizona DMV information disclosed driver license information for Thomas returned to **1822 East Kaibab Drive, Chandler, Arizona.**

14

41.     On or about August 15, 2012, United States Postal Inspector William Palmeri informed ED-OIG that the USPS letter carrier for address 1161 West Dragoon Circle in Mesa, Arizona was contacted by postal customer, Mercedes Diaz.   Diaz informed the letter carrier that she wanted to receive mail for approximately fifty (50) college students who did not reside at the address. Diaz told the carrier she was going to get paid for receiving this mail and that's how she paid her rent.

42.     Investigation, including Facebook profile searches, has linked Heather Carr, Mercedes Diaz, and Matthew Sanders, to each other's Facebook profile Friends List.

43.     Based on training, experience, and information provided in the aforementioned paragraphs, there is reason to believe that Carr, Jones, and Thomas are utilizing the identities of incarcerated individuals to electronically apply for FSA loans that they would be ineligible to receive and that information such as names, Social Security numbers, and dates of birth are maintained by the perpetrators to be used year after year.

## V.     AREAS TO BE SEARCHED

44.     This affidavit is in support of an application for issuance of a search warrant for **1822 East Kaibab Drive, Chandler, Arizona.** I believe there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 20 U.S.C. § 1097 (Financial Aid Fraud), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 641 (Theft of Government Funds), 18 U.S.C. § 1001 (False Statement to a Government Agency), 18 U.S.C. § 1341 (Mail Fraud), and 18 U.S.C. § 1343 (Wire Fraud), will be found at **1822**

15

**East Kaibab Drive, Chandler, Arizona, 82549,** more fully described in "Attachment A." The items to be seized during the search are set forth in "Attachment B."

45.     The search warrant is sought for the seizure of documentary evidence, including handwritten or typewritten records and documents, as well as computer generated records, any computer hardware and software, and other such items as more fully described in Attachment B, items to be seized, related to the criminal violations discussed above.

46.     This search should include all rooms, annexes, attics, basements, garages, carports, outside yard, curtilage, mailboxes, trash containers, debris boxes, storage locker areas, cabinets, safes, briefcases, purses, electronic storage devices, vehicles, and other storage locations within the premises, to include the search of any computer-based storage media contained within the premises and any other storage locations within the premises in which items in Attachment B may be found.   Based on my experience, knowledge, and training, and that of other agents I have spoken with, suspects in similar investigations possess storage safes, computers, facsimile machines, cell phones, and pagers which they use as part of their method of operation.

47.     From my background and experience I know that individuals, including persons engaged in illicit activities and/or fraud, frequently retain records of their transactions within their residence, computers, vehicles, and other places under their control. These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts, bank statements, tax documents, school records, and other miscellaneous records. Records of this kind are often stored on computer media.

16

SW_00013613

48.    The forensic examination of a computer will not only reveal IP addresses of additional computers that the seized computer has communicated with, but will also reveal websites visited, including Federal Student Aid (FSA) websites, and electronic communications with other individuals involved in the scheme to defraud the United States Government of FSA monies described above.

49.    Persons engaged in fraud schemes often maintain such records for long periods of time, particularly when they are involved in ongoing criminal conduct over a long period of time. There are many reasons why criminal offenders maintain evidence for long periods of time. The evidence may be innocuous at first glance (e.g. financial, credit card and banking documents, travel documents, receipts, documents reflecting purchases of assets, personal calendars, telephone and address directories, check books, videotapes and photographs, utility records, ownership records, letters and notes, tax returns and financial records, escrow files, telephone and pager bills, keys to safe deposit boxes, packaging materials, computer hardware and software), but have significance and relevance when considered in light of other evidence. The criminal offender may no longer realize he/she still possesses the evidence or may believe law enforcement cannot not obtain a search warrant to seize the evidence. The criminal offender may also be under the mistaken belief that he/she has deleted, hidden, or further destroyed any computer-related evidence and may be unaware that such evidence may be retrievable by a trained forensic computer expert.

17

SW_00013614

## VI.   Search and Seizure of Electronic Devices

50.   *Probable cause to search computers:* I submit that, if a computer or storage medium is found on the premises of a search location, there is probable cause to believe that records related to the FSA fraud ring will be stored on that computer or storage medium, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of

18

SW_00013615

how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

51.    *Forensic evidence:* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any computer in the premises because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs

19

store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

20

SW_00013617

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.  I knows that when an individual uses a computer with respect to on-line learning (that is, for financial aid applications, enrollment and coursework), the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to

21

SW_00013618

be a storage medium for evidence of crime. From my training and
experience, I believe that a computer used to commit a crime of this type
may contain: data that is evidence of how the computer was used; data that
was sent or received; notes as to how the criminal conduct was achieved;
records of Internet discussions about the crime; and other records that
indicate the nature of the offense.

52.   *Necessity of seizing or copying entire computers or storage media*:   In most
cases, a thorough search of a premises for information that might be stored on storage
media often requires the seizure of the physical storage media and later off-site review
consistent with the warrant. In lieu of removing storage media from the premises, it is
sometimes possible to make an image copy of storage media.   Generally speaking,
imaging is the taking of a complete electronic picture of the computer's data, including
all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure
the accuracy and completeness of data recorded on the storage media, and to prevent the
loss of the data either from accidental or intentional destruction. This is true because of
the following:

> a.  The time required for an examination:   As noted above, not all evidence
> takes the form of documents and files that can be easily viewed on site.
> Analyzing evidence of how a computer has been used, what it has been
> used for, and who has used it requires considerable time, and taking that
> much time on premises could be unreasonable. As explained above,

22

because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements: Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media: Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

53. *Nature of examination:* Based on the foregoing, and consistent with Rule 41(e)(2)(B), when persons executing the warrant conclude that it would be impractical to review the media on-site, the warrant I am applying for would permit seizing or imaging storage media that reasonably appear to contain some or all of the evidence described in

23

the warrant, thus permitting its later examination consistent with the warrant. The examination may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## VII.  CONCLUSION

54.    For the reasons stated above, I believe that probable cause exists to search **1822 East Kaibab Drive, Chandler, Arizona** for evidence, fruits, and instrumentalities of violations of 20 U.S.C. § 1097 (Financial Aid Fraud), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 641 (Theft of Government Funds), 18 U.S.C. § 1001 (False Statement to a Government Agency), 18 U.S.C § 1341 (Mail Fraud) and 18 U.S.C. § 1343 (Wire Fraud). Accordingly, I respectfully request that the Court issue the requested search warrant.

Sandra R. Ennis
Special Agent
United States Department of Education
Office of Inspector General

Subscribed and sworn to before me this 27th day of November, 2012,

BRIDGET S. BADE
United States Magistrate Judge

24

SW_00013621