**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 16-cr-00054-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    TRAMMEL THOMAS,

    Defendant.

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT TRAMELL THOMAS'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT (ECF NO. 194)**

    The United States of America (the government), by Robert C. Troyer, Acting United States Attorney, through Martha A. Paluch and Bryan D. Fields, Assistant United States Attorneys, respectfully submits this response in opposition to Defendant Tramell Thomas's Motion to Suppress Evidence Seized Pursuant to Search Warrant (ECF No. 194).

**I.    ISSUE PRESENTED**

    Where United States Department of Education Special Agent Sandra Ennis specifically stated in her affidavit in support of a search warrant for the defendant's residence that based upon her experience, knowledge, and training, suspects in similar types of investigations use cell phones to facilitate these crimes, and where the attachment incorporated by specific reference listed cell phones three separate times as items to be seized, is there any basis for suppression of the cell phones seized pursuant

1

to the warrant authorized by a United States magistrate judge? The answer is no, as explained below.

## II.     THE SEARCH WARRANT AND ATTACHMENTS

On November 27, 2012, Agent Ennis swore to an affidavit in the United States District Court for the District of Arizona in support of a search warrant to authorize the search of the defendant's residence at 1822 East Kaibab Drive in Chandler, Arizona. Agent Ennis set forth in detail her investigation to date of a scheme to defraud the United States Department of Education through the submission of false claims for federal student aid. Agent Ennis described the recurring Internet Protocol (IP) addresses common to the false submissions that traced back to the Kaibab residence, the common physical addresses used for receipt of the debit cards containing the federal aid, and the individuals suspected to be involved in this conspiracy. Agent Ennis's affidavit referenced no fewer than six individuals under investigation at that time as possible members of this conspiracy.[1] ECF 194-3 and 194-4. The application and warrant enumerated the offenses under investigation in this complex financial scheme: financial aid fraud, conspiracy, theft of government funds, false statement to a government agency, mail fraud and wire fraud. ECF 194-1 at 1 and 194-4 at 24.[2]

The warrant incorporated by specific reference Attachment A, which identified with particularity the place to be searched, and Attachment B, which similarly identified with particularity the items to be seized. ECF 194-1 at 1and 194-2 at 1.

---

1 Tramell Thomas, Heather Carr, Ayanna Jones, Mercedes Diaz, Matthew Sanders, and Sandra DeMango, Sanders's mother.  ECF 194-3 and 194-4.

2 The defendant attached the application, search warrant, affidavit and attachments to his motion and for ease of reference, the government refers to those ECF numbers in this response.

In her affidavit, Agent Ennis detailed the extensive evidence establishing that probable cause existed to believe the crimes alleged had been committed and that evidence of these crimes would be found at the Kaibab address. She also explained that based upon her "experience, knowledge, and training, and that of other agents [she had] spoken with, suspects in similar investigations possess storage safes, computers, facsimile machines, **cell phones**, and pagers which they use as part of their method of operation." ECF 194-4 at 16, ¶ 46 (emphasis added). Agent Ennis explained that the warrant was "sought for the seizure of documentary evidence, including handwritten or typewritten records, and documents, as well as computer generated records, any computer hardware and software, *and other such items as more fully described in Attachment B, items to be seized, related to the criminal violations discussed*" earlier in the affidavit. *Id.* at ¶ 45 (emphasis added).

Attachment B listed the items to be seized, which list was incorporated by specific reference in the affidavit. In no fewer than three places, Agent Ennis specifically referenced cell phones as items to be seized during the search. *See* ECF 194-2 at p. 4, ¶ 16.a.; pp.5-6, ¶ 17; and pp. 6-7, ¶ 19.c.

### III. DEFENDANT'S ARGUMENT

The defendant argues that the warrant was overbroad in that there was "no probable cause to support seizure of cellphones." Motion at 6. The plain language of the warrant and the applicable case law refutes defendant's argument.

### IV. STANDARD OF REVIEW

In reviewing a magistrate judge's issuance of a search warrant, the court must decide whether the magistrate judge had a substantial basis for concluding that

3

probable cause existed.  *Illinois v. Gates,* 462 U.S. 213, 236 (1983).  The court must keep in mind that the magistrate's task was merely to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238; *United States v. Sells,* 463 F.3d 1148, 1156 (10th Cir. 2006) ("courts should interpret warrants in a 'commonsense and realistic fashion,' rather than a 'hypertechnical' manner") (citation omitted). In making its probable cause determination, the magistrate is permitted to draw reasonable inferences from the affidavit and the magistrate's determination is accorded great deference.  *Gates,* 462 U.S. at 240, 288; *United States v. Edmonson,* 962 F.2d 1535, 1540 (10th Cir. 1992).

**V.   THERE IS NO FACTUAL OR LEGAL BASIS FOR SUPPRESSING THE CELL PHONES SEIZED**

"[W]hether a search warrant is sufficiently particular depends in part on the nature of the crimes being investigated." *United States v. Cooper,* 654 F.3d 1104, 1127 (10th Cir. 2011).  Here, Agent Ennis detailed her investigation into numerous people who were suspected of engaging in a conspiracy to commit complex financial crimes. "Warrants relating to more complex and far-reaching criminal schemes may be deemed legally sufficient even though they are less particular than warrants pertaining to more straightforward criminal matters." *Id.* (citing *United States v. Hargus,* 128 F.3d 1358, 1362 (10th Cir. 1997) ("[W]e are satisfied that [the warrant] is sufficiently limited and specific, in view of the nature of this extended conspiracy and other crimes for which [the defendant] was being investigated . . . .")); *Cooper,* 654 F.3d at 1126 ("the warrants – when read in light of the crime being investigated (i.e., a broad and complex financial

4

scheme to defraud), and when considered in conjunction with the supporting affidavits – were sufficiently particular to satisfy the requirements of the Fourth Amendment").

Analogous support for the government's argument that probable cause existed for the seizure of the cell phones is found in the case law addressing the probable cause necessary to search the contents of a seized cell phone. Numerous courts have held that an affidavit establishes probable cause for such a search where that "affidavit describes evidence of criminal activity involving multiple participants and includes the statement of a law enforcement officer, based on [her] training and experience, that cell phones are likely to contain evidence of communications and coordination among these multiple participants." *United States v. Gholston,* 993 F. Supp. 2d 704, 720 (E.D. Mich. 2014).

In *Gholston,* in an affidavit to search the defendant's cell phone, the officer noted that two participants were involved in a gas station robbery and that based on his experience, the cell phone found in the defendant's possession would contain evidence of coordination and communication among the participants to discuss details related to the robbery. *Id.* at 718. The court held that the officer did not rely solely on his training and experience as a basis to search the defendant's cell phone, "but rather cited the evidence of Defendant's joint participation in the gas station robbery along with another individual" to support his belief that the cell phone would reveal evidence of this joint criminal activity. *Id.* at 718-719.

In finding probable cause under these circumstances, the *Gholston* court cited numerous other opinions from courts that reached the same conclusion. For example, in *United States v. Barrett,* 824 F. Supp. 2d 419 (E.D.N.Y. 2011), the DEA agent averred

5

that "(1) cell phones are capable of electronically storing numerous types of information; and (2) in her experience, individuals involved in narcotics trafficking typically use cellular phones to communicate and store information and other records on their phones." *Id.* at 448. The court there found that the affidavit contained "ample support" for the magistrate judge's "practical, common-sense determination that there was probable cause to believe that evidence of a crime would be found" on the defendant's cell phone. *Id.* at 449; *cf. United States v. Wiseman*, 158 F. Supp. 2d 1242, 1249 (D. Kan. 2001) (same, noting that it had "become common knowledge in the courts" that cellular phones were "known tools of the drug trade").

In this case, Agent Ennis explicitly stated that in her experience, suspects in similar investigations use cell phones "as part of their method of operation." ECF 194-4 at 16, ¶ 46. Even without this clear statement, it would have been reasonable for the magistrate judge to infer that the conspirators used cell phones to communicate with each other in order to carry out their scheme. *Cf. United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) ("[a] magistrate may infer a nexus between a suspect and his residence, depending upon *inter alia,* "the type of crime being investigated, [and] the nature of things to be seized"); *see State v. Henderson,* 854 N.W.2d 616, 632 (Neb. 2014) (court that issued search warrant could have reached inference that cell phone in defendant's possession was used to communicate with others regarding the crime without the additional allegations that in the officer's training and experience, suspects used cell phones to communicate).

Defendant relies on *Sells* for his argument that the Court should employ the severability doctrine to the warrant in this case. Motion at 6. In *Sells,* the court

6

explained that when the greater part of the warrant is valid, and the alleged invalid aspect of the warrant can be distinguished from the greater valid portion, application of the severability doctrine might be appropriate.  463 F.3d at 1158.  In that case, the court separated the warrant into the five categories of evidence for which the agents were authorized to search.  The defendant did not challenge two of the five categories, and the government conceded that the affidavit did not provide any reason to authorize a search for two additional categories of evidence.  463 F.3d at 1156-57.  *Sells* is therefore distinguishable because no such concession exists in the instant case.  The government disputes that the severability doctrine is applicable to this case because as argued above, no part of the warrant in this case is invalid.

In light of the nature of the crimes under investigation, coupled with Agent Ennis's statement that suspects in similar types of investigations possess and use cell phones, the defendant's challenge to the search warrant authorizing seizure of the cell phones should be denied.

## VI. EVEN IF THE AFFIDAVIT WAS INSUFFICIENT, THE OFFICERS ACTED IN GOOD FAITH IN EXECUTING THE WARRANT AND THEREFORE SUPPRESSION IS NOT WARRANTED

Even if the Court finds defects in the affidavit, it should deny defendant's motion under the good-faith exception to the exclusionary rule.  In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court reasoned that evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."  *Id.* at 922.  To determine whether an officer's reliance on a warrant is objectively reasonable, the court must consider all of the circumstances, including "the text of the warrant and the circumstances of the search to ascertain

7

whether the agents might have reasonably presumed it to be valid." *United States v. Otero,* 563 F.3d 1127, 1134 (10th Cir. 2009).  The test is an objective one that asks, "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (citation omitted).

The Tenth Circuit has identified a number of factors that indicate the good-faith exception should apply, including whether:  "the attached affidavit limited the search to the crime for which there was probable cause; the officers executing the warrant were involved in the investigation throughout, and one of them wrote the affidavit to support the application; the officer received assurances that the warrant was legally sufficient [from the prosecuting attorney and the magistrate]; the search methodology was limited to uncovering evidence of the crimes identified in the affidavit; and the officers seized only evidence relevant to those crimes."  *Id.* at 1135 (summarizing factors set forth in *United States v. Riccardi,* 405 F.3d 852, 864 (10th Cir. 2005)).  Each of these factors is present in the instant case.

There are four exceptions to the good-faith doctrine, none of which are implicated here:  "(1) where the judge issued the warrant on a deliberately or recklessly false affidavit; (2) where the judge abandoned his neutral and detached judicial role; (3) where the affidavit is so lacking in indicia of probable cause that it would be unreasonable for the officer to rely on it; and (4) where the warrant is so facially deficient and fails to particularize that an officer cannot reasonably believe it to be valid."  *United States v. Holloway,* No. 11-40018, 2011 WL 3300180, at *6 (D. Kan. 2011) (summarizing exceptions set forth in *Leon* at 468 U.S. at 923).

The defendant raises none of these concerns in his motion.  A neutral and

detached magistrate judge in the District of Arizona authorized the search of the Kaibab residence based upon Agent Ennis's detailed affidavit. The officers executing the warrant (to include Agent Ennis) seized cell phones as authorized in Attachment B. Had the magistrate felt more justification was warranted for the seizure of the cell phones, that magistrate could have required it.

In sum, even if the Court found the affidavit lacking, the officers who executed the warrant had an objectively reasonable belief in the legal validity of the warrant, and therefore, this case clearly falls within the good-faith exception of *Leon.*

## VII.  THE DEFENDANT DOES NOT SEEK, NOR IS THERE ANY BASIS FOR, AN EVIDENTIARY HEARING

The defendant's does not request an evidentiary hearing on this motion, and there is no basis to conduct one, given the arguments set forth above.

## VIII.  CONCLUSION

For all of the reasons set forth above the Court should deny the defendant's motion to suppress the cell phones seized during the search of the Kaibab address.

Respectfully submitted this 3rd day of November, 2017.

                    ROBERT C. TROYER
                    Acting United States Attorney
                    District of Colorado

By:   s/ *Martha A. Paluch*
       MARTHA A. PALUCH
       BRYAN DAVID FIELDS
       Assistant United States Attorneys
       1801 California Street, Suite 1600
       Denver, CO 80202
       Telephone 303-454-0100
       Facsimile 303-454-0402
       Bryan.Fields3@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on this 3rd day of November, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

s/ *Martha A. Paluch*
MARTHA A. PALUCH
BRYAN DAVID FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov