IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM-2

UNITED STATES OF AMERICA,

Plaintiff,

v.

2.	TRAMEL THOMAS,

Defendant.

**REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE
SEIZED PURSUANT TO SEARCH WARRANT**

Defendant Tramel Thomas, through counsel, submits this reply in support of his earlier motion [#194] to suppress the ten cellphones seized by the Government during the execution of a search warrant at the residence ("Residence") of Mr. Thomas and his co-defendant Heather Carr in Chandler, Arizona, on 29 November 2012.

Mr. Thomas averred in his motion that the affidavit submitted by Special Agent Ennis in support of the search warrant failed to establish probable cause for seizure of cellphones because, with the exception of one very general and conclusory sentence, the affidavit did not even mention cellphones, but instead focused almost exclusively on the need to search and seize computers, their components, and hard copy documentary evidence.   Therefore, Thomas contended, the search warrant was overbroad to the extent that it authorized seizure of cellphones, and, as such, the cellphones should be suppressed as the fruits of an improper seizure.   In its response [#197], the Government countered that:   a) the affidavit in support of the search

warrant did sufficiently establish probable cause for seizure of cellphones and, alternatively, b) even if the affidavit was insufficient, the seized cellphones was still appropriate under the good faith exception established by United States v. Leon, 468 U.S. 897 (1984).

## I. Lack of Probable Cause

Neither of the Government's arguments in support of sustaining the validity of the seizure of the cellphones withstands scrutiny. As a starting point, the parties are in agreement that Special Agent Ennis's sole mention of cellphones in her 24 page, 54 paragraph sworn affidavit ("Affidavit") submitted in support of the Application for a Search Warrant was the following statement: "[b]ased on my experience, knowledge, and training, and that of other agents I have spoken with, suspects in similar investigations possess . . . cell phones . . . which they use as part of their method of operation." This singular, unelaborated-upon assertion was insufficient to establish probable cause to seize cellphones.

In its opposition brief, the Government points primarily to three different federal district court cases. The prosecution avers that these decisions support the Government's position that a law enforcement agent's mere citation to his or her own experience that "bad guys use cellphones" is sufficient to establish probable cause for seizure of the alleged criminals' cellphones. However, these cases actually do not establish such an alarmingly broad proposition.

First, United States v. Gholston, 993 F.Supp.2d 704 (E.D. Mich. 2014), involved the seizure of a cellphone incident to the arrest of the defendant, a situation not present in the instant matter. Moreover, the Gholston court specifically held that it did not agree

2

that the law enforcement officer's "affidavit [in support of a request for a search warrant] was wholly devoid of reference to facts and circumstances uncovered in his investigation and instead rested solely on his training and experience." *Id.* at 718.   The Gholston court noted how the law enforcement officer therein had established in his affidavit that the cellphone he had seized incident to the arrest "would contain evidence of pre-planning of the robbery and of 'coordinat[ion] and communicat [ion]' among the participants 'prior to the robbery to arrange meeting times, the availability of firearms and other details related to the robbery.' *Id.*

In addition, the Gholston court pointed to the fact that the law enforcement affiant in that case "cited the evidence of Defendant's joint participation in the gas station robbery along with another individual as supporting his belief that a search of this device would reveal evidence shedding light on the identities of these multiple participants and their possible pre-planning and coordination of criminal activity." *Id.* at 718-719.   In other words, the Gholston officer did in his affidavit what Special Agent Ennis failed to do in her Affidavit.   He established a linkage between the crime being investigated and the seized cellphone in a manner that went beyond just a recitation of his prior experience that criminals use mobile devices.

Second, the law enforcement affiant in United States v. Barret, 824 F.Supp.2d 419 (E.D.N.Y. 2011), the second case discussed by the Government in its response, also provided more information than just the generic "criminals use cellphones" type of assertion used by SA Ennis in the Affidavit.   To wit, the Barret affiant stated that "cell phones are capable of electronically storing numerous types of information", *Id.* at 448, an assertion which, while seemingly obvious, is not a statement in support of probable cause

3

that was set forth in the Affidavit.   Moreover, the Barret law enforcement agent also stated in her affidavit that "in her experience, individuals involved in narcotics trafficking typically use cellular phones to communicate and store information and other records on their phones." *Id.*   This is a much more specific tie between the officer's experience, the type of information sought as related to the crime(s) under investigation, and the likelihood of that information being present on cellphones than SA Ennis's very general statement in the Affidavit that based upon her experience people engaged in student aid fraud schemes use their cellphones "as part of their method of operation."

Similarly, the law enforcement affiant in United States v. Wiseman, 158 F.Supp.2d 1242 (D. Kan. 2001), the third case cited by the Government in its response, provided more than just past experience as a basis to seize and search cellphones.   The Wiseman law enforcement affiant did note, similar to Special Agent Ennis, that individuals involved in the type of crime he was investigating (the manufacture and sale of methamphetamine) often use cellphones to facilitate the crime. *Id.* at 1249.   However, unlike SA Ennis, the Wiseman affiant provided a link among the crime being investigated, the cellphone to be searched, and the likelihood of information related to that crime being present on the cellphone:   "[t]hese same devices are commonly used to store information of their associates [*sic.*] names and phone numbers of other subjects involved in these types of crimes." *Id.*   By contrast, the absence in the Affidavit of any such linkage between the student aid fraud scheme under investigation and cellphones rendered the Affidavit insufficient to establish probable cause to seize cellphones and resultant search warrant authorizing same constitutionally overbroad.   Therefore, those phones should be suppressed.

4

II. <u>Inapplicability of the *Leon* Exception</u>

In its response the Government puts forth a second argument, in the alternative, as to why the cellphones should not be suppressed. The prosecution contends that, even if there was no probable cause to support the warrant's authorization to seize the cellphones, the phones nonetheless should not be suppressed, due to the good-faith exception to the exclusionary rule created by <u>United States v. Leon</u>, 468 U.S. 897 (1984). However, that exception is not applicable to the circumstances of this case.

As the Government points out in its response, one of the exceptions to the good faith doctrine is "where the affidavit is so lacking in indicia of probable cause that it would be unreasonable for the officer to rely on it." (Please see p. 8 of Govt. response [#197] and citations therein). "The government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." <u>United States v. Cook</u>, 854 F.2d 371, 373 (10th Cir.1988), *cert. denied*, 488 U.S. 1006 (1989). The Government has not sustained, and cannot sustain that burden here.

In assessing the applicability of the <u>Leon</u> exception, "'the good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known the search was illegal despite the magistrate's authorization.' . . . To answer this 'objectively ascertainable question,' [the court is] to consider 'all of the circumstances' and assume that the executing 'officers have a reasonable knowledge of what the law prohibits.'" <u>United States v. Dahlman</u>, 13 F.3d 1391, *cert. denied*, 511 U.S. 1045 (1994), (quoting from <u>Leon</u>, 468 U.S. 919, 922 (1984)). "[T]he reviewing court must examine 'the text of the warrant ***and the affidavit*** to ascertain whether the agents

might have reasonably presumed it to be valid.'" United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993), (quoting from Leon, 468 U.S. at 923), (emphasis added).   The determination is not just whether the affidavits contain legally sufficient facts but whether the affidavits are devoid of factual support. United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985).

As noted, *supra*, the author of the Affidavit was Special Agent Ennis.   She also was the person who directed the execution of the search warrant at the Residence.   She, of all people, had to know that there was barely a mention of cellphones in the Affidavit. She certainly was aware that her single assertion that experience teaches that "suspects in similar investigations possess . . . cellphones . . . which they use as part of their method of operation" was not expanded upon, explained, amplified, or connected in the Affidavit to any types of specific evidence of alleged wrongdoing by Mr. Thomas or Ms. Carr that might have been located on cellphones.

In short, she knew, or should have known, that there was no probable cause set forth in the Affidavit, which she wrote, to support a warrant for seizure of cellphones.   As such, it was manifestly unreasonable for SA Ennis and her fellow officers to rely upon the search warrant as authority for them to search for, and to seize, cellphones at the Kaibab residence.   Therefore, the Leon good-faith exception does not apply, and the phones should be suppressed.   Mr. Thomas again so moves.

Dated this 6th day of November, 2017.

Respectfully submitted,

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO   80202
(303) 296-2048x.136
*t.goodreid@comcast.net*
Attorney for Defendant Tramel Thomas

## CERTIFICATE OF SERVICE

I certify that on this 6th day of November, 2017, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO   80202
(303) 296-2048x.136
*t.goodreid@comcast.net*
Attorney for Defendant Tramel Thomas