IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM-2

UNITED STATES OF AMERICA,

Plaintiff,

v.

2.      TRAMEL THOMAS,

Defendant.

---

### DEFENDANT TRAMEL THOMAS'S OBJECTIONS
### TO THE PRESENTENCE INVESTIGATION REPORT

---

Defendant Tramel Thomas, through counsel, states the following objections to the PSIR.

1.   <u>¶ 7-58, pp.4-12:</u>   "**Offense Conduct**"

<u>Objection</u>:   Mr. Thomas objects to the inclusion in the PSIR of the parties' respective sentencing statements.   These statements, which were previously filed separately filed and thus are already on the Court's docket, are sentencing arguments and are not evidence, *per se*, of specific offense conduct.   Indeed, paragraphs 13 and 14 of the Government's sentencing statement, needlessly reprinted in the PSIR, are replete with allegations and assertions that have nothing whatsoever to do with the specific offense conduct in this case.   Mr. Thomas therefore asks that the parties' sentencing statements be stricken from the PSIR, a document, which in final form, will follow him to the Bureau of Prisons institution to which he is assigned.

2.   <u>¶ 19, p. 9:   " Instead of answering the door, occupant(s) of the home frantically tried to rip up compromising documents and flush them down the toilet."</u>

<u>Objection</u>:   Mr. Thomas objects to this characterization, insofar as "occupant(s)" is intended to apply to him.   There was no evidence produced at trial that Mr. Thomas tore up any documents or that he tried to flush documents down the toilet.   Outside of trial, the Government's only apparent evidence on this matter was Ms. Carr's admission that she tore up documents and tried to flush them down the toilet (Exhibit A [hereto], pp. 004-005 yellow highlights).

2.   <u>¶ 19, p. 9:   " Thomas used the time to break his cell phone in half, hoping that agents wouldn't be able to retrieve from it his text messages with Mullett . . . or the photographs of him proudly flashing cash, see Gov't Exs. 26 & 29, and celebrating his trips to the shooting range (despite being a felon)."</u>

<u>Objection</u>:   There was no evidence at trial about how or why Mr. Thomas's cellphone was broken.   Prior to trial, Co-Defendant Heather Carr had told the Government that she did not know why Mr. Thomas broke his phone; that the broken phone was one that Thomas was no longer using; and that Thomas later told her that he broke the phone so that she would not find out about other women he was seeing (Exhibit A, p. 005, gold highlights).   As such, there is no evidence that Thomas broke the phone in order to hide information from law enforcement.

3.   <u>¶ 20, p. 8:   "As special agents reviewed thousands of pages of documents created by the defendant and his coconspirators . . . Thomas used the time to contact witnesses in an effort to influence their testimony. He tried to reach out to Marcelle Green by going to her uncle's house. He called Kimmisha Mullett to talk about his case (and her trial subpoena) and to once again manipulate her into thinking he was her friend."</u>

Objection:   These assertions regarding Mr. Thomas's putative conduct are unfounded.   Ms. Mullett testified at trial that Mr. Thomas spoke to her and that was it. She did not state that he tried to influence her testimony in any way.   As for Co-Defendant Green, she told the Government that Mr. Thomas had tried to reach her through her uncle but that no contact was ever made (Exhibit A, p. 005 and 009, yellow highlights).   As such, neither of these instances adds up to an attempt to influence the testimony of a witness.

4.   ¶ 63, p. 14:   "The scheme was devised by Carr and Thomas."

Objection:   This statement is belied by Co-Defendant Marcelle Green.   Ms. Green testified at trial that she was approached by Ms. Carr to join the scheme (Exhibit A, p. 011, ll. 7-9, teal highlights), that Mr. Thomas had some role in the scheme but that she had only seen him on one occasion fill out a FAFSA (Exhibit A, p. 012, ll. 15-25, teal highlights), and that that was the only time she saw him involved in the scheme (Exhibit A, p. 013, ll. 12-14, teal highlights), that Thomas was not present when she first discussed the scheme with Carr (Exhibit A, p. 014, ll. 2-5, teal highlights), and that Carr was the one person who was essential to the scheme (Exhibit A, p. 014, ll. 9-14, teal highlights).   Ms. Green also told the Government prior to trial that the scheme was Heather Carr's idea (Exhibit A, p. 008, teal highlights). All this goes to show that the scheme was not devised by Mr. Thomas.

5.   ¶ 81, p. 17:   "As asserted by the Government in its Sentencing Statement, the defendant obstructed justice by destroying evidence of his crime and by reaching out to potential witnesses in an effort to influence their willingness to testify."

Objection:   Please see Mr. Thomas's objection #'s 2 and 3, *supra*.

3

6.  ¶ 82, p. 17:   "the probation officer notes that the defendant provided false information regarding his residence."

Objection:   Mr. Thomas objects that the incorrect address information provided to the probation officer was materially false information, as is required for an obstruction of justice enhancement under U.S.S.G. §3C1.1.   There was no intent on the part of Mr. Thomas to "impede the government's investigation, prosecution, or sentencing, and [the incorrect address] did not affect the outcome of his bond hearing or sentencing." United States v. Cardona-Rivera, 64 F.3d 361, 365 (8th Cir. 1995).   Therefore, Mr. Thomas asserts that the wrong address was not materially false information.

7.  ¶ 89, p. 18:   **Specific Offense Characteristics calculation of Level 14**

Objection:   Mr. Thomas adopts herein his previously filed Defendant's Position Statement on Appropriate Loss and Restitution Amounts [#342] in which he argued that the base offense level, based upon loss, should be 12 rather than 14.

8.  ¶ 94, p. 19:   **No Adjustment for Role in the Offense**

Objection:   Mr. Thomas contends that he should be entitled to a two point adjustment under U.S.S.G. 3B1.2(b) for having had a minor role in the offense.   Mr. Thomas bases this upon the following:

a)   Government Position:   The Government conceded, at the sentencing of Co-Defendant Diaz that Carr was the most culpable member of the conspiracy, with Green and Thomas in the middle, and Diaz at the bottom (Exhibit A, pp. 019-020, pink highlights).

b) Green testimony:   Green herself, however, described a small role in the offense for Thomas.   As outlined in detail above in Objection #4, Ms. Green testified that Carr

4

brought Green into the scheme and that Green and Carr took it from there.   Green

testified that Mr. Thomas had some role in the fraud scheme, but that she had only seen

him, on one occasion, fill out a FAFSA (Exhibit A, p. 012, ll. 15-25, teal highlights), that

that was the only time she saw him involved in the scheme (Exhibit A, p. 013, ll. 12-14,

teal highlights), and that she could not say that he participated in doing homework (Exhibit

A, p. 012, ll. 18-20, teal highlights).

c) <u>Diaz Statements</u>:   At the sentencing of Mercedes Diaz, the Court found her to

be truthful. (Exhibit A, pp. 017-018, ll. 25-3, lime highlights).   The Government chose not

to call Diaz as a witness at Mr. Thomas's trial.   Diaz had told the Government prior to trial

that she was unaware of Thomas's role in the conspiracy (Exhibit A, p. 023, yellow

highlights); that Diaz, Carr, and Green (but not Thomas) sat around doing homework as

part of the fraud scheme (Exhibit A, p. 024, yellow highlights); that Diaz, Carr, and Green

(but no mention of Thomas) were in on the fraud scheme (Exhibit A, p. 025, yellow

highlights); and that she never went to ATM machines (to get cash from the fraudulently

obtained student debit cards) with Thomas (Exhibit A, p. 026, yellow highlights); and that

she never discussed the fraud scheme with Mr. Thomas (Exhibit A, p. 026, yellow

highlights).

d) <u>Limited time in the conspiracy</u>:   The Superseding Indictment alleges that the

conspiracy began in August, 2010.   However, the evidence shows that Mr. Thomas

joined the conspiracy after his move to Arizona in February, 2012.   His involvement with

enrolling four or five individuals at Pikes Peak Community College prior to that time was

unrelated to the conspiracy because:   a) Thomas was personally acquainted with these

people and they were not inmates, in contrast to all the victims of the charged scheme; b)

No Arizona IP addresses were used in connection with these individuals, unlike all of the "students" associated with the charged scheme; and c) none of the co-conspirators, Carr, Diaz, or Green, had any link to the applications of any of these four or five people, which again establishes that these people and transactions were outside the charged scheme.

e)  Carr Statements:   Mr. Thomas was jailed in Colorado from 27 January 2011 to 3 November 2011.   Heather Carr stated, when interviewed by Thomas's defense team in January, 2018, that Thomas did not participate in the fraud scheme while he was in jail. The Government has purported to tie Mr. Thomas to the conspiracy while he was in jail by his putative connection to addresses in Colorado.

However, Carr advised the Thomas defense team that Mr. Thomas did not provide the Radiant Drive address.   She also told the Government in a pretrial interview that she, not Thomas, came up with the Lexington address (Exhibit A, p. 003, violet highlights).   In fact, the only Colorado address that Thomas properly is connected to is that of Kimmisha Mullet, but he did not obtain that address until after he was released from jail and after he had moved to Arizona to live with Ms. Carr in February, 2012.

f)  Time in Arizona:   Thomas thus was in Arizona and involved in the conspiracy, for only ten months (February to November, 2012) out of a conspiracy that the Government contends lasted for 26 months.   Even while there, his involvement was that of a minor participant.   The Government argues that Thomas's arrest on a traffic stop shows the contrary because in the stop, over fifty debit cards were found in the Dodge Charger Thomas driving, along with one in his wallet and a laptop with fraud scheme information on it was also seized from the Charger.

However, there was no evidence adduced that Thomas owned that car or that he even drove it regularly.   To the contrary, Carr told the Government in November, 2016, that Marcy Green kept most of the illicit debit cards and that Green was the owner of the seized pink laptop (Exhibit A, p. 003, yellow highlights).   Carr told the Thomas defense team that Green, and not Thomas, is the person who primarily drove the Charger in 2011 and 2012.

Moreover, the FBI was unable to establish that Mr. Thomas's fingerprints were on any of the more than fifty debit cards found in the Charger, including the one in his wallet (Exhibit A, p. 027, yellow highlights).   Diaz told the Government that the reason to keep possession of a debit card was that it could be used to fill up one's car with gas (Exhibit A, p. 026, gold highlights), and Green admitted that she used the debit cards to pay some of her bills.   However, no evidence existed that Mr. Thomas ever used a debit card for any purpose whatsoever.

Mr. Thomas respectfully submits that all of the foregoing establishes that he was a minor participant in the conspiracy/fraud scheme that is at the heart of this prosecution. Accordingly, he objects to the PSIR's failure to accord him a two point reduction under U.S.S.G. 3B1.2(b).   He urges the Court so to grant him this reduction.

Dated this 22nd day of March, 2018.

Respectfully submitted,

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO   80202
(303) 296-2048x.136
t.goodreid@comcast.net

7

Daniel T. Smith
4582 S. Ulster #1400
Denver, CO   80237
Telephone:   303-860-8100
Fax:   303-860-8018
danieltsmith@qwestoffice.net

Attorneys for Defendant Tramel Thomas


## CERTIFICATE OF SERVICE

I certify that on this 22nd day of March, 2018, I electronically filed the foregoing **DEFENDANT TRAMEL THOMAS'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO   80202
(303) 296-2048x.136
*t.goodreid@comcast.net*
Attorney for Defendant Tramel Thomas