**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 16-cr-00054-WJM-02

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    TRAMMEL THOMAS,

    Defendant.

_____

**UNITED STATES' RESPONSE TO DEFENDANT TRAMELL THOMAS'S
OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT, ECF 348**
_____

    The United States of America, by and through United States Attorney Robert C. Troyer and Assistant United States Attorneys Martha A. Paluch and Bryan D. Fields, hereby responds to Defendant's Objections to the Presentence Investigation Report (PSIR), ECF 348, as follows:

    1.    Defendant objects to the inclusion of the parties' sentencing statements in the PSIR. The United States concurs with the probation office's response to this objection. ECF 356 at A-1.

    After objecting generally to the inclusion of sentencing statements in the PSIR, the defendant then takes exception to three specific excerpts from the government's sentencing statement. If the Court rules that the sentencing statements are properly included in the PSIR, defendant's objections set forth in Paragraphs 2[1] and

---

[1] Two paragraphs are labeled with the number 2.

1

Paragraph 3 are moot. Nonetheless, the government responds to these objections as follows:

    2. Heather Carr stated that she, her daughter, and the defendant were home when law enforcement arrived to execute the search warrant.[2] Once the officers gained entranced into the home, they discovered ripped up financial aid documents in the toilet. Carr admitted to ripping up documents and attempting to flush them down the toilet. Attachment 1 at 7. She also explained, "[t]hey did not answer the door immediately because items were being destroyed . . . ." Attachment 2 at 5. Accordingly, the government's statement that "Instead of answering the door, occupant(s) of the home frantically tried to rip up compromising documents and flush them down the toilet," ECF 348 at 1-2, is a correct statement of the evidence.

The defendant's next objection in the second paragraph labeled as Paragraph 2 relates to the following: While law enforcement was attempting to gain entrance into the home to execute the search warrant, the defendant broke his cell phone in half. Carr stated that the broken phone was the defendant's, that it was found in the defendant's closet (and identified a photograph of the defendant standing in that closet), and that the defendant admitted to her that he broke the phone in half. Attachment 2 at 5. Computer Forensic Expert Alison Stailey testified she was able to retrieve and examine the SIM card located in the broken phone. That SIM card contained damning text messages between the defendant and government witness Kimmisha Mullett in which

---

[2] The defendant attached only select excerpts from Carr's Memorandums of Interviews (MOIs) to his Objections. The government attaches the entire MOIs here as Attachments 1 and 2.

2

the defendant directs Ms. Mullett to send victim inmate mail to him in Arizona. The phone also contained images of the defendant flashing wads of cash, and texts from the defendant discussing his trips to the shooting range. A logical inference is that the defendant broke his phone to hide this evidence from law enforcement. The defendant objects to the inclusion of this statement in the PSIR and instead, claims that the Court should believe the defendant's statement to Carr -- that he broke the phone so that she wouldn't find out about other "bitches." ECF 348 at Exhibit A P.005. The evidence refutes his claim and the government's characterization of that evidence is accurate.

    3. Defendant disputes that he attempted to influence witnesses. *Id.* at 2-3. However, a condition of the defendant's pretrial release was that he "avoid all direct or indirect contact with co-defendants and witnesses" unless granted permission.[3] ECF 11 (Attachment 3). The defendant showed up at Marcelle Green's uncle's house looking for her after he had appeared in court on the instant charges. A reasonable inference is that he intended to speak to her about the case. The defendant also called Kimmisha Mullett weeks prior to the trial, and referenced her trial subpoena. Both contacts were in violation of the conditions of his pretrial release. A logical inference from the defendant's actions is that he was attempting to influence these witnesses' testimony at his upcoming trial. A criminal defendant contacting government witnesses (or their family members) is inherently manipulative, even in a situation where no words are exchanged at all.

---

[3] At the time the defendant attempted to contact Green, she had not been charged in this case. The discovery provided to the defendant indicated that she was a government witness.

3

4. The defendant disputes the assertion in the PSIR that the scheme was devised by him and Carr. ECF 348 at 3. At sentencing, Special Agent Ennis will testify about her interview with the defendant's friend I.O. I.O. stated that in approximately October 2010 during a conversation with the defendant, the defendant "talked about committing student financial aid fraud as a way to make money. Thomas had heard of a scheme and knew how to do it. Thomas mentioned this scheme to I.O. At this time, they were only in the initial stages of how to carry out the scheme." MOI_00000080. Other evidence strongly supports the conclusion that Thomas and Carr worked together to carry out the scheme in 2010. Records from Carr's employer show that she used Lexis Nexis to obtain I.O's social security number in July 2010. In December 2010, two months after the defendant's conversation with I.O. about financial aid fraud, a fraudulent FAFSA was submitted in I.O.' name listing 3820 Radiant Drive as I.O.'s address. That address was once the defendant's residence. Finally, the defendant was caught with the fruit of this fraud — a debit card issued to I.O. — when he was pulled over and arrested in 2012. The defendant's suggestions to I.O. back in October of 2010 that they engage in a student financial aid fraud scheme, coupled with the defendant's personal relationship with Carr, support the government's assertion that Carr and Thomas came up with this scheme together. Any other conclusion would be contrary to the jury's determination that the defendant is guilty, beyond a reasonable doubt, of the execution of the scheme charged in Count Two —the mailing of a debit card to the Radiant Drive address while the defendant was incarcerated in February 2011. The defendant's objection should be denied.

5.     The defendant objects again to the obstruction enhancement.  ECF 348 at 3.  The government has responded to this objection above in Paragraph 3.

6.     The defendant does not dispute that he provided a false address for his residence to the probation officer.  *Id.* at 4.  Instead, he asserts this false statement was not "material" in that it did not "affect the outcome of his bond hearing or sentencing."  *Id.*  The government disagrees.  The facts are as follows:

- On January 19, 2018, the defendant told United States Probation Officer Matthew Gill that he resided as 6818 South 40th Drive, Phoenix, AZ 85041.
- On February 8, 2018, District of Arizona United States Probation Officer Susana Torres attempted a home visit at this address and the home appeared vacant.
- On February 20, 2018, the defendant advised Pretrial Services Officer Evelia Rivera that in October of 2017, he moved to 2040 West Berridge Lane, No. 31, Phoenix, AZ 85015.  This was the first Officer Rivera learned of this change of address.
- In an email to Officer Rivera dated February 21, 2018, the defendant stated that his lease for the 6818 South 40th Drive address expired "around trial time" and that he's been "pretty much homeless" since moving to the West Berridge Lane address.[4]
- As of the writing of the PSIR, the West Berridge Lane address had not been verified.  ECF 355 at 17, ¶ 82.

---

[4]   This information is contained in the Bond Violation Memorandum dated March 2, 2018.

The order setting the conditions of the defendant's pretrial release required the defendant to "immediately advise the Court, defense counsel and U.S. Attorney in writing of change in address/telephone number." ECF 11 (Attachment 3). The defendant clearly violated this provision of his pretrial release.

Section 3C1.1 of the sentencing guidelines provides for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." This enhancement is warranted when the defendant willfully provides "materially false information to a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. § 3C1.1, App. N. 4(H); *United States v. Thomas,* 11 F.3d 1392, 1400 (7th Cir. 1993) ("the Guidelines provide that furnishing false information to a probation officer during a presentence investigation is itself conduct which constitutes obstruction of justice"). There is no question the defendant's false statement regarding his physical address was willful; he admitted as much in his email to Officer Rivera.

"Material," as used in this provision, means "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." § 3C1.1, App. N. 6. It is not necessary "that a defendant's falsehood actually obstruct justice; an attempt to obstruct, even if thwarted, is sufficient." *United States v. Magana-Guerrero,* 80 F.3d 398, 400 (9th Cir. 1996) (citation omitted); *Thomas,* 11 F.3d at 1401 (defendant's subsequent recantation of false statements had

no effect on the issue because "3C1.1 applies to *attempts* to obstruct justice as well as actual obstruction") (emphasis in original). Indeed, the threshold for materiality under § 3C1.1 is "conspicuously low." *United States v. Debeker,* 961 F.2d 164, 167 (11th Cir. 1992). No "showing that pretrial services' investigation was significantly obstructed" is required. *United States v. Restrepo,* 53 F.3d 396, 397 (1st Cir. 1995).

The defendant's false statements regarding his physical address (and about his employment, as set forth in ¶¶ 124 and 125 of the PSIR, to which he does not object) could have influenced the Court in two respects: first, with respect to the Court's ruling on whether to remand the defendant after the jury's verdicts; and second, with respect to the defendant's personal history as reported in the PSIR, which is a sentencing factor. *See Magana-Guerrero,* 80 F.3d at 400 ("Magana doesn't dispute that, had his lie [regarding his criminal history] been believed, it could have influenced matters such as his entitlement to bail or his sentence").

The PSIR details the difficulties the probation officer had in confirming the defendant's alleged employment at M.S.I., a marketing company: 1) M.S.I.'s Facebook page appeared to have been inactive for some time; 2) a former employee stated that M.S.I. had been "defunct for some time"; 3) the defendant provided a second address for this business, and when the probation officer visited that address, was told that no such business existed at that address; and 4) the defendant provided paystubs for M.S.I. that "appear to have been created and printed on a home computer." ECF 355 at 24, ¶¶ 124, 125. Despite all of this deception, the probation officer surmises, "the defendant may have been employed at a company named M.S.I. at one point, but, if so,

he has not been employed there for some time." *Id.* at ¶ 125. What *is* clear is that the defendant was not employed by this company at the time of his trial.

At that time, had the Court known that this defendant was "essentially homeless" and unemployed, the outcome of his hearing on remand most likely have been different. *See Restrepo,* 53 F.3d at 397 ("[a]n obstruction of justice increase is also warranted when a defendant provides materially false information to a pretrial services officer who is conducting a bail investigation for the court"); *Magana-Guerrero,* 80 F.3d at 401 (same).

In addition, the defendant's false statements to the probation officer "thwarted the probation officer from investigating the defendant's personal" history, to include the stability of his home life and his employment. *See United States v. Partee,* 301 F.3d 576, 580 (7th Cir. 2002) (applying § 3C1.1 enhancement because of defendant's false statement to the probation officer about his employment and the fact another individual created pay stubs on his behalf) (citation omitted)).

For these reasons, the defendant's claim that false statements to the probation officer and misleading conduct towards the Court about his residence were not material should be denied.

In sum, a two-level enhancement to the defendant's base offense level pursuant to § 3C1.1is warranted due to his 1) destruction of his cell phone; 2) attempted contact (Green) and actual contact (Mullett) with witnesses in violation of the conditions of his bond; 3) false statements and pretenses regarding his residence; and 4) false statements regarding his employment.

7. The defendant objects to the loss calculation. ECF 348 at 4. The government relies upon its Position Statement re Loss, Restitution and Forfeiture, ECF 341, in arguing that a 14-level increase to his base offense applies due to a loss in this case of over $550,000. Special Agent Ennis will testify at the sentencing hearing as to the loss calculation in this case.

8. Finally, the defendant claims he is entitled to a two-level adjustment for "having had a minor role in the offense." ECF 348 at 4. The government disagrees and asserts that the defendant cannot meet his burden of proving by a preponderance of the evidence that he is entitled to this reduction. *United States v. Adams,* 751 F.3d 1175, 1179 (10th Cir. 2014).

Section 3B1.2 of the guidelines provides that if "the defendant was a minor participant in any criminal activity, decrease by **2** levels." (Emphasis in original). Such a reduction may apply to "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." § 3B1.2 App. N. 3(A). Courts are permitted "not only to compare a defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime." *United States v. Caruth,* 930 F.2d 811, 815 (10th Cir. 1991) (citation omitted). The determination is "heavily dependent upon the facts of the particular case." § 3B1.2 at App. N. 3(C). One of the factors to consider is "the degree to which the defendant understood the scope and structure of the criminal activity." *Id.* at App. N. 3(C)(i); *United States v. Salazar-Samaniega,* 361 F.3d 1271, 1277 (10th Cir. 2004) (role reduction inquiry focuses "upon the defendant's knowledge or lack thereof concerning

9

the scope and structure of the enterprise and of the activities of others involved in the offense"). The Court is "not bound to accept the defendant's own declarations about his level of participation in the crime." *Caruth,* 930 F.2d at 814-15 (citation omitted). The government responds to the defendant's arguments in support of this reduction as follows:

    a) The defendant notes that in response to the Court's questioning at Mercedes Diaz's sentencing hearing, the government stated that it viewed Heather Carr as the most culpable member of the conspiracy, the defendant and Green in the middle, and Ms. Diaz as the least culpable. ECF 348 at 4. This statement does not support the defendant's argument for a reduction. The defendant "does not contest his knowledge of the scope or structure of the criminal enterprise. He only alleges that he was less culpable than his codefendants." *United States v. Moreira,* 333 F. App'x 366, 374 (10th Cir. 2009). A minor role reduction is "not required just because multiple participants with differing levels of culpability are involved." *United States v. McColley,* 419 F. Supp. 2d 1310, 1313 (D. Kan. 2006). Even if this Court were to find the defendant was the least culpable of the four, that finding alone would not entitled him to a role reduction. *Adams,* 751 F.3d at 1179 ("a defendant is not entitled to a minor-participant reduction merely because 'he is the least culpable among several participants in a jointly undertaken criminal enterprise'") (quoting *United States v. Lockhart,* 37 F.3d 1451, 1455 (10th Cir. 1994)).

    Accordingly, the government's estimation of the conspirator's culpability does not advance the defendant's argument.

b)  Nor does Green's testimony support his argument.  In its Position Statement, ECF 341 at 8-9, the government summarized Green's testimony.   While she testified she personally assisted the defendant on one occasion with a FAFSA, she also testified that her knowledge about the defendant filling out FAFSAs in the scheme and withdrawing money from debit cards came from conversations she had with Carr.  She testified as to delivering cash to Carr in the defendant's presence, the nice lifestyle the defendant and Carr had, and the questions the defendant asked of her after his house had been searched.  Green's testimony established the defendant's knowledge "concerning the scope and structure of the enterprise and of the activities of others involved in the offense."  *Salazar-Samaniega,* 361 F.3d at 1277 (citation omitted).  It also established that the defendant was one of the primary beneficiaries of the fraud.

c)  The government does not dispute the defendant's characterization of Ms. Diaz's statements to the government.  However, the government is not required to prove that a conspirator knows all other conspirators, or all the details of the conspiracy.  *United States v. Smalls,* 423 F.3d 1164, 1182 (10th Cir. 2005).  Nor must the government prove that a conspirator knew of or participated in every aspect of the conspiracy.  *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999).  In sum, Ms. Diaz's statements do not negate the substantial evidence establishing the defendant's knowing involvement in the scheme.  *Lockhart,* 37 F.3d at 1455 (defendant was not a minor or minimal participant where he had "knowledge or understanding" of the drug enterprise).

d)  Despite being convicted of the conspiracy charge for conduct beginning in

11

August of 2010 and continuing until October of 2012, the defendant now argues that he did not join the conspiracy until February of 2012. This argument should be rejected outright based upon the jury's verdict. Nonetheless, the government responds to the defendant's misstatements of the evidence. First, he claims his involvement in enrolling "four or five individuals"[5] at Pikes Peak Community College prior to 2012 was unrelated to the scheme because these individuals were not inmates. ECF 348 at 5-6. In its Position Statement, the government explained that the defendant asked Carr to keep the social security numbers of three individuals, C.D., V.L., and I.O., in case he lost them, and Carr actually conducted SSN searches for these individuals through the Lexis Nexis database, just as she had done with all of the other victims of this scheme. ECF 341 at 4-5.

Next, the defendant claims "[n]o Arizona IP addresses were used in connection with these individuals," unlike the other victims. ECF 348 at 6. Defendant is mistaken. IP activity for Higher One (the debit card provider) for C.D., V.L., and I.O. all came back to the Pleasant and Kaibab addresses. Carr, Green, and Diaz's MOIs, along with Green's trial testimony, established that all four defendants submitted FAFSAs from one or both of these addresses. Attachment 2 at 3. The records establishing this IP activity were provided to the defense in discovery.[6] Defendant also incorrectly states that none of the defendant's co-conspirators "had any link to the applications" of the four or five individuals he is relying upon for this argument. ECF 348 at 6. However, school

---

[5] Government counsel assumes the defendant is referring to C.D., V.L, and I.O., but does not know who the fourth or fifth individuals are.
[6] C.D.: FIN_00000240-268. V.L.: FIN_00000678-705. I.O.: FIN_00000794-818.

12

records for C.D., V.L., and I.O. were all faxed from a common FedEx location that was used in the conspiracy, and these records were also provided to the defense.[7] In sum, the jury's verdicts, and the overwhelming evidence supporting those verdicts, soundly refute the defendant's claim that he was not involved in the conspiracy prior to February 2012.

    e) Defense counsel states that they interviewed Carr in January of 2018 and she made statements in that interview contrary to her prior statements to the government. ECF 348 at 6-7. Defense counsel does not provide a date of the interview, nor did counsel provide a copy of this interview to government counsel. By January 2018, Carr knew that the government would not file a § 5K1.1 motion for a reduction to her sentence. Most likely, the interview took place after January 4, 2018, when she was sentenced to 57 months in prison. At that point, she had every reason to retract her prior statements and try to help the defendant, the father of her children. Carr's recent statement that the defendant was not involved in the scheme while he was in jail is contradicted by her prior statements to the government that she discussed the scheme with the defendant in code when she visited him in jail, and used money from the scheme to pay his legal fees and make deposits to his commissary account. Attachment 2 at 3.

    Carr also allegedly told defense counsel that the defendant did not provide the Radiant Drive address for use in the scheme. ECF 348 at 6. The jury disagreed, and convicted the defendant of Count 2, which listed this address for I.O. In addition,

---

[7] C.D.: SCH_00001288-1354.  V.L.:SCH_00002490-2558.  I.O.: SCH_00002659-2725.

Duncan testified that she lived at this address with the defendant. In sum, Carr's claim in this regard is not credible.

f) Defendant next claims he is entitled to a minor role reduction because he was involved in the conspiracy for only ten of the twenty-six months of the conspiracy. ECF 348 at 6. The government disputes this assertion, but even accepting it as true, ten months is more than enough involvement to disqualify him from consideration for a minor role adjustment. In *Adams,* the defendant was denied a minor role adjustment where he recruited a friend to drive him and two others to a bank robbery. Adams claimed he was entitled to a minor role adjustment because the other two planned the robbery, he never entered the bank, and the recruitment of his friend to drive was "merely opportunistic." 751 F.3d at 1179. The court denied his claim, stating that the defendant "acted as the lookout, planned to assist in the escape, and admitted to knowledge of the scheme." *Id.* at 1180; *see also Lockhart*, 37 F.3d at 1455 (denying minor role adjustment where "knew that the purpose of driving to the bus station [on one occasion] . . . was to obtain cocaine," and expected "to be compensated for his involvement in the conspiracy"). Defendant's admission to involvement in the instant scheme for at least ten months is more than sufficient evidence to deny him the reduction he seeks.

Defendant next claims that there "was no evidence adduced that Thomas owned [the Dodge Charger] or that he even drove it regularly." ECF 348 at 7. Again, defendant is mistaken. Duncan testified at trial that Thomas drove the Charger in Colorado. Carr apparently told defense counsel the defendant was not the person "who

14

primarily drove the Charger in 2011 and 2012." *Id.* However, Carr previously told the government that while the Charger was in her name, the defendant drove it in Colorado and brought it with him when he moved to Arizona. Attachment 2 at 4. Nonetheless, what matters is not how regularly the defendant drove this vehicle, but that he was driving it when he was stopped by Detective Seal and the debit cards and laptop were found in his possession.

Finally, the defendant repeats a claim that was as unpersuasive at trial as it is here: that his fingerprints were not found on any of the debit cards found in the plastic bag in the Charger, "including the one in his wallet." ECF 348 at 7. Detective Seal testified that he saw the defendant move the plastic bag of debit cards from the seat to the floorboard, and that he found the Abate debit card in the defendant's wallet, which was on the defendant's person. Moreover, as the jury heard for itself at trial, the defendant's evasive responses to questions from Detective Seal about the debit cards were evidence of his guilty conscience. Fingerprint evidence was not necessary in light of this damning evidence.

## Conclusion

For the reasons set forth above, defendant's objections to the presentence report, ECF 348, should be denied.

DATED this 3rd day of April, 2018.

Respectfully submitted,

ROBERT C. TROYER
United States Attorney

By:    s/ *Martha A. Paluch*
MARTHA A. PALUCH
BRYAN DAVID FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on this 3rd day of April, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsel of record in this case.

                                                s/ *Martha A. Paluch*
                                                MARTHA A. PALUCH
                                                BRYAN DAVID FIELDS
                                                Assistant United States Attorneys
                                                1801 California Street, Suite 1600
                                                Denver, CO 80202
                                                Telephone 303-454-0100
                                                Facsimile 303-454-0402
                                                martha.paluch@usdoj.gov
                                                bryan.fields3@usdoj.gov