IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM-2

UNITED STATES OF AMERICA,

Plaintiff,

v.

2.   TRAMEL THOMAS,

   Defendant.

**DEFENDANT'S MOTION FOR NEW TRIAL**

Defendant Tramel Thomas, through counsel, moves, pursuant to Federal Rule of Criminal Procedure 33(b)(1), for a new trial, on the basis of newly discovered evidence. Specifically, this Motion is premised upon the Government having withheld evidence from the defense, which was exculpatory and which would have been important impeachment material with respect to the cross examination of prosecution witness Marcelle Green, who testified against Mr. Thomas at his November, 2017 trial. The withholding of this evidence denied Mr. Thomas his due process rights in and to a fair trial.

I. BACKGROUND

The Defendant was charged in a wide ranging conspiracy to defraud the United States Department of Education. The Government alleged that Mr. Thomas, along with three other defendants, had participated in a wide-ranging student loan fraud scheme. At the conclusion of a four day trial in November, 2017, Thomas was found guilty on the conspiracy count, as well as on six counts of aiding and abetting mail

fraud.

Long prior to trial, the Government provided in discovery its write up of an interview of Co-Defendant, and endorsed Government witness, Heather Carr. The interview evidently took place on November 3, 2016. This report was the only report provided to the defense concerning interviews of Ms. Carr until literally days before the trial began.

At that time, the Government gave the defense a report of what was described as an amalgamation of three different interviews of Ms. Carr, all having taken place by telephone. A copy of this report is attached as Exhibit 1. The report indicates that the interviews of Carr took place on October 30, November 6, and November 13, 2017. No additional reports of interviews of Ms. Carr were provided to Thomas's defense team either prior to or subsequent to trial.

Several months prior to trial, Assistant United States Attorney Martha Paluch and Thomas's counsel Daniel T. Smith had reached an agreement that all witnesses who appeared on the Government's witness list would be under subpoena. Any individual on that list therefore would be available at the time of trial for the defense to call as a witness even if the Government chose not to call any particular witness to testify. This agreement obviated the need for Mr. Thomas to subpoena any person who was on the Government's witness list.

On the morning of November 28, 2017 (the second day of trial) the defense was advised by Government counsel prior to Court being called into session, that the prosecution was not going to call Ms. Carr as a witness. AUSA Paluch advised Thomas's counsel that Ms. Carr had decided not to testify even though doing

2

so was an integral part of her plea agreement with the Government.   Government counsel also advised defense counsel that morning, for the first time, that Ms. Carr was not under subpoena.   The prosecution further informed the defense that the Government had no idea where Ms. Carr was at that time.

Ms. Carr did not in fact testify at Thomas's trial. The only indicted co-conspirator who did testify was Marcelle Green.   Green's testimony in pertinent part can be described as follows.   Green stated that she and Carr initiated the conspiracy (Ex. 7, p.6, ll. 7-20).   The conspiracy involved applying for federally funded student loans in the names of inmates being held in various state prisons (Ex. 7, ll. 16-24).   Once an inmate had been identified, Ms Carr , through her employer's (Wells Fargo's) data bases, would identify the inmate's social security number, credit history and other information required for the loan application (Ex. 7, p. 17, ll. 13-24)

Green further testified that money that was received by Green and Carr on these loans was split between them, according to their prior agreement (Ex. 7, p. 13, ll. 10-19).   Green said that she assumed that Thomas had received some of the funds since he lived with Ms. Carr during part of the charged conspiracy (Ex. 7, pp. 13-17).   Green testified that on a single occasion she observed and assisted Thomas in filling out a FAFSA loan document. She stated that the four charged co-conspirators were all present at that time (Ex. 7, p. 18, ll. 21-25; p. 19, ll. 1-14). Green also testified that she did not speak to Thomas about the fraudulent loan scheme (Ex. 7, p. 40, ll. 10-13).

Ms. Carr's sentencing was held before this Court on January 4, 2018.   A transcript of that hearing is attached as Exhibit 4. During her sentencing Ms. Carr

3

made a lengthy statement.   Carr recited her memory of parts of the phone interviews she had had with the Government.

Ms Carr stated (Ex. 4, p. 34) that at one point she told the prosecutors that she had never seen Thomas fill out a FAFSA.   Ms. Carr stated that, when she told the prosecution this, AUSA Fields began a verbal tirade and that she felt threatened. She stated that the interview was terminated when her counsel, Assistant Federal Defender, Mary Butterton hung up the phone.   She further asserted that when she tried to provide additional information to the prosecutors, they cut her off. (Ex. 4, p. 36)

Both counsel for Mr. Thomas were present at Ms. Carr's sentencing hearing. After it ended, counsel Smith approached Ms. Butterton and asked if he could speak with Ms. Carr about the referenced interviews.   Ms. Butterton advised that she would ask her client and that she would get back to Mr. Smith.

On January 9, 2018, Smith received an email from Ms. Butterton (Exhibit 3). Butterton informed Smith that Ms. Carr was willing to be interviewed, and the interview was scheduled for January 16, 2018.   Pursuant to directions from Ms. Butterton, Smith and Goodreid called her office on the 16th.   At that time Ms. Butterton advised that she had decided not to participate in the phone interview of Carr.   Smith requested that Butterton reconsider, but she stuck by her plan not to be on the call.

Smith and Goodreid then interviewed Ms. Carr over the telephone. Subsequent to the interview process Carr executed an affidavit, which is attached as Exhibit 2.   The affidavit relates in summary fashion a part of what Ms. Carr told Smith

and Goodreid.  To begin with, Carr swears (Ex. 2, ¶ 3) that in October and November of 2017, she had spoken with the prosecutors and with SA Ennis on four separate occasions, rather than just the three interviews reflected in Ennis's report (Ex. 1).

In her affidavit, Carr reaffirms her declaration at her sentencing that she had informed prosecutors on October 30, 2017 that she had never seen Thomas fill out a FAFSA form.  Carr also states in her affidavit (Ex. 2, ¶ 6), that when she told the prosecutors in the fall of 2017 that Thomas had never threatened her and that she, Diaz, and Green (but not Thomas) were the main participants in the scheme, the interview was terminated after AUSA Field's verbal fusillade.  Moreover, Carr declares in her affidavit (Ex. 2, ¶ 9a), that Green had participated in collecting money in Colorado that had been generated by the scheme.

Carr states (Ex. 2, ¶ 9b) that Thomas had not provided the Radiant Drive address for the scheme.  Carr also swears (Ex. 2, ¶ 9c) that Thomas did not participate in the scheme during the time period he was in jail in Colorado Springs (January 27-early November 2011).  Carr also declares (Ex. 2, ¶ 9c) that she was not present in Colorado at any point during January of 2011.

She further states that she told the prosecutors in the fall of 2017 that Co-Defendant and co-conspirator Diaz had at one time dated Michael Cox (Ex. 2, p. 9), which bore on the Government's trial theory that Cox's address on Rice Drive had been provided by Thomas since he was related to Cox.  Carr also states that she had told the prosecutors in the fall of 2017 that Ms. Green had regularly and continually used the Dodge Charger automobile (Ex. 2, ¶ 9h) during 2011 and 2012, including right before Thomas was arrested in that vehicle and 52 debit cards were

5

seized from the automobile.   All of this information just outlined from Carr's affidavit was provided to the Government during pre-trial preparation interviews in October and November of 2017, but none of that information is contained in Special Agent Ennis's report (Ex. 1) that was given to the Thomas defense team shortly before trial. None of this information ("Undisclosed Information") was ever provided to the defense by the Government at any other time in any other medium.   As described more fully, *infra*., the Undisclosed Information was both exculpatory and material, should have been turned over to the defense, and would have aided him immeasurably at trial.[1]

## II. ARGUMENT

"'A motion for a new trial based on newly discovered evidence is generally disfavored and should be granted only with great caution. . . [However,] when a movant alleges 'suppression by the prosecution of evidence favorable to [the] accused upon request,' *Brady v. Maryland,* 373 U.S. 83, 87 . . . (1963), the standard is easier to meet." United States v. Redcorn, 528 F.3d 727, 743–44 (10th Cir. 2008), *cert. denied*, 562 U.S. 898 (2010).   "A defendant who seeks a new trial under Rule 33 based on an alleged *Brady* violation must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material. United States v. Velarde, 485 F.3d 553, 558 (10th Cir. 2007).   If these three factors are satisfied, regardless of the prosecution's intentions in suppressing the evidence, a new trial is justified." United States v. Torres, 569 F.3d 1277, 1281 (10th Cir. 2009).   As such, in this Circuit, Mr. Thomas need not show whether the Government's failure to

---

[1] Once the Defendant learned of Carr's information, his counsel immediately asked the Government to produce any exculpatory material in the prosecution's possession (Ex. 5). As of the date of filing of this motion, no such information has been received (Ex. 6).

6

provide the Undisclosed Information was intentional or merely negligent because "'the suppression by the prosecution of evidence favorable to an accused upon request[2] violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196-97." United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir. 1994).

The first two factors of the three part test for granting a new trial for Mr. Thomas are easily satisfied. First, as outlined above, the prosecution did not provide the defense with the Undisclosed Information. Second, as also explored above, the Undisclosed Information was in fact evidence favorable to Mr. Thomas. Therefore, the efficacy of Mr. Thomas's request for a new trial rises and falls on the third and final part of the test for a new trial, the issue of materiality.

"'Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Hughes, 33 F.3d at 1251–52. Assessing the effect that the Undisclosed Information likely would have had on Mr. Thomas's trial is sufficient to undermine confidence in the outcome of that proceeding.

The prosecution's evidence against Mr. Thomas at trial essentially had three main pillars. The first was the testimony of Co-Defendant Marcelle Green, the second was Mr. Thomas's connection to various addresses in and around Colorado Springs where mail relating to the fraudulently acquired student loans was sent; and the third

---

[2] Mr. Thomas made such a request in this case, as reflected in the 5 April 2016 Discovery Conference Memorandum and Order [#43, p. 4, ¶ I(B).

was the 52 debit cards found in the automobile that Mr. Thomas was driving in August, 2012 when he was pulled over by local police in Chandler, Arizona.   The Undisclosed Information undercuts each of these components of the Government's case.

A.   Testimony of Marcelle Green:   As previously set forth in Mr. Thomas's objections to the PSIR [#348] Green described a small role in the fraud offense for Thomas.   She testified that Mr. Thomas had some role in the fraud scheme, but that she had only seen him, on one occasion, fill out a FAFSA, that that was the only time she saw him involved in the scheme (Ex. 7, p. 18, ll. 15-20), and that she could not say that he participated in doing homework.   In short, the most inculpatory thing she had to say about Mr. Thomas was that he had filled out a fraudulent FAFSA.

However, that assertion about Thomas and the FAFSA was directly contradicted by Ms. Carr (who, as his roommate and his lover and the head of the scheme, was in the best position to know about Thomas's actions and non-actions) as part of the Undisclosed Information.   Had the defense had the benefit of knowing about Carr's contradiction of Green on this key point, Mr. Thomas could have impeached Green on this subject on cross-examination.[3]   Indeed, "[i]mpeachment evidence is considered exculpatory for *Brady* purposes." United States v. Torres, 569 F.3d 1277, 1282 (10th Cir. 2009).

As such, Green's credibility could have been assailed by the defense on cross examination if Mr. Thomas's counsel had had access to this part of the Undisclosed Information.   Unfortunately, for Thomas, he did not have the Information and he thus

---

[3] Moreover, Mr. Thomas could have called Carr as a defense witness to testify about this topic (and others) if the prosecution had adhered to its earlier agreement with the defense to have all Government endorsed witnesses under subpoena.

was unable fully and effectively to undermine Green, whose testimony against him was critical to the Government's case because she was the only person with full knowledge of the fraud scheme who pointed the proverbial finger at him. This fact is critical in the context of this Motion, because "[i]n the event that 'the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule [*i.e.*, that a new trial should be granted]." United States v. Torres, 569 F.3d 1277, 1281 (10th Cir. 2009).

      B. The Addresses: The Undisclosed Information from Ms. Carr concerning the Colorado addresses used in the scheme would have been vitally important for the Mr. Thomas to have had at trial. To begin with, Heather Carr stated to the Government prior to Thomas's trial that Thomas did not participate in the fraud scheme while he was in jail (Ex. 2, ¶ 9c). This assertion directly contradicted a central theme of the Government at trial that Mr. Thomas was in on the fraud scheme from its inception.

Moreover, Carr told the Government prior to trial that Mr. Thomas did not provide the Radiant Drive address (Ex. 2, ¶ 9b). She previously had informed the Government that she, not Thomas, came up with the Lexington address (Exhibit 8, p. 5, violet highlights). Additionally, Carr, as part of the Undisclosed Information, stated to the prosecutors that Co-Defendant and co-conspirator Diaz had at one time dated Michael Cox (Ex. 2, ¶ 9g), a fact which, if the defense had known of it, could have been used to undercut the Government's trial theory that Cox's address on Rice Drive had been provided by Thomas, since he was related to Cox. The loosening or elimination at trial of Thomas's links to the various addresses, as well as the rebuttal of the

9

Government's contention that Thomas was in on the fraud scheme while he was in jail in Colorado Springs, would have been the likely result of the defense's timely receipt of the Undisclosed Information.   As such, this second pillar of the prosecution's case against Thomas would have been compromised or collapsed entirely.

C.   Debit Cards in Automobile:   Ms. Carr stated, as part of the Undisclosed Information that Marcelle Green continually drove the Dodge Charger (Ex. 2, ¶ 9h) in which Mr. Thomas was pulled over and the 52 fraudulent debit cards were discovered in a plastic bag located within that automobile.   That fact, if it had been disclosed to the defense, could have been utilized as a compelling, countervailing narrative that the cards in the car belonged to Green and not to Mr. Thomas, and, therefore, that the cards were **not** a powerful connection, or any connection at all, between Mr. Thomas and the fraud scheme.   Thereby, this third pillar of the Government's case could have gone by the wayside, just like the first and second pillars of the prosecution, as discussed, *supra*.

In short, the Undisclosed Information was of vital importance to Mr. Thomas's defense.   The Government had that information but failed to turn it over.   Mr. Thomas was irredeemably damaged by that failure.   The only adequate remedy for this situation is for the Court to grant him a new trial, now that he finally, and belatedly, is in possession of the Undisclosed Information.   Mr. Thomas so moves.[4]

---

[4] Although this Motion is focused on the effect of the Undisclosed Information on the trial, the Government's obligation to disclose exculpatory information under Brady also extends to sentencing.   In the latter regard, it is interesting to note that when the Government argues in its sentencing memorandum [#262, p. 10], that Carr was in Colorado in January, 2011, and a supposed witness to criminal activity involving Mr. Thomas, the prosecution was aware that Carr had specifically denied those facts to the Government.

Dated this 3rd day of April, 2018.

        Respectfully submitted,

        s/Thomas E. Goodreid
        Thomas E. Goodreid
        Attorney at Law
        1801 Broadway, Suite 1400
        Denver, CO   80202
        (303) 296-2048x.136
        *t.goodreid@comcast.net*

        Daniel T. Smith
        4582 S. Ulster #1400
        Denver, CO   80237
        Telephone:   303-860-8100
        Fax:   303-860-8018
        danieltsmith@qwestoffice.net

        Attorneys for Defendant Tramel Thomas

## **CERTIFICATE OF SERVICE**

I certify that on this 3rd day of April, 2018, I electronically filed the foregoing **DEFENDANT'S MOTION FOR NEW TRIAL** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

        s/Thomas E. Goodreid
        Thomas E. Goodreid
        Attorney at Law
        1801 Broadway, Suite 1400
        Denver, CO   80202
        (303) 296-2048x.136
        *t.goodreid@comcast.net*
        Attorney for Defendant Tramel Thomas