```
2:18-mj-06121-DKD     DETENTION HEARING     4/3/18
```

```
                    UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF ARIZONA

                     _____

United States of America,    )
                             )
           Plaintiff,        ) AMENDED **
                             ) 2:18-mj-06121-DKD
      vs.                    ) Phoenix, Arizona
                             ) April 3, 2018
Trammel Dawan Thomas,        ) 10:08 a.m.
                             ) ** Corrected spelling
           Defendant.        )    of Defendant's name
                             )
_____)

  BEFORE:  THE HONORABLE EILEEN S. WILLETT, MAGISTRATE JUDGE

                    TRANSCRIPT OF PROCEEDINGS

                       DETENTION HEARING

APPEARANCES:

For the Government:
         U.S. ATTORNEY'S OFFICE
         By: Margaret Wu Perlmeter, Esq.
         40 North Central Avenue, Suite 1800
         Phoenix, AZ  85004

For the Defendant Tramell Dawan Thomas:
         FEDERAL PUBLIC DEFENDER'S OFFICE
         By: Shishene Jing, Esq.
         850 West Adams Street, Suite 201
         Phoenix, AZ  85007




Transcriptionist:
Elizabeth A. Lemke
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC. 34
Phoenix, Arizona  85003-2150
(602) 322-7247

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist
```

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | (Called to the order of court at 10:08 a.m.) |
| 3 | THE CLERK: Case 18-6121mj, *United States of America* |
| 4 | *v. Tramell Thomas* before the Court for a detention hearing. |
| 5 | MS. PERLMETER: Good morning, Your Honor. Peggy |
| 6 | Perlmeter for the United States. |
| 7 | THE COURT: Good morning, Ms. Perlmeter. |
| 8 | MS. JING: Good morning, Your Honor. Shishene Jing |
| 9 | for the defendant. |
| 10 | THE COURT: Good morning. |
| 11 | Good morning, Mr. Thomas. |
| 12 | And I have on the phone as well? |
| 13 | PRETRIAL SERVICES OFFICER RIVERA: Evelia Rivera, |
| 14 | United States Pretrial Officer. |
| 15 | THE COURT: Thank you. |
| 16 | U.S. MARSHAL FARANDA: Joseph Faranda, Deputy United |
| 17 | States Marshal. |
| 18 | THE COURT: Thank you. All right. |
| 19 | This is the time and place set for the Pretrial |
| 20 | Release Revocation Hearing. |
| 21 | I have reviewed the information from the State of |
| 22 | Colorado. There was a motion that was filed by the government |
| 23 | from the District of Colorado, in addition to the memo that |
| 24 | was filed in this case, the date of which is March 2nd. |
| 25 | Would the government like to proceed? |

```
        2:18-mj-06121-DKD    DETENTION HEARING    4/3/18
```

1       MS. PERLMETER:  Yes, Your Honor.  The government will
2    proceed by proffer.
3           And specifically for this hearing, in addition to the
4    two documents the Court just mentioned, the March 2nd
5    Memorandum from Probation to the U.S. Attorney in the District
6    of Colorado, as well as the Government's Motion For Arrest
7    Warrant, we would like to proffer the following six documents:
8           The first will be Release Conditions.  That is docket
9    No. 5 on 16-9080mj.
10          The next two documents --
11          THE COURT:  Wait.  Give me the number again.
12          MS. PERLMETER:  16-9080.
13          THE COURT:  9080 out of the State of Colorado?
14          MS. PERLMETER:  Here, Your Honor.
15          THE COURT:  Here?  Okay.
16          So document 5 in CR16-9080.
17          MS. PERLMETER:  The second two documents are Reports
18   of Investigation that were created by U.S. Marshal Joseph
19   Faranda.  One was dated March 22nd, 2018; one was dated April
20   2nd of 2018.
21          THE COURT:  Are you going to be giving me these
22   documents or are you asking me to look them up on the docket?
23          MS. PERLMETER:  They are not on the docket.  I am
24   happy to give you copies.  However, the testimony I will be
25   proffering will be coming from the documents that I'm

1   explaining to the Court.
2           THE COURT:  All right.
3           MS. PERLMETER:  Yes.
4           The next document is a search warrant that was issued
5   by Maricopa County.  It was a search warrant -- it was a
6   search warrant for the body of Mr. Thomas when they arrested
7   him.
8           The next document -- the next document is docket No.
9   348 in CR16-0054 out of the District of Colorado.  It is the
10  Defendant's Objections to their Presentence Investigation
11  Report.  And specifically, as to that document, the government
12  will be relying on paragraph 6 of the defendant's motion -- or
13  objection.
14          And the last document is document No. 353, also in
15  CR16-0054.  It's the Defendant's Sentencing Statement.  And
16  the paragraphs specific to that are paragraph 9 as well as
17  paragraph 21.
18          So, Your Honor, I also have --
19          THE COURT:  Are you going to move that into evidence
20  so I can read it?  Or are you just going to read it to me?
21          MS. PERLMETER:  Maybe I should just move it all into
22  evidence so you can read it at your leisure instead of having
23  me read it into the record.
24          THE COURT:  And, counsel, are you also going to be
25  discussing these documents as well?

```
 1            MS. JING:  Those are the government's documents so --
 2            THE COURT:  Are you going to be discussing what's in
 3   them?
 4            MS. JING:  Our -- to some extent, yes.  Yes.
 5            THE COURT:  Do you have any objection to them being
 6   admitted for purposes of this hearing?
 7            MS. JING:  No, Your Honor.
 8            THE COURT:  All right.
 9            MS. PERLMETER:  Okay.  Should I approach?
10            THE COURT:  Please.
11            There being no objection, the documents that have
12   been identified for the record are now admitted into evidence.
13            Do you need them to talk to me about them?
14            Do you need them to talk to me about them?
15            MS. PERLMETER:  No.  No.
16            THE COURT:  Okay.  Thank you.
17            MS. PERLMETER:  So starting with Officer Rivera, what
18   she can inform the Court, consistent with the Memorandum that
19   was filed, is that -- and the government's position here is
20   the defendant is a flight risk.  He's also a danger to the
21   community and should be detained pending his sentencing in the
22   District of Colorado which is currently scheduled for April
23   12th.
24            So starting with February 12, 2018, Officer Rivera
25   conducted an employment check on Multi Source which is where
```

1   the defendant claimed he was working.
2           When she arrived at the location 7272 East Indian
3   School Road, she was not able to verify the defendant's
4   employment.
5           She will also -- she could testify that when she
6   meets with the defendant, it is on a monthly basis and every
7   month she asks the defendant if there are any home or
8   employment changes and the defendant did not report any.
9           The next day on February 13, 2018, the defendant says
10  that he was working at Multi Source, which is inconsistent
11  with the information in the memorandum which indicates that on
12  February 1st, 2018, U.S. Probation Officer Gill contacted
13  Multi Source and was informed that Multi Source is no longer
14  in business.
15          On February 20th, 2018, the defendant told Officer
16  Rivera that he moved from where Probation thought he was
17  living at the South 40th Drive address to an address on 2040
18  West Berridge Lane, No. 1.
19          He said he moved there about four to five months ago.
20  So, therefore, he delayed reporting his new address to
21  Probation by four or five months.  He claimed that he
22  previously provided this information to Pretrial Services.
23  However, Ms. Rivera would testify that upon review of her
24  file, no such notification was provided.
25          On that same day the defendant tested positive for

1   oxycodone.  He stated that he had a prescription for the drug
2   that was dated back in January of 2016.  However, that does
3   not appear to be a valid prescription.  And, in fact, the next
4   day on February 21st, the defendant admitted that he did not
5   have a current prescription for oxycodone and that he had
6   gotten the pills from a friend because he wasn't feeling well.
7           On that same day it was verified that Multi Source
8   was located at 7272 East Indian School.
9           The next day on February 21st via e-mail, the
10  defendant continued to explain to Officer Rivera that he
11  stopped living at -- or that his lease to the property on 6818
12  South 40th Drive expired around the time he went to trial.
13          And just for the record, when I looked at PACER, it
14  appears that this matter proceeded to trial in late November.
15  Looks like trial was four days, occurring between November 27,
16  2017, to November 30 of 2017.
17          And that's evidenced as docket entries No. 217 to
18  223.  And he told Ms. Rivera that --
19          THE COURT:  What's the docket number?  What's the
20  number of the case?
21          MS. PERLMETER:  The case number is CR16-0054 out of
22  the District of Colorado.
23          THE COURT:  Thank you.
24          MS. PERLMETER:  And on that same day he explained to
25  Officer Rivera that he was basically homeless since that day.

1  So based on that information, the District of
2  Colorado filed a motion requesting an arrest warrant from the
3  court.  And when that was granted, U.S. Marshal Faranda became
4  involved -- or was assigned to assist the District of Colorado
5  in locating the defendant.
6  So on March 9th of 2018, Officer Faranda -- or
7  Marshal Faranda went to the address on Berridge Lane, 2040
8  West Berridge Lane, to conduct surveillance on the property.
9  He was there from 8:00 a.m. until 10:00 a.m. and did not see
10 the defendant.
11 On March 13th -- or on or about March 13, 2018,
12 Mr. Faranda sought out the assistance of Probation Officer
13 Torres in trying to get a home visit scheduled with the
14 defendant.  The defendant never returned Officer Torres' phone
15 call regarding a home visit.
16 Two days later on March 15, 2018, Officer Faranda
17 conducted surveillance at the Berridge Lane address all day
18 from 10:00 a.m. until 5:00 p.m.
19 About a week later on March 21st of 2018, he appeared
20 at -- he conducted surveillance again at the Berridge address
21 from 1:00 a.m. to 5:00 p.m.  He did not see the defendant on
22 either of those occasions.
23 On March 22nd of 2018 around 6:30 in the morning,
24 Officer Faranda was at the Berridge address again.  And on
25 that day he contacted a Building Manager who got him in touch

2:18-mj-06121-DKD      DETENTION HEARING      4/3/18

1   with someone named Lola Thomas who resided at that address
2   since October of 2017.
3           He was able to briefly speak to Ms. Thomas who
4   indicated that the defendant did stay with him for -- did stay
5   with her for a few days a while ago but had stopped and was no
6   longer living there.
7           And as of 11:00 a.m. that day, he -- that kind of
8   exhausted Officer Faranda's leads as to where the defendant
9   could be after consulting -- after conducting the surveillance
10  on Berridge Lane, going -- receiving information about the
11  defendant's claimed employment at Multi Source and trying to
12  track down known associates of the defendant.
13          So about a week later, they received some additional
14  information on March 30th, 2018, that the defendant could
15  possibly be at 3 -- at 6039 West Hughes Drive which is an
16  address that was not reported to Pretrial Services.
17          Around 3:00 p. m. that day, Officer Faranda went to
18  the address on Hughes Drive and he saw in the driveway a black
19  BMW that is registered to the defendant.
20          Out in the front part of the house he also observed a
21  silver Nissan which is a rental car.  And he was able to
22  confirm that it was a rental car from Hertz, rented by the
23  defendant out of the Denver airport on February 28th of 2018.
24          Now, Officer Faranda had other marshals with him that
25  day.  And around 4:00 p.m. they observed a female in the back

2:18-mj-06121-DKD      DETENTION HEARING      4/3/18

1  yard.  When they observed her, she ran back into the house and
2  said she would be calling the police.  At that point the
3  marshals announced their presence.  They knocked on the door.
4  They commanded all occupants inside to come out and nobody did
5  so.
6          The marshals followed up with the Phoenix Police
7  Department.  The Phoenix Police Department indicated to them
8  that they had not received any calls for service from this
9  address on Hughes.
10         They -- the marshals then took a photograph of the
11 defendant and asked neighbors if they recognized the defendant
12 and they said that they did.  They recognized him as someone
13 who was living in the home on Hughes Drive and as someone who
14 drove both the black BMW as well as the silver Nissan.
15         About a half-hour later at 4:30 in the afternoon,
16 Phoenix Police Department arrived.  They helped establish a
17 perimeter.  The female that they contacted in the back yard is
18 now claiming that her attorney is instructing her not to go
19 outside.
20         The marshals do deploy nonlethal pepper gas bean bags
21 inside the house in an effort to get people to come out.
22 Nobody comes out until about six o'clock.  The female comes
23 out around six o'clock and says that she does not know if the
24 defendant is inside.
25         So now it's been about three hours.  The marshals

2:18-mj-06121-DKD      DETENTION HEARING      4/3/18

1   then -- or Officer Faranda then presents to a Maricopa County
2   Commissioner an Application for a Body Warrant which is signed
3   and granted and at 7:00 p.m. the defendant is found inside the
4   house.
5           Now, this information is being proffered to the Court
6   to show that the defendant is both a risk for flight and also
7   a danger to the community.  He is a risk for flight because he
8   has, at the very least, been deceptive to Pretrial Services as
9   to where he's actually living while he is here in Arizona
10  pending sentencing.
11          And given the fact that he refused to come out of the
12  house for four hours and that he caused two law enforcement
13  agencies to have to expend a great amount of resources to get
14  him out placed all of the agencies involved in danger not
15  knowing what was going on inside the house.
16          Referring to next the two documents that I referenced
17  in the beginning, the Defendant's Presentence Report
18  Objections and the Defendant's Sentencing Statement, both of
19  the paragraphs that I referenced earlier are statements by his
20  defense counsel in Colorado acknowledging that he had been
21  deceptive about where he was living.
22          Specifically, in the Presentence Report on paragraph
23  6, his argument -- the defense counsel's argument is basically
24  that he does acknowledge that the defendant was not exactly
25  truthful to Pretrial Services in where he was living, but

1  arguing that it was not a material false statement that would
2  render an enhanced sentencing bump for obstruction of justice
3  purposes.
4         And he does the same, makes a similar argument in his
5  Sentencing Memorandum in paragraph 9.
6         The Draft Presentence Report -- and I did confirm
7  with the AUSA since I don't have the Presentence Report --
8  that the addresses that are referenced in both the Defendant's
9  Memorandums and Objections as well as the Draft Presentence
10 Report are consistent with the addresses that we're talking
11 about here in Arizona.
12        Given the fact that the defendant is facing -- or
13 that Pretrial -- that Probation is recommending a sentence of
14 151 months, given their finding that he is in Criminal History
15 Category VI and given his counsel's own recommendation for, I
16 believe, an 84-month sentence, it is the government's position
17 that the defendant is well aware that he is likely to be
18 serving a significant period of time incarcerated in the
19 Bureau of Prisons.
20        Given his current behavior, he is unlikely to report
21 for sentencing on his own on April 12th of this year.
22        We ask the Court to detain him and find that he is a
23 flight risk and a danger to the community.
24        THE COURT:  Thank you.
25        Go right ahead from the defense.

2:18-mj-06121-DKD      DETENTION HEARING      4/3/18

1            MS. JING:  The two pertinent questions here are
2    whether the defendant poses a danger to the community and a
3    flight risk.
4            With respect to the three alleged conditions that are
5    violated here, they all have to do with alleged narcotics use
6    and providing accurate addresses with various respects.  So I
7    don't think we're arguing here about the defendant posing a
8    danger to the community.  We're arguing about whether or not
9    the defendant poses a flight risk.
10           We're here on a pretrial release violation and the
11   defendant has gone through significant court proceedings over
12   the course of multiple -- a long period of time.  He has gone
13   to Colorado eight to ten times of his own volition.  He has
14   not missed a single court appearance or a single court
15   hearing.
16           Respectfully, we acknowledge that there may have been
17   some miscommunication or confusion between the defendant and
18   Pretrial.  We believe a lot of the alleged violations are
19   quite de minimus.
20           To begin with, there is not even a bond violation
21   that requires the defendant to disclose the address of his
22   employer.  That is not a condition that was violated.
23           With respect to his place of residence, the defendant
24   was in Phoenix the entire time moving around between a
25   friend's house and a girlfriend's house.

2:18-mj-06121-DKD     DETENTION HEARING     4/3/18

1    And in that period of time there were some delays in
2    communication with the pretrial release.  We do not believe
3    that this constitutes or this suggests that the defendant is a
4    flight risk, given the fact that he has gone to Colorado of
5    his own volition every single time there has been a court
6    hearing and court appearance.  And there is no reason to think
7    that he would not be able to or would pose a risk of not
8    showing up in Colorado for a sentencing.
9    He has not missed a court date in the past.  The fact
10   that he has moved around a little between a friend's house and
11   a girlfriend's house, we believe, does not suggest that he
12   poses a risk of missing a court date in the future of such
13   significance as a sentencing hearing.
14   Finally, with respect to the oxycodone use, our
15   position is that he did have a valid prescription for
16   oxycodone.
17         THE COURT:  Do you have anything to reflect that?
18         MS. JING:  We were hoping to be able to get a
19   prescription from his family.  They were originally supposed
20   to bring it here at this time and I think that for some
21   reason -- I have been in contact with them this whole time.
22   They haven't been here, but my understanding, based on
23   representations made to me, is that he had a prescription for
24   oxycodone.
25         (Discussion had between defendant and counsel.)

2:18-mj-06121-DKD    DETENTION HEARING    4/3/18

1     MS. JING: The defendant is saying that Evelia Rivera
2  who is on the phone right now, may also be aware of the fact
3  that he does have an oxycodone prescription.
4     THE COURT: Did he take his oxycodone prescription
5  and that resulted in a positive UA for oxycodone?
6     TRAMELL THOMAS: Yes.
7     MS. JING: Yes.
8     THE COURT: All right. Thank you.
9     Anything further from the defense?
10    MS. JING: The defendant would like to actually speak
11 if that is possible.
12    No?
13    THE COURT: It's not really possible. It's now
14 10:30. I did wait ten minutes for the defense.
15    MS. JING: That's understandable.
16    THE COURT: Okay. If there is anything further he
17 would like to relay to you, then you can go ahead and talk to
18 him right now while I wait for the government's rebuttal.
19    The government?
20    MS. PERLMETER: Your Honor, the very fact that the
21 defendant admitted on February 20th when he tested positive
22 for oxycodone that he did not have a current prescription,
23 weighs heavily against the defendant that he did violate a
24 term of his pretrial release.
25    In fact, not even really pretrial release since there

2:18-mj-06121-DKD      DETENTION HEARING      4/3/18

1   has been a judicial finding or there was a jury verdict and
2   the difference between back then and his current position is
3   that previous court dates are all pretrial, pre a finding by
4   the jury of guilt, and now he is facing a recommendation from
5   Probation for a 151-month sentence.
6           And given his activity post the verdict, it shows
7   that he is a flight risk and it demonstrates that his ability
8   to get to court or his willingness to get to court to answer
9   to his charges may not occur.
10          As to his address or staying with friends or being a
11  de minimus violation, Your Honor, the government strongly
12  disagrees.  He admitted himself to Officer Rivera that since
13  his trial, that he's basically been homeless.
14          Despite that, he did not tell Officer Rivera that
15  from the get-go.  He represented that he was living at an
16  address on South 40th Drive and then four to five months later
17  informed Officer Rivera that he had been for the past four to
18  five months living at the address on Berridge Lane which the
19  marshals couldn't even verify.
20          THE COURT:  Counsel, is there anything new in
21  rebuttal?
22          MS. PERLMETER:  No, Your Honor.  No.
23          THE COURT:  All right.  Thank you very much.
24          Is there anything new?
25          MS. JING:  Yes.  Just the fact that the defendant has

2:18-mj-06121-DKD      DETENTION HEARING      4/3/18

1  maintained contact with Ms. Rivera this entire time.  When he
2  represented that he was homeless, I think that was a term of
3  phrase that was potentially misinterpreted.
4          He referred to the fact that he was in transit for
5  the course of a day between a friend's house and a
6  girlfriend's house.  He has, since his conviction, gone to
7  Colorado of his own volition multiple times.
8          During his entire court proceeding he has gone to
9  Colorado of his own volition.  He has never missed a hearing.
10 He has a father and a child who he would like to spend some
11 time with between now and his sentencing hearing since he's
12 not going to have time after that.
13         We believe that, respectfully, the information
14 provided suggests that he is not a significant flight risk
15 that requires detention.
16         THE COURT:  Thank you.
17         The matter is deemed submitted.  I'm going to review
18 the records that were presented to me and then I will,
19 hopefully, be able to make a decision by the end of the day.
20         If I were to release you, sir, I would bring you back
21 into court to have you go over Conditions of Release.
22         If I don't release you, sir, then the order goes to
23 your attorney and you can discuss that with her.
24         TRAMELL THOMAS:  I understand.
25         THE COURT:  All right.  Thank you very much.

```
    2:18-mj-06121-DKD      DETENTION HEARING      4/3/18

1              I do have some documents to read.
2              MS. PERLMETER:  Sorry.  Just one thing.
3              THE COURT:  I do have to go.
4              MS. PERLMETER:  Okay.
5              THE COURT:  Sorry.  I have to go.
6              MS. PERLMETER:  Okay.
7         (Proceedings adjourned at 10:31 a.m.)
8                              * * *
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
2:18-mj-06121-DKD     DETENTION HEARING     4/3/18
```

1               C E R T I F I C A T E

2

3          I, ELIZABETH A. LEMKE, court-approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8          DATED at Phoenix, Arizona, this 2nd day of May, 2018.

9

10

11

12

13                       s/Elizabeth A. Lemke
                         ELIZABETH A. LEMKE
14

15

16

17

18

19

20

21

22

23

24

25