IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00054-WJM-02

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    TRAMMEL THOMAS,

    Defendant.

_____

### GOVERNMENT'S SUPPLEMENTAL SENTENCING STATEMENT
_____

The United States of America, by and through United States Attorney Robert C. Troyer and Assistant United States Attorneys Martha A. Paluch and Bryan D. Fields, submit this Supplemental Sentencing Statement in advance of the August 8, 2018 sentencing hearing scheduled in this case.

**The defendant should receive a two-level enhancement to his sentencing guideline range pursuant to U.S.S.G. § 3C1.2, Reckless Endangerment During Flight**

On March 5, 2018, Magistrate Judge Nina Y. Wang issued a warrant for the arrest of the defendant due to his failure to comply with the conditions of his post-conviction release.  ECF 369.  Given that the defendant was being supervised by the Arizona probation office, it should have been relatively easy to find the defendant and bring him to court.  The Deputy U.S. Marshals (DUSMs) assigned to take the defendant into custody should have been able to go to the address the defendant reported to his probation officer as his residence or his place of employment to take him into custody.

1

Better still, if this was a defendant who really intended to face the consequences of his actions, he would peacefully have surrendered to anyone presenting themselves with a warrant for his arrest.

That's not what happened.  After the warrant issued, the defendant ignored calls from his probation officer. The Marshals interviewed the defendant's former wife, Lola Thomas, in an effort to find the defendant.  Ms. Thomas stated she didn't know where the defendant was.  As a result, the Marshals then had to stake out the defendant's likely locations for hours for the next month.  Figuring out where the defendant might be by trying to find out what car he was driving was also not an easy task.  The defendant was driving a rental car.  Finally, when the Marshals *did* find the defendant, living with his girlfriend, he refused to submit to their authority.  Instead, when the Marshals approached his girlfriend outside and asked her to open the front door, she ran inside and shut the door.

What followed was a siege of several hours in which the defendant --- who was ultimately found inside of the house --- refused to do the right thing and turn himself over.  Eventually, Marshals saw through a garage window that the attic hatch entrance was removed.  That's when the Marshals used bean bag rounds fired from a shotgun-like device to break the windows of the residence, and a remaining window was "raked" or busted out.  The windows were broken to allow for direct communication into the house and for the deployment of pepper spray into the house in an effort to get the occupants to leave the residence.  That didn't work.  The defendant's girlfriend sustained a cut above her eye from the flying glass.  At that point, she came out of the

2

residence. The defendant did not. The Marshals were required to obtain a body warrant to enter the home and enlisted assistance from the Glendale SWAT team in order to remove the defendant from the home. Four hours after this ordeal began, the SWAT team found the defendant hiding in a bedroom. *See* ECF No. 405 (attaching documents and exhibits admitted during detention proceedings).

DUSM Joe Faranda will testify at the sentencing hearing as to the substantial risk of death or serious bodily injury to another person (namely, the defendant's girlfriend and law enforcement) caused by the defendant resisting arrest. Pepper gas, bean bags, window rakers, and a SWAT team were necessary to secure the defendant's arrest. The defendant's conduct also created a substantial risk of death or serious bodily injury to the SWAT team members who went into the home to retrieve an individual previously convicted of aggravated robbery and three counts of using a weapon in a violent crime. These SWAT members had every reason to believe that this defendant might be armed. The defendant's conduct also created substantial risk of death or serious bodily injury to the Marshals who unsuccessfully attempted to get the defendant to vacate the residence. *Cf. United States v. McDonald*, 521 F.3d 975, 979 (8th Cir. 2008) (noting that "heightened risk of physical injury" was created simply as a result of the defendant's actions requiring officers to enter defendant's residence "with force to arrest him").

Specifically, DUSM Faranda will testify that the bean bags, known as Super Sock, contain a warning label that states, "Shots to the head, neck, thorax, heart, or spine can result in fatal or serious injury."[1]

### The defendant's conduct in resisting arrest supports a two-level enhancement pursuant to U.S.S.G. § 3C1.2

Section 3C1.2 provides that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels."  Application Note 3 to this provision explains that the phrase "during flight" is to be "construed broadly and includes preparation for flight.  Therefore, this adjustment also is applicable where the conduct occurs in the course of resisting arrest."  § 3C1.2 App. N. 3.

It is this last phrase that renders the enhancement applicable here.  The defendant resisted arrest when the Marshals were attempting to take him into custody for violating the conditions of his post-conviction release pending sentencing for the offense of conviction.  Therefore, the government submits that § 1B1.3's requirement that Chapter Three enhancements be based upon acts or omissions, *inter alia,* "that occurred in the course of attempting to avoid detection **or responsibility** for that offense" has been met.  (Emphasis added).

Any argument that the defendant's resisting arrest post-conviction is not sufficiently connected to the offense of conviction is refuted by Tenth Circuit law.  The Court "has never required a nexus under § 3C1.2" between the reckless conduct at

---

[1] A redacted version of this label was provided to defense counsel.

4

issue and the offense of conviction. *United States v. Davidson,* 283 F. App'x 612, 614 (10th Cir. 2008). Specifically, the *Davidson* Court stated that "we rejected the argument that the reckless endangerment must occur during the flight to avoid arrest for the particular offense of conviction." *Id.* at 614 (citation omitted). "Instead the enhancement is simply part of the relevant conduct a district court may consider under § 1B1.3 in determining the appropriate offense level and criminal history." *Id.*

In two cases, the Tenth Circuit affirmed application of this enhancement in situations where the defendants were involved in high-speed chases, holding that the defendants engaged in serious conduct that endangered anyone who happened to be along those streets. *See United States v. Cano-Bahena,* 713 F. App'x 753, 761-62 (10th Cir. 2017) (in 'fleeing from law enforcement and attempting to evade law enforcement, [the defendant] did engage in very serious behavior that placed anyone along those residential streets at risk of death or serious bodily injury"); *United States v. Gray,* 512 F. App'x 803, 808 (10th Cir. 2013) (noting that while Tenth Circuit does not require nexus between reckless endangerment and offense of conviction, such nexus did exist between the defendant's crime of conviction and his high speed chase, thereby affirming application of the § 3C1.2 enhancement); *see also United States v. Maldonado,* No. CR 14-4061 JB, 2018 WL 344957, at *7 (D.N.M. Jan. 9, 2018) (finding unpublished Tenth Circuit opinions "which consistently reject a nexus requirement" to be persuasive, and finding that the defendant's "high-speed chase is relevant conduct under § 1B1.3," and therefore, applying "a 2-level enhancement under § 3C1.2").

The facts of this case, the guideline provisions, and corresponding case law, make clear that this two-level enhancement is warranted.

### Revised Guideline Calculation

At sentencing, the government will argue that the following guideline calculation applies:

The base offense level is 7 because the defendant was convicted of mail fraud, which carries a maximum sentence of twenty years imprisonment, U.S.S.G. § 2B1.1(a)(1);

+14 levels as a result of the defendant's intent to cause losses of more than $550,000 but less than $1.5 million, U.S.S.G. § 2B1.1(b)(1)(H);

+2 levels because the defendant stole identities to get other identification cards, U.S.S.G. § 2B1.1(b)(11)(C)(i)-(ii);

+2 more levels because the defendant chose prison inmates, vulnerable in their captivity, as his victims, U.S.S.G § 3A1.1(b)(1); *United States v. Pierre*, 825 F.3d 1183 (11th Cir. 2016);

+2 more levels because the defendant was not content with just a few vulnerable victims and, instead, participated in a scheme to victimize hundreds of inmates, U.S.S.G. § 3A1.1(b)(2);[2]

---

[2] The court agreed with co-defendant Green's counsel that applying an enhancement for the fact there were 10 or more victims, pursuant to U.S.S.G. §2B1.1(b)(2)(A)(i), was essentially double-counting given that the offense level is increased by four levels due to the fact the scheme targeted a large number of vulnerable victims. *See* ECF 390. Therefore, the government did not include these two levels in this calculation.

+2 more levels because the defendant tried to obstruct justice by 1) destroying evidence on his cell phone; 2) reaching out to potential witnesses in violation of the terms of his pretrial release; 3) post-conviction false statements and pretenses regarding his residence; and 4) post-conviction false statements regarding his employment.  U.S.S.G. § 3C1.1.

+2 more levels because of the defendant's reckless endangerment during flight.

The defendant has not accepted responsibility for this offense and should receive no related decrease.  The total offense level is therefore 31.

The probation office calculated the defendant's criminal history as Category IV.  ECF 340, p. 23, ¶ 107.  At offense level 31, the guidelines recommend that the defendant be imprisoned between 151-188 months.  The government will recommend that the Court impose a sentence of 180 months in prison, followed by a three-year term of supervised release.  In addition, the government will request that the Court impose the loss, restitution, and forfeiture amounts as set forth in its Position Statement, ECF 341.

**Government Witnesses**

As stated in prior pleadings, the government will call Special Agent Sandra Ennis to testify at the sentencing hearing to explain her calculation of the loss, restitution and forfeiture amounts due from this defendant.  Detective James Lamberth from the Colorado Springs Police Department will be called to testify as to the circumstances surround the defendant's arrest in the armed robbery/pimping case.  Finally, DUSM Joseph Faranda will be called to

testify as to the circumstances surrounding the defendant's arrest after the SWAT standoff and the circumstances of that event that warrant the application of § 3C1.2.[3]

                   DATED this 24th day of July, 2018.

                   Respectfully submitted,

                   ROBERT C. TROYER
                   United States Attorney

                   By:    s/ *Martha A. Paluch*_____
                   MARTHA A. PALUCH
                   BRYAN DAVID FIELDS
                   Assistant United States Attorneys
                   1801 California Street, Suite 1600
                   Denver, CO 80202
                   Telephone 303-454-0100
                   Facsimile 303-454-0402
                   martha.paluch@usdoj.gov
                   bryan.fields3@usdoj.gov

---

[3] Defense counsel were made aware of the expected testimony from Agent Ennis and Detective Lamberth in prior pleadings, see ECF 324, 341.  They were also provided notice via email of all three expected government witnesses on July 6, 2018.

## CERTIFICATE OF SERVICE

I certify that on this 24th day of July, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsel of record in this case.

s/ *Martha A. Paluch*
MARTHA A. PALUCH
BRYAN DAVID FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov