1                   IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLORADO
2
     Criminal Action No. 16-cr-0054-WJM-2
3
     UNITED STATES OF AMERICA,
4
          Plaintiff,
5
     vs.
6
     TRAMMEL THOMAS,
7
          Defendant.
8
     ------------------------------------------------------------
9
                          REPORTER'S TRANSCRIPT
10                          (Sentencing Hearing)

11   ------------------------------------------------------------

12        Proceedings before the HONORABLE WILLIAM J. MARTINEZ,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 9:33 a.m., on the 22d day of

15   October, 2018, in Courtroom A801, United States Courthouse,

16   Denver, Colorado.

17
                               APPEARANCES
18
19        MARTHA A. PALUCH and BRYAN D. FIELDS, Assistant U.S.
     Attorneys, 1801 California Street, Suite 1600, Denver,
20   Colorado 80202, appearing for the plaintiff.

21        DEFENDANT APPEARING PRO SE.

22
                       MARY J. GEORGE, FCRR, CRR, RMR
23              901 19th Street, Denver, Colorado 80294
                 Proceedings Reported by Mechanical Stenography
24                 Transcription Produced via Computer

25

1              P R O C E E D I N G S

2         (Call to order of the court at 9:33 a.m.)

3              THE COURT:  All right.  We are on the record in

4    criminal case No. 16 cr 054, defendant No. 2, the United

5    States of America versus Trammel Thomas.

6              I'll take appearances of counsel and the defendant.

7              MS. PALUCH:  Good morning, Your Honor.  Martha

8    Paluch and Brian Fields appearing on behalf of the United

9    States.  With us at counsel table is Special Agent Sandra

10   Ennis.

11             THE COURT:  Good morning to the three of you.

12             MR. FIELDS:  Good morning, Your Honor.

13             THE DEFENDANT:  Good morning, Your Honor.  Trammel

14   Thomas.

15             THE COURT:  What's the matter?

16             THE DEFENDANT:  Oh, I'm okay.

17             THE COURT:  All right.  Will the probation officer

18   please identify herself for the record.

19             PROBATION OFFICER:  Good morning, Your Honor.

20   Laura Ansart with the probation office.

21             THE COURT:  Welcome, Ms. Ansart, and good morning.

22             All right.  We're here for the sentencing of the

23   defendant.  The record reflects that on the 30th of November

24   of last year, a jury convicted Mr. Thomas on each of the

25   seven counts of the superseding indictment returned by the

1    grand jury against him in this case.

2          With respect to Count 1, conspiracy to defraud the

3    Government with respect to claims in violation of 18 United

4    States Code Section 286, there was a guilty verdict returned

5    on that count.  With respect to Counts 2 through 7, there

6    were also guilty verdicts returned by the jury on the -- and

7    aiding and abetting mail fraud counts in violation of 18

8    United States Code Sections 1341 and 2.

9          All right.  Let's begin.  Ms. Paluch, can you

10   briefly summarize your respective sentencing recommendation

11   and including the custodial sentence, the restitution, and

12   supervised release the Government will be recommending.

13         MS. PALUCH:  Yes, Your Honor.  The Government is

14   seeking a sentence of 180 months in prison, followed by

15   three years of supervised release, $700 in special

16   assessment fees, which is $100 on each count of conviction,

17   an order of restitution in the amount of $563,890.85,

18   $562,487.85 of that amount to be ordered jointly and

19   severally with his codefendants, Heather Carr, Marcelle

20   Green, and Mercedes Diaz.  And a final order of forfeiture

21   in the amount of 260,226 -- 226 hundred and 85 cents.  Thank

22   you.

23         THE COURT:  And let me see.  Did we cover

24   forfeiture in the report, Ms. Ansart?  And I don't recall

25   there being a forfeiture order against any of the

1    codefendants.

2         MS. PALUCH:  There was not, Your Honor, and that's

3    because the codefendants all pled guilty to conspiracy, the

4    286 charge, for which we cannot obtain forfeiture.  So the

5    forfeiture is only applicable on the mail fraud counts of

6    conviction.

7         THE COURT:  All right.  Ms. Ansart.

8         PROBATION OFFICER:  Your Honor, the only mention of

9    that is just that it was alleged in the superseding

10   indictment.

11        THE COURT:  Okay.  Well, I'm completely unprepared

12   for this forfeiture.  Did you give notice to me that you

13   were going to be seeking forfeiture of a quarter of a

14   million dollars?

15        MS. PALUCH:  I did, Your Honor.  It's in ECF 341

16   and I also filed a preliminary order of forfeiture --

17        THE COURT:  All right.

18        MS. PALUCH:  -- prior to the last sentencing

19   hearing.

20        THE COURT:  One second.  Where does this 220,000

21   come from?

22        MS. PALUCH:  Your Honor, we submitted a chart which

23   articulates how we calculated forfeiture with respect to

24   this defendant.  And what we did is we only attributed to

25   him the amount of loss from the 52 debit cards that were

5

1   found in his possession, as well as we used the addresses

2   upon which he was convicted beyond a reasonable doubt.  And

3   we used that calculation under the guidance of Honeycut to

4   reduce the forfeiture amount in that way.

5           THE COURT:  What -- give me your ECF number again.

6           MS. PALUCH:  The ECF for our position on forfeiture

7   is found at 341.  And, actually, the spreadsheet that sets

8   forth the forfeiture amounts is found at 341-5.  And if I

9   have a moment, I might be able to find the ECF number of the

10  preliminary order of forfeiture, but I know it was entered

11  just prior to the August 8th sentencing hearing that was

12  scheduled.

13          THE COURT:  Let me see.  Well, because there wasn't

14  any discussion of this in the report is why I didn't prepare

15  for it in my sentencing script.  Let me see.  I've got 341

16  in front of me.

17          MS. PALUCH:  And, Your Honor, if I could, the

18  preliminary -- motion for preliminary order of forfeiture is

19  found at 343.

20          THE COURT:  Okay.  So your spreadsheet's at 341-5?

21          MS. PALUCH:  Yes, sir.

22          THE COURT:  All right.  Ms. West, can you do me a

23  favor and go to ECF 341, pull up Exhibit 5, and print it out

24  and bring it to me here on the bench.

25          MS. PALUCH:  And, Your Honor, if I could interrupt.

1    I apologize.  But you will find that same chart in your

2    exhibit book in front of you.  It's found -- we have marked

3    that exact same chart as Government Sentencing Exhibit 72-2.

4    That is the same chart that we submitted with ECF 341.

5             THE COURT:  Oh, okay.  So you don't have to print

6    it out.  So that's Exhibit GS 72-2.

7             COURTROOM DEPUTY:  Your Honor, do you need the

8    motion 343?

9             THE COURT:  No, I have it.  I have that in the

10   file.  Yeah.  So that's your spreadsheet.  Are you going to

11   use this with a witness?

12            MS. PALUCH:  I am, Your Honor.

13            THE COURT:  Okay.  All right.  Well, then, we'll

14   deal with it when we get there.

15            MS. PALUCH:  Thank you.

16            THE COURT:  And give me the -- oh, it should be in

17   the -- I don't have it in front of me.  If you have the

18   number handy, can you give me the total number for

19   forfeiture --

20            MS. PALUCH:  Yes, Your Honor.  The amount of

21   forfeiture that we are seeking is 260 -- I'm having trouble

22   this morning -- $260,000 2 -- 260,226 -- I am struggling,

23   I'm going to give you the numbers, two six zero two two six

24   point 85.

25            THE COURT:  All right.  Mr. Thomas, I need you to

1    tell me your position on what you are recommending I impose

2    upon you in terms of the length of your custodial sentence,

3    the length of your supervised release, the amount in

4    restitution, and the amount in forfeiture.

5              THE DEFENDANT:  Whew.  Yes, Your Honor.  I was

6    thinking a custodial sentence of -- excuse me -- 84 months.

7              THE COURT:  Okay.

8              THE DEFENDANT:  A three-year probation period.

9              THE COURT:  What seems to be the problem, Mr.

10   Thomas?

11             THE DEFENDANT:  I've been dealing with a medical

12   issue this entire morning and last night.  I --

13             THE COURT:  Well, you know, I told you in August --

14   on August 8th that, you know, the delay tactics aren't

15   getting you anywhere.  All right?

16             THE DEFENDANT:  No, sir.

17             THE COURT:  Hold on.  Listen to me.  You sit down.

18             I'm running out of patience with you.  Look at me

19   and listen to me.

20             You're going to get a minimum of seven years, all

21   right?  Because you just said that that's what you're asking

22   for.  So the amount -- if we take five years you get to the

23   sentencing hearing, it ain't going to shorten your time by

24   one day.  So I don't know why all these delay tactics on

25   your part.  You just happened to get sick the morning of

1    your sentencing hearing.  I find that pretty curious.

2                THE DEFENDANT:  Your Honor, I -- I've been trying

3    to keep pace with all the motions that were filed in the

4    last three days.  I haven't slept or ate much trying to

5    digest all the information --

6                THE COURT:  How does that make you physically ill?

7                THE DEFENDANT:  And -- sorry, sir.  And when I did

8    eat, I've been sick since then, since I ingested food.  I

9    don't know -- I tried to eat and I --

10                THE COURT:  You know, the -- you haven't explained

11    to me how it is that reviewing the filings in this case have

12    made you physically ill.

13                THE DEFENDANT:  No, sir.  I mean, I'm sorry.  I

14    hurt.  I have -- leading up to this day, I've been trying to

15    understand the filings that were filed and, in doing so, I

16    wasn't eating or sleeping much.  Actually, the night before

17    last -- or last night -- or yesterday, I'm sorry, I ate food

18    for the first time and I've been feeling light-headed and

19    nauseated since.  And --

20                THE COURT:  Well, I mean, if any of this has to do

21    with anxiety of reviewing -- the filings coming from the

22    Government on a *pro se* basis, I told you on August 8th,

23    strongly, strongly, strongly urged you not to fire your two

24    lawyers.  You had two excellent lawyers who were doing a

25    great job for you.

1    I'm convinced you pulled that to try to delay these

2    proceedings and look -- and it hasn't gotten you anywhere.

3    And so that's part of the problem that we're dealing with

4    here is we're -- these matters are so much more complicated

5    when there's not knowledgeable counsel involved in this

6    case.

7    Are you well enough to proceed with this hearing

8    today?

9    THE DEFENDANT:  I told the marshal, I'm getting --

10   given my ulcer -- oh -- I'm just very -- in clenching pain

11   I'm experiencing.  I'm sorry.  I apologize.

12   THE COURT:  Are you prepared to go forward with

13   this hearing this morning?

14   THE DEFENDANT:  Yes, sir.

15   THE COURT:  All right.

16   THE DEFENDANT:  Whew.

17   THE COURT:  You were saying what your

18   recommendation was in the 84-month custodial sentence, three

19   years supervised release.  And what is your request with

20   respect to amounts of restitution and forfeiture?

21   THE DEFENDANT:  I'm sorry, sir.  I'm sorry.  It's

22   hard to listen I'm in so much pain.

23   THE COURT:  Let me say it again.  You've told me --

24   you've put on the record that you're requesting a custodial

25   sentence of 84 months, supervised release period of three

1    years, a -- oh, and you had not -- at least I hadn't heard

2    or I missed what your recommendation is that you're asking

3    of me with respect to restitution and forfeiture amounts.

4            So do you have amounts that you want to put on the

5    record?

6            THE DEFENDANT:  Okay, sir, yes.  First, when I --

7    the custodial --

8            THE COURT:  No, you already gave me custodial and

9    supervised release.  I'm asking you:  Do you have a

10   recommendation to give me with respect to the amounts that I

11   should order you pay in terms of restitution and forfeiture?

12           THE DEFENDANT:  Yes.  $357,231.

13           THE COURT:  For what?

14           THE DEFENDANT:  That is for the restitution.

15           THE COURT:  Okay.  Do you have a request of the

16   amount you are asking me to impose in terms of forfeiture,

17   if any?

18           THE DEFENDANT:  That portion I do not understand,

19   sir.

20           THE COURT:  All right.  Well, then maybe as we

21   proceed with the hearing and the Government puts on its

22   evidence on forfeiture, you may better understand it and

23   then you can tell me what your position is at that time.

24           All right.  Let me, Ms. Paluch, outline what I --

25   it's my understanding that the Government wishes to put on

1    evidence about today.  Whether there was -- whether the

2    indicted scheme was devised by Ms. Carr and Mr. Thomas, and

3    that's going to objection No. 4.  The amount of loss and

4    restitution -- and now maybe I should amend that -- were you

5    thinking of doing it jointly with the forfeiture amount?

6            MS. PALUCH:  Your Honor, what I intended to do was

7    start with 72-1, which Agent Ennis set forth how she

8    calculated loss, and how we tied those addresses to the

9    defendant or one of the co-conspirators.

10           Also to discuss how -- his jointly undertaken

11   criminal activity -- the scope of that activity -- and then

12   separately address how Agent Ennis calculated the chart for

13   forfeiture.

14           THE COURT:  Okay.  So you do want to deal with

15   loss, restitution, and forfeiture at the same general time,

16   not -- obviously you have to break it out in steps, but

17   you're not going to do -- do an allowance for restitution

18   and then, you know, an hour later get to forfeiture.

19           MS. PALUCH:  That's correct, Your Honor.

20           THE COURT:  Okay.  Thank you for that.

21           All right.  The other thing I am -- it's my

22   understanding the Government wishes to put on evidence about

23   is whether, during the time of the charged conduct in this

24   case, the defendant was also engaged in the commercial sex

25   business and committed armed robbery, rape.  That's one

1    additional, right?

2         MS. PALUCH:  That's correct, Your Honor.

3         THE COURT:  I'm just trying to get a lay of the

4    land here of what we are trying to accomplish at this

5    hearing.

6         MS. PALUCH:  Certainly.

7         THE COURT:  All right.  And then I think the final

8    one is whether there should be a two-level enhancement for

9    reckless endangerment added to the base offense level given

10   the flight or attempted flight of the defendant during his

11   arrest in Arizona; is that correct?

12        MS. PALUCH:  It is; correct, Your Honor.

13        THE COURT:  All right.  So this is how we're going

14   to do it.  The first one, whether the indicted scheme or --

15   was devised by defendants Carr and Thomas, we will -- I'll

16   take evidence when we're dealing with objection No. 4.

17        With respect to amounts of loss, restitution, and

18   forfeiture, we will receive evidence on that when we deal

19   with defendant's objection No. 7.  I'm going to skip over

20   the third one.  The fourth one with respect to reckless

21   endangerment, we will proceed to that forthwith.

22        But let me first ask both sides for their position

23   on whether I should exercise my discretion in this case

24   under 3553(a) and take evidence on and consider alleged

25   conduct that even the Government admits is not relevant

1    conduct, has to do with state charges that were never proven

2    by a reasonable doubt standard, were dismissed and, as far

3    as I can see, have nothing to do with the conduct that the

4    defendant was convicted of during the trial.

5          So, Ms. Paluch, let me ask you first why -- I

6    understand you cited cases I have the discretion to do that.

7    But especially when there are three other codefendants that

8    have already been sentenced and their sentences, to some

9    extent, greater or lesser, depending on one's view, form at

10   least a framework or background to what they received, and

11   especially Ms. Carr, whom the Government in one of our

12   hearings stated on the record viewed as the most culpable of

13   the four defendants in the scheme for which this defendant

14   went to trial, why should I exercise my discretion and take

15   evidence of a wholly unrelated matter that never got past

16   the charging phase?

17         MS. PALUCH:  Thank you, Your Honor.  First of all,

18   while this scheme was unfolding and being carried out, the

19   defendant was involved in the pimping activities with Ms.

20   Duncan at the very same time he's committing this offense.

21   He's also in prison on those charges while the scheme is

22   continuing.  So we would submit to you that the pimping

23   charges and arrest on those offenses is not so attenuated

24   from the instant case so as to render it a completely

25   separate matter.

1          THE COURT:  But the only connection seems to be a

2    temporal one.  So that, you know, understanding the concept

3    that humans can be engaged in more than one activity at a

4    time, I grant you this was done at a contemporaneous time,

5    but what connection, other than temporal, is there between

6    these alleged pimping and armed robbery and rape charges,

7    which, again, never went past the charging phase and were

8    dismissed, what relation do they have to a scheme to defraud

9    the U.S. Department of Education by fraudulently filling out

10   FAFSA forms?

11          MS. PALUCH:  I would agree with you, Your Honor,

12   it's separate criminal conduct, and we would submit to you

13   that it's properly considered by this Court as the history

14   and characteristics of this defendant under 3553(a).  And as

15   the Court has referenced in our pleading, we provided the

16   Court with a number of cases which stand for the proposition

17   that even uncharged conduct, even conduct on which a

18   defendant is acquitted, is properly considered by the

19   sentencing court.

20          And here we have a defendant who spent 11 months in

21   prison, and it was only because witnesses refused to testify

22   that those charges were dismissed.

23          THE COURT:  Well, he wasn't acquitted, right?  The

24   charges were dismissed --

25          MS. PALUCH:  They were dismissed, Your Honor,

1    because witnesses refused to come forward and testify --

2           THE COURT:  Correct.

3           MS. PALUCH:  -- which is a theme we have seen

4    throughout with Mr. Thomas.  And so we would submit under

5    3661, the Court is entitled to consider anything at

6    sentencing --

7           THE COURT:  True.

8           MS. PALUCH:  -- 3553 says you are to consider

9    history and characteristics.  We think the criminal conduct

10   that this defendant has been engaged in over the course of

11   his life is proper information for this Court to consider.

12   It also is proper to consider it in deterrence, it's proper

13   for the consideration of protection of the public.  All of

14   that goes into the proper considerations under that statute

15   of the Court having to consider the person before you being

16   sentenced.  And in trying to protect the public from him,

17   all of that prior criminal conduct, we submit, is

18   appropriate for the Court to consider.

19          Now, what you will be hearing from today is a

20   detective from the Colorado Springs Police Department,

21   Defendant Lambert, and he is going to talk to you about his

22   presence on the scene when this defendant was arrested on

23   the pimping charges, the money that he had with him, which

24   is what Ms. Duncan said he would have on him that was all

25   the money she had earned.  And we just think the case law

1    and the statutory law absolutely supports considering -- the

2    Court considering all this conduct.

3            THE COURT:  Okay.  One second.  Now, you did say

4    when I -- at the beginning of the hearing that the

5    Government continues to seek a 180-month sentence?

6            MS. PALUCH:  That's correct, Your Honor.  Which is

7    not the top of the guidelines, it's within range.

8            THE COURT:  I understand.  Right.  Let me tell you,

9    before I turn to Mr. Thomas and get his view on this, one of

10   the concerns I have about proceeding in the fashion the

11   Government is suggesting with respect to this other conduct

12   is this is one way -- this is a back-door way to get in

13   front of me matters that if they were going to trial in the

14   criminal context would have to be proven up by beyond a

15   reasonable doubt status.  But in a sentencing hearing,

16   because the standard is preponderance of the evidence, that

17   other criminal conduct can be proven up, to use that term,

18   by a preponderance of the evidence, a far, far, far lower

19   standard.  And that's a concern I have.

20           So given that comment, let me turn to Mr. Thomas.

21   You understand what we're talking about, right?

22           THE DEFENDANT:  Yeah, I'm following.

23           THE COURT:  Why don't you talk to me sitting down.

24   It will probably be easier for you.

25           THE DEFENDANT:  I'm following you as best as I

1    could, Your Honor.  I'm having trouble following --

2              THE COURT:  Do you have water there with you?

3              THE DEFENDANT:  Yeah, I do.  I drank that first

4    cup.  Whew.  So sorry, Your Honor.  But I -- I agree with

5    you for relevant conduct on past charges that I was not

6    convicted on -- oh, it has nothing to do with the issue

7    sentencing charges that -- uhm, whew, sorry, Your Honor.

8    Can I take a break?

9              THE COURT:  I don't want to be here all day, Mr.

10   Thomas.

11             THE DEFENDANT:  No, sir.  I just -- my stomach is

12   really hurting too bad.

13             THE COURT:  What do you want to take a break to do?

14             THE DEFENDANT:  Oh.  Try to use the restroom.

15   Whatever I -- I have in me, get it out of me some way.  It's

16   hurting bad.  It's making me light-headed.  I'm barely

17   comprehending what's going on, but I'm missing certain parts

18   when the pain comes.

19             THE COURT:  As I mentioned to you before, you are

20   severely taxing my patience.

21             THE DEFENDANT:  I'm --

22             THE COURT:  I have spent more time on this case --

23   on your case and your trial and 500 filings have eaten up so

24   much of my time that I haven't been able to spend on other

25   cases, including civil cases and other criminal cases and

1    there comes a point when enough is enough.

2            We're going to take a 10-minute break and I expect

3    you to be able to be in a position to go straight through

4    the hearing.  Do you understand?  Do you understand me?

5            THE DEFENDANT:  I do, sir.  I do.

6            THE COURT:  All right.  We'll take a 10-minute

7    recess.

8        (Recess 10:00 a.m. to 10:10 a.m.)

9            THE COURT:  Mr. Thomas -- the mic's off -- I need

10   you to put on the record your position on whether I should

11   consider these state charges that were dismissed against

12   you.

13           THE DEFENDANT:  I'm sorry, sir.  Oh.  Whew.

14           THE COURT:  Are you going to be in a position to go

15   forward with this hearing today?

16           THE DEFENDANT:  I feel like I have a bulge in my

17   stomach, sir.  I can't go on.

18           THE COURT:  All right.  I want to at least deal

19   with this issue today because I think the Government's

20   entitled to know how I feel about this.  Mr. Thomas, this is

21   in your -- in your interest.

22           THE DEFENDANT:  Okay.  I ask the Court to not

23   consider the past offense as relevant conduct for this

24   sentencing.

25           THE COURT:  All right.

1              THE DEFENDANT:  Whew.

2              THE COURT:  Let me state -- Mr. Thomas, please sit

3    up.  Keep it together for another five minutes.  This is in

4    your interest.  Do you not understand what things are in

5    your interest and when they're against your interest?

6              THE DEFENDANT:  Yes, sir.  Yes, sir.

7              THE COURT:  Keep it together for five minutes.

8              All right.  I am not going to take evidence on

9    this -- these dismissed state charges, and I want to put on

10   the record why I am not going to exercise my discretion in

11   favor of hearing and receiving evidence on this point.  I

12   will, however, accept an offer of proof from the Government.

13             So almost every day in this job, I read in a

14   presentence report that includes information about charges

15   of unrelated criminal conduct that were, for one reason or

16   another, dismissed.  And it's in almost every single PSIR

17   that I read.  So for the first time in almost eight years

18   that I've been on the bench, the Government has gone to the

19   length of resurrecting a charge of nonrelevant conduct which

20   the Government has admitted in its paper is not relevant,

21   which were unprovable under a beyond a reasonable doubt

22   standard, and now via a sentencing hearing wishes to prove

23   these charges by preponderance of the evidence.

24             And I don't -- I understand what Ms. Paluch said on

25   the record, but for the reasons I'm going to state on the

1    record, I think it would be unjust for me to do that in this

2    case.

3              The defendant is being sentenced, I have here on my

4    script, today, but he's not going to be sentenced today

5    because we're going to have to reschedule this hearing yet

6    again.  But when we do get this darn sentence imposed, he's

7    being sentenced for submitting false FAFSA applications to

8    the Department of Education.  Nothing more, nothing less.

9              His three codefendants have already been sentenced

10   in this case and have received custodial sentences ranging

11   from a high of 57 months to a low of 24 months.  I'm fully

12   aware that the Criminal History Category of this defendant

13   exceeds that of his codefendants, but from a sense of

14   proportionality, which I see as one of the animated

15   considerations for what constitutes justice over all

16   under -- or over all, and under 3553(a) in particular, I

17   don't understand how the Government can rationalize seeking

18   the sentence of 180 months for Mr. Thomas for this crime, a

19   sentence which is 216 percent greater than the sentence I

20   imposed on Ms. Carr, keeping in mind that at the sentencing

21   hearing for Ms. Diaz, the Government took the position on

22   the record that Ms. Carr was the most culpable member of

23   this criminal enterprise.

24             Were I to impose a sentence of 180 months on Mr.

25   Thomas, that would be a whopping 650 percent greater than

1    the sentence I imposed on Ms. Diaz.  So for these reasons, I

2    find that in the interest of justice, as well as the

3    applicable law under the sentencing statute, that all those

4    would be undermined were I to exercise my discretion in

5    favor of a hearing -- of hearing evidence with respect to

6    unproven -- criminally unproven, dismissed, and completely

7    unrelated alleged criminal conduct.

8             Therefore, I will take no evidence on this matter

9    at this sentencing hearing.  But I will allow the Government

10   to make an offer of proof, should it choose to do so, at

11   this time.

12            MS. PALUCH:  Yes, Your Honor.  First, I'd like to

13   address the disparity between --

14            THE COURT:  I've already ruled, so --

15            MS. PALUCH:  That's correct --

16            THE COURT:  So to the extent you want to address it

17   in some type of form of objection, go ahead.

18            MS. PALUCH:  Your Honor, I would like to make a

19   record for that.

20            THE COURT:  Go ahead.

21            MS. PALUCH:  As the Court knows, those other

22   defendants all agreed to plead guilty.  They all pled guilty

23   to a conspiracy charge which starts out at a 6 in the

24   guideline range; with mail fraud we're starting at 7.  There

25   are four points that we are arguing should be assessed to

1    this defendant based on obstructive conduct under both of

2    the provisions of 3C1.1 and 3C1.2.  He is in an entirely

3    different Criminal History Category score.

4         So while there is disparity, there's explanation in

5    the record for that disparity.  And we have not asked the

6    Court to assess points on uncharged conduct, none of the

7    pimping evidence that we wanted to present to the Court

8    increased his guideline range at all.  He got to that

9    guideline range on his own through his conduct.  He did not

10   receive acceptance of responsibility.  We have stayed within

11   an advisory guideline range, so the guidelines themselves

12   say that that's a justified sentence.

13        And we -- so we dispute that it's not -- that we

14   can't explain on the record why we are seeking the sentence

15   that we are.

16        THE COURT:  I never said you couldn't explain on

17   the record why you're seeking it.  I was just denying your

18   request to exercise my discretion to receive the evidence in

19   an evidentiary hearing and to consider that evidence under

20   3553(a).

21        MS. PALUCH:  Correct.  And, Your Honor, just so the

22   record is clear as we have stated, it is our position that

23   that evidence is entirely appropriate for the Court to have

24   at its disposal all of the information about the individual

25   before you in imposing an appropriate and just sentence.

1        THE COURT:  All right.  Do you want to make an

2   offer of proof?

3        MS. PALUCH:  As to the pimping offenses?

4        THE COURT:  Yes.  So let me just state so the

5   record is clear:  I will construe everything you've just

6   said as an objection to my ruling and that objection is

7   overruled.

8        I'll allow the Government to make an offer of proof

9   with respect to the evidence it would have put on had I

10   taken evidence on this issue.

11        MS. PALUCH:  Yes, Your Honor.  And given that

12   Detective Lambert was AUSA's Fields' witness, I'm going to

13   ask AUSA Fields to make a proffer as to the testimony that

14   we anticipated from that witness.

15        THE COURT:  That's fine.

16        MR. FIELDS:  May I have a moment, Your Honor?

17        THE COURT:  You may.

18        MR. FIELDS:  Your Honor, first, in terms of this --

19   there are actually two separate things we wanted to include

20   as uncharged conduct.  The first is the rape of the victim,

21   C.D., in the records.  The Court has before you, I think, in

22   the PSR, a victim impact statement from that witness, so I

23   would just incorporate that letter by reference as something

24   the Court should consider.

25        THE COURT:  Okay.

1          MR. FIELDS:  With regard to Mr. Lambert, what I
2      would say is that if called to testify, he would testify as
3      follows:
4          That at around 4:00 or 5:00 a.m. on November 11th,
5      2010, a victim woke to find a woman, another victim, texting
6      on her phone.  About 20 minutes later --
7          THE COURT:  Hold on, I'm -- can you repeat that
8      sentence.  I just -- I didn't follow that.  There were too
9      many indefinite pronouns.  Maybe you could fill -- you know,
10     I'd say probably it's better you don't read from it
11     verbatim.  You may want to fill in certain information that
12     will make the record clear because that sentence didn't make
13     any sense to me.  And --
14         MR. FIELDS:  Thank you very much, Your Honor.
15         THE COURT:  -- and --
16         MR. FIELDS:  I will make it make sense, of course.
17     I will make it make sense.  So let me start over again.
18         So at around 4:00 or 5:00 a.m. on November 11th,
19     2010, a victim was in a room with a woman who was texting on
20     her phone.  About 20 minutes later, the defendant, Trammel
21     Thomas, began knocking loudly on the door of the hotel room
22     that the woman and the man were sharing.
23         When the man answered the door, the defendant, who
24     had a knit cap obscuring his face, walked into the room.
25     The defendant pulled out a gun, pointed it at the victim,

1    the man, and told the man to get on the ground.  The man did

2    what he was told.  The defendant then rummaged through the

3    man's stuff.  He took his cell phone, a laptop, a camera, a

4    watch, and about $500.  The defendant yelled at the woman to

5    pack up her stuff and the two of them left together.

6              James Lambert would testify that he took that

7    testimony from the victim, the man, who was in the room.

8    And that later on when he talked to the woman, she

9    identified the defendant as the man who entered that room

10   and robbed the two of them.  Now, later on, Detective

11   Lambert, investigating this robbery, was able to find the

12   woman who had been in the hotel room using a website called

13   Backpage.  Backpage is a website frequently used by

14   individuals advertising escort services or prostitution

15   services.

16             THE COURT:  Right.

17             MR. FIELDS:  Detective Lambert responded to an ad

18   on Backpage for the woman who had been in that hotel room

19   with the victim.  Based on that, he was able to set up a

20   meeting with her at a hotel in Colorado Springs.  It was the

21   Motel 6 located on Academy Boulevard down there.

22             When Detective Lambert went to that hotel with a

23   team of other officers from the Colorado Springs vice task

24   force, they observed the defendant and his ex-wife, Lola

25   Thomas, at the hotel.  When Detective Lambert went to meet

1   with the woman, who was identified as Christine Duncan,

2   Christine Duncan offered him sex in return for money.

3           He gave a signal for an arrest and at that point,

4   they saw the defendant and his wife get into a red car and

5   drive off.  When they pulled over the car, the woman, his

6   wife, was no longer in there.  She had gone to check with

7   the officers as to what had occurred.

8           When the defendant was pulled over by the officers,

9   the officers arrest him because he was on parole.  When they

10  did a search, they found inside the console of the car a

11  broken cell phone.  And those exhibits are in the Court's

12  exhibit book.  Those are Government's Exhibits 9 and 10.

13  And Detective Lambert will testify that is, in fact, the

14  cell phone that was found during that search.

15          Later on after obtaining evidence from Christine

16  Duncan at that location, they obtained a search warrant to

17  search her apartment, 3820 Resident Drive -- Radiant Drive.

18          When they went to 3820 Radiant Drive, they found

19  men's clothes inside and other indicia that Trammel Thomas

20  was, indeed, the occupant of that particular apartment.

21          So that would be Detective Lambert's testimony.

22          THE COURT:  Okay.  All right.  Thank you for that.

23  Just so we know where we're going to start up when we return

24  at our rescheduled -- yet again rescheduled sentencing

25  hearing, I will take evidence from the Government, again, on

1    the -- whether the indicted scheme was devised by Ms. Carr

2    and Mr. Thomas when dealing with objection No. 4; I'll take

3    evidence on the amounts of loss, restitution, and forfeiture

4    when dealing with the objection to No. 7; and I will also

5    take evidence with respect to the two-level sentencing

6    enhancement under guideline Section 3C1.2.  3C1.2.

7              Ms. Ansart, if you will please file -- you know,

8    we're not going to -- Ms. Paluch.

9              MS. PALUCH:  I'm sorry to interrupt, Your Honor.

10   This is the second time we have flown Deputy United States

11   Marshal Joe Faranda from the District of Arizona to

12   Colorado.

13             THE COURT:  Right.

14             MS. PALUCH:  He is available in the witness room.

15   Is there any way he could present his direct testimony, if

16   the defendant is well enough to cross him, on the events of

17   the SWAT standoff, at least --

18             THE COURT:  For the fleeing sentencing enhancement?

19             MS. PALUCH:  That's correct, Your Honor.  Just to

20   address that one enhancement, and we can proceed on the

21   remainder of the hearing at the Court's pleasure.

22             THE COURT:  All right.  Mr. Thomas, can you do

23   that?

24             THE DEFENDANT:  Cross-examine the witness?

25             THE COURT:  Right.  The --

1          MS. PALUCH:  It's a deputy U.S. Marshal.

2          THE COURT:  Deputy marshal from Phoenix.

3          MS. PALUCH:  Phoenix.

4          THE COURT:  Having to do with your -- the incidents

5    surrounding your arrest down there.

6          THE DEFENDANT:  I don't think I can, sir.  I'm

7    sorry.  I have a hard time sitting up right now.  I'm

8    fighting everything right now in me to sit up.

9          THE COURT:  If this were a civil case I know

10   exactly what I'd do, but my hands are tied, Ms. Paluch.

11         MS. PALUCH:  I understand, Your Honor.

12         THE COURT:  And I sympathize -- I understand the

13   frustrations that you and your office must have with this

14   case and with this defendant.  I understand your

15   frustrations with respect to your witnesses.  Again, if this

16   were a civil case, I'd know how to handle it pretty quickly,

17   bring all this to an end, but my hands are -- I just don't

18   have that kind of flexibility in a criminal case.  And if I

19   were to force this defendant to go forward right now and

20   force him to do a cross examination of a witness that he's

21   just told me on the record he's not prepared to do, he will

22   file an appeal, the Tenth Circuit will appoint the -- the

23   Tenth Circuit will appoint pro bono counsel and you know the

24   argument they will make.

25         MS. PALUCH:  I understand that, Your Honor, and I

1        respect the Court's ruling and we will go that route.

2               Could I just indulge -- could the Court indulge me

3        just to make a brief record?

4               THE COURT:  Sure, go ahead.

5               MS. PALUCH:  It's our position that this is simply

6        a delay tactic; that the defendant is malingering.  And the

7        reason why we think that, Your Honor, is since the spring,

8        essentially April of last year, this defendant has been

9        housed at FDC Englewood, which is essentially a jail.  He

10       understands, given his prior 10-year term of imprisonment,

11       that he's looking at designation to a higher security

12       prison.  And I consulted with senior attorney advisor Clay

13       Cook with the U.S. Bureau of Prisons about this very issue

14       because we anticipated something like this might come up,

15       and it's our position he's delaying because the conditions

16       are better at the jail than they are going to be at a higher

17       security prison.  And Clay Cook confirmed exactly what we

18       were talking about.  And he explained to us that the

19       restrictions on his movement once he's designated in the

20       Bureau of Prisons is going to be much more than the freedom

21       he's enjoying -- relative freedom he's enjoying at FDC

22       Englewood.

23              So it's our position, no matter when the Court sets

24       this, he's going to say that he needs additional time.

25              There's another point I'd like to make, Your Honor.

1    He's indicated that the reason for his illness is he's been

2    trying to digest years of pleadings in the three days prior

3    to this hearing.  You authorized him to represent himself

4    back in August.  He's had two months to prepare for today's

5    hearing.  To the extent he's saying he tried to cram it all

6    in the last three days and that's why he's light-headed,

7    it's our position this is nothing more than a delay tactic,

8    and that we will continue on this road.

9          We're going a year after sentencing -- I mean after

10   he was convicted at trial, and we'll continue to see delays

11   is our estimation, and so we just wanted the record to be

12   clear that conditions at FDC Englewood are much -- much

13   nicer and we would ask that the Court reschedule this to a

14   time as soon as practical since everyone is prepared to

15   proceed on this.

16         THE COURT:  I would love to do it tomorrow, but

17   your office has filed a rash of new cases.  I have -- just

18   to give you a taste of my docket, three Mondays in a row,

19   late November to early December, I have criminal jury

20   trials -- initial settings, I grant you -- from your office,

21   I've been assigned 15 cases in one week, that I'm quintuple

22   booked for trials in the upcoming month and six weeks.  I

23   just don't have the flexibility.

24         You know that we have been down to six active

25   Article III judges since March of 2016.  Congress, for

1    whatever reason, is not getting around to confirming Mr.

2    Domenico, and each month this goes on, my five active

3    colleagues and I just get more and more buried.  And I'm

4    working harder than I ever have in my entire career as a

5    lawyer or a judge.  I have to start pacing myself or I'm

6    going to put myself in the hospital.

7           So I can't -- I can't schedule this in the next

8    month or six weeks, as much as I would like to.  Let me also

9    say for the record, I agree with everything you just said.

10   I am going to put on the record that it is the Court's view

11   and belief that this is a delay tactic, a malingering

12   tactic.  And I am running out of patience -- you can sit

13   down, Ms. Paluch.

14           MS. PALUCH:  Okay.

15           THE COURT:  Mr. Thomas, I am -- I'm going to give

16   you one more continuance and that's it.  You know, unless

17   you're having emergency surgery on the day that I'm going to

18   give you, we're going to go forward.  And I don't want any

19   story about all of a sudden -- after a year, all of a sudden

20   the diet doesn't work for you and now you're ill because of

21   the diet or you're stressed to the max because you're

22   reviewing hundreds of filings, which is of your own doing

23   because you fired two excellent lawyers that had been

24   appointed to you at taxpayer expense.  All right?

25           So I'm going to give you another hearing.  And I

1   don't want to put the Government through the task of

2   subpoenaing an out-of-state witness who has to leave all of

3   his duties and functions and responsibilities to come up a

4   third time just to put on evidence with respect to how you

5   attempted to flee and evade arrest and necessitated the

6   calling of a SWAT team to arrest you in Phoenix.  There's a

7   limit.  There's a limit to this.  There's a limit to my

8   patience.

9           And if Ms. Paluch is right, if you're doing this

10   just to keep yourself in FDC Englewood because it's a

11   relatively better place than a high-security penitentiary,

12   then if I were to know for a fact, I would be really upset.

13           THE DEFENDANT:  May --

14           THE COURT:  Have I made myself clear, sir?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  All right.  We are going -- I'm going

17   to give you one more date, we're going to go through the

18   hearing, and I'm going to sentence you and you will stop

19   taking up my time.  Do you understand?

20           THE DEFENDANT:  Absolutely, sir.  And may I --

21           THE COURT:  Go ahead.

22           THE DEFENDANT:  Thank you.  Sir, I object to Ms.

23   Paluch stating -- everyone, every inmate in FDC, they all

24   wish to get sentenced quickly to get to a prison so they

25   have more access to yard, visits, and what have you.  FDC is

1    the place where no one wants to be at.

2              Sir, I -- through the whole last two years, I've

3    never asked for a continuance.  I made every court date

4    every single time.

5              THE COURT:  What did you do on August 8th?

6              THE DEFENDANT:  August 8th was the -- with my

7    attorneys, sir.

8              THE COURT:  And effectively that was a continuance

9    you asked because we were ready to go forward, all the work

10   we had -- all of us had done to prepare for that hearing and

11   you announce at the last second, "Oh, you know, I think I

12   don't want my lawyers anymore."

13             THE DEFENDANT:  I understand that, sir.  Then

14   this -- like you said, it -- whether I'm on a death bed or

15   surgery, there won't be any more --

16             THE COURT:  You just told me it's in your interest

17   to be designated to a penitentiary as soon as possible so

18   it's in your interest on the next day that I'm going to give

19   to you to be well, be prepared, be ready to go, face the

20   music, and then we go forward.  Do you understand?

21             THE DEFENDANT:  Absolutely, sir.  And like you

22   said, whether it's two years or five years, it's --

23             THE COURT:  It's not going to shorten a day off

24   your sentence.

25             THE DEFENDANT:  Absolutely.

```
 1              THE COURT:  All right.  I'll come back to you, Ms.
 2   Paluch and Mr. Fields, for dates that work on your schedule
 3   but what I was starting to say to Ms. Ansart before Ms.
 4   Paluch stood up, whenever's convenient to you in the next
 5   week or two, please prepare and file an addendum to the
 6   presentence report that addresses the matters that have been
 7   referenced from the Government in ECF filings 341 and 343
 8   with respect to a final order of forfeiture.
 9              And I would appreciate your analysis and your
10   recommendation for a recommended ruling.
11              PROBATION OFFICER:  I will, Your Honor.
12              THE COURT:  All right.  Thank you.
13              All right.  I need to pull up my schedule.
14              Ms. Paluch and Mr. Fields, does Monday, January 7,
15   work for you?
16              MS. PALUCH:  Mr. Fields is in trial that week, Your
17   Honor.
18              THE COURT:  Okay.  All right.  How about the
19   following Monday, Monday, January 14th, 2019?
20              MS. PALUCH:  That does work, Your Honor.
21              THE COURT:  All right.  Mr. Fields, does that work
22   for you?
23              MR. FIELDS:  It does work for me, Your Honor.  May
24   I check with Deputy U.S. Marshal Jeff Faranda and make sure
25   it works for him?
```

1          THE COURT:  Sure.  Ms. Ennis, does that work for

2    you?

3          AGENT ENNIS:  Yes, it does, Your Honor.  Thank you.

4          MR. FIELDS:  Thank you, Your Honor.  That works.

5          THE COURT:  Okay.  This scheduling hearing is reset

6    for a final sentencing hearing on Monday, January 14th,

7    2019, at 9:30 a.m.

8          All right.  Anything further from the Government at

9    this time?

10          MS. PALUCH:  No, Your Honor.  Thank you.

11          THE COURT:  Thank you.  Mr. Thomas, is there

12    anything further we need to take up from your perspective?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  All right.  Ms. Ansart, anything

15    further from you?

16          PROBATION OFFICER:  No.  Thank you.

17          THE COURT:  All right.  Defendant is remanded to

18    the custody of the United States Marshal.  Thank you, that

19    will be all.

20          (Proceedings concluded at 10:36 a.m.)

21              *      *      *      *      *

22                    REPORTER'S CERTIFICATE

23       I certify that the foregoing is a correct transcript

24    from the record of proceedings in the above-entitled matter.

25       Dated at Denver, Colorado, this 21st day of November,

1    2018.

2

3

4

5

6                    MARY J. GEORGE, FCRR, CRR, RMR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25