UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TRAMMEL THOMAS,

    Defendant.

_____

SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT TRAMELL THOMAS
_____

PRELIMINARY STATEMENT

Through counsel, Trammel Thomas files the following Sentencing Memorandum setting forth factors that the Court is being asked to consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

On November 30, 2017, Thomas was found guilty of Conspiracy to Defraud the Government in violation of 18 U.S.C. §286 and six counts of Aiding and Abetting Mail Fraud in violation of 18 U.S.C. §§ 1341 -1342.  In this instance a sentence similar to his co-defendants, Diaz and Green would be Just Punishment in the case.

**ARGUMENT**

THE 18 U.S.C. § 3553(a) FACTORS WEIGH IN FAVOR OF A BELOW THE GUIDELINE SENTENCE.

*United States v. Booker*, 543 U.S. 220, 226 (2005), held that the mandatory application of the United States Sentencing Guidelines is a violation of the Sixth Amendment.  Therefore, a sentencing court

1

is required to consider the advisory sentencing guideline range along with the statutory factors set for in 18 U.S.C. § 3553(a), specifically (1) the offense and the offender characteristics; (2) the need for the sentence to reflect the basic aims of sentencing, namely, (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need for restitution. 18 U.S.C. §3553(a); *see also Rita v. United States*, 551 U.S. 338, 347-48 (2007). Here, each of the factors gear the Court toward sentencing Thomas in the range of his co-defendants, Diaz and Green.

*Background and History of Trammel Thomas*

Trammel was born in Fort Wayne, Indiana to 16 year old parents. Today he is 40 years old. His parents did not marry and his father Kimothy, left Trammel's life before he was 2 years old. Trammel knew who his father was, but the older man did not make time for his son. He was raised by his teenaged mother, Rosie Thomas, and his grandmother, Flossie. When Trammel was young, his mother moved into her own home. She struggled with poverty. At 6, his sister, Rozina Thomas was born. His youngest sister, Latisha was born when He was 10. Trammel's mom began to experiment with alcohol. She would have a few drinks a day and was able to keep her drinking under control. By the time Trammel was 12, his mother married Steve Jones. At first, Jones was a great father to Trammel. The two often enjoyed WWE Wrestling matches together and were lucky enough to attend a taping of the show, live. Trammel felt like he finally had a father.

While they were together both Rosie Thomas and Steve Jones drank often. This drinking was much more than Rosie previously had. Trammel noticed that the two argued over "silly drunk things" when they drank. The relationship eventually turned violent and Rosie became the victim of abuse. As a result of the abuse she drank more and became an alcoholic. Trammel knew his mother was being abused

2

and was forced to listen to that abuse. He was confused as to what to do, because for Trammel, Jones was his dad. The first time Trammel witnessed Jones beat his mother, he was 15. He felt confusion, anger and fear.

As a result of the violence, Trammel moved out the home. He was arrested and spent 4 months Juvenile hall. He likened juvenile hall as a "Gladiator School," where children often were forced to fight by guards and older residents. During his time there, Trammel was hit in the head with a pipe and knocked unconscious several times. He felt abandoned by his family, unloved and like he was alone against the world.

Trammel moved to Colorado to re-connect with his dad. When he arrived in Colorado Springs as a 17 year old, Trammel found his father was also an alcoholic and addicted to drugs. He also found himself struggling with feelings of confusion and anger towards his father for not being in Trammel's life up to that point. Trammel had an uncle and cousins that lived in the Springs. He spent a lot of time at their home. At the request of his cousin, Trammel got involved, as the driver, in a bank robbery. Even though he played a minor role in the crime, Trammel was sentenced to 20 years in prison. He began his sentence on December 20, 1999.

During the time Trammel was in prison, his mother's alcoholism worsened. In 2008, she suffered from a massive stroke that left her paralyzed on her left side. She is currently 56 years old and depends fully on a caretaker. Ms. Thomas' caretaker is her daughter Rozina.

While in prison, he met Matthew Sanders and they became friends. Through a writing program at the prison, Trammel met fell in love with and got married to Lola Thomas and when he was released on January 20, 2009, he was prepared to spend his life with Lola. In preparation for his release, Lola rented an apartment and made a home for them. Lola made sure that life would be comfortable. After trying out life as a couple, Lola and Trammel mutually came to the conclusion that they were better friends than they were lovers. The duo decided to maintain a friendship and have done so for the last decade.

3

Trammel and Matthew Sander's friendship continued outside of prison. While they had been in prison, Sander's introduced Trammel to his half sister Heather Carr during a visit. The two wrote a few letters back and forth and then the friendship waned. However, when Trammel and Lola's relationship came to an end, he was re-introduced to Carr and began to explore a friendship with her. Carr treated Trammel well. She realized that Trammel was struggling to get a job and secure housing. Re-integrating back into society as an ex-con that spent ten years in prison was difficult for Trammel. Especially one that failed to finish high school and received his GED while incarcerated. When Sanders violated his parole, Carr took over the apartment Sander's rented. She allowed Trammel to live in the home rent and bill free.

In time, Trammel and Carr began to see each other romantically. Heather became pregnant with Trammel's first child. During the pregnancy Trammel was arrested for a crime in El Paso county which is located in Colorado Springs, CO. Their daughter, Milani Thomas, was born on December 25, 2010, while Trammel was in the El Paso county jail. He was unable to attend the birth. Trammel met his baby girl and first child in the dirty visitation room in the county jail.

Trammel's arrest in Colorado Springs was the result of being around people that he felt like he could be himself with. When it came to technology, Trammel felt like he was behind his associates that had never been to prison. He used a flip phone because the smart phone was intimidating to him. When he was released from Sterling Correctional in Colorado, he did not know what a text message was and had never sent one. To cover his own insecurity with the technology, he often joked with others that the government was tracking them through the smart phone. Due to these feelings, Trammel surrounded himself with people that used drugs. He felt like he did not have to impress drug users. The anxiety he felt with most of society disappeared around drug users and alcoholics. He had experience with them due to his time around his own father as a teenager. He also felt that they did not judge him.

The charges in El Paso county case were dismissed and Trammel was released from the county jail in Summer 2011. He moved to Arizona to live with Carr and the children at 1822 E. Kaibab, Chandler

4

AZ. This was the nicest home that Trammel had ever had access to and he felt fortune to have the relationship with Carr. For the first time in his life, Trammel was a father. He was able to watch Milani grow and influence her young life. He also played a hand in raising Carr's older children. Trammel found fatherhood to be both challenging and rewarding.

While living with Carr, Trammel knew her to be a hard worker. Carr took care of all of the bills for the family. Trammel felt safe. Occasionally co-defendant's Green and Diaz would come to the home. He never really engaged them in conversations and did not spend time around the three women while they were at the home.

Trammel could not ignore the fact that something criminal was happening on August 30, 2012, when he was pulled over by the Arizona police while driving home. In the vehicle, there was a bag containing several debit cards related to this case. When Trammel was able to speak to Carr after this encounter, she reassured him that nothing was going to happen to them and that everything was ok. Everything was not ok.

On November 29, 2012, the government executed a search warrant for the home that he and Carr lived in. This terrified Trammel. He knew that Carr was involved in criminal activity, but because he had only been aware of the scheme for a few months, he didn't think much about it. He didn't know when Carr, Diaz and Green were working on the scheme because it had to be carried out on a computer. At the time, Trammel continued to feel intimidated by computers. The Government search of the home they shared led to the end of the relationship between Trammel and Carr. Trammel moved out of the home on E. Kaibab in Chandler and started making a life on his home. He often saw Carr because he actively fathered Milani, but they no longer shared a romantic relationship.

The couple reconciled briefly in 2013, Carr had won an award from her employer Wells Fargo. As a part of award, Carr won a trip to San Diego. She invited Trammel. She also showed Trammel where items seized by the Government had been returned to her. During the trip, Tru Thomas was conceived.

5

Trammel was there for the birth of his son, Tru Thomas. He felt amazed that he was able to have children after his time in prison, but attending the birth of his son was the best moment he has experienced in his life. Trammel instantly fell in love with Tru and knew that he would be a better father to his son than the fathers he had. As Tru got older, Carr and Trammel noticed he was missing some his growth milestones and seemed to be developing later than his siblings had. Tru was also non-verbal. Carr had him tested. The parents were given diagnosis of autism. They worked to teach Tru and the other children sign language to improve communication. However, he still requires more attention and care than a child without his condition. After the birth of his children, Trammel was able to reconcile with his father and today the two men enjoy a friendship.

Trammel got a mentor, Mr. Joseph Conrad and he began to mentor other men that were recently out of prison. In particular, Trammel helped Charles Buffet located and was able to help him and his family with homelessness. Trammel allowed the family to live in his home for a while. By the time of the indictment in this case, Trammel was living a very different life from when he was released from prison and while he was with Carr. He became a positive figure in his community that enjoys the support of his community including his landlady, who intends to provide what financial support she can for Trammel. Since his incarceration, Trammel received a ministry certificate. This made Trammel an ordained minister. Trammel was and is very proud of this accomplishment. He also completed courses in criminal psychology.

*Downward Departure Requests*

<u>Sentences that are too long can destroy families, communities and foster more crime.</u>

A long sentence in this case would put severe strain on the relationship that Trammel has with his children. This especially applies to Tru. The child's health issues makes him a particularly vulnerable person. Further, while Trammel was able to re-integrate into to the community and start a family after his incarceration in the State of Colorado, it took him 5 years to do it.

6

> "Long sentences are also immensely hard on prisoners and cruel to their families, as it's usually very difficult for a prisoner to re-integrate into his family and community after very long prison sentences." Judge Alex Kozinski, Criminal Law 2.0, 44 Geo. L.J. Ann. Rev. Crim. Proc. (2015) at page xii-xiii.

Anne R. Traum *"Mass Incarceration at Sentencing,"* 64 Hasting Law Journal 423, 433 (2013) ("High imprisonment rates can disrupt social order, "undermine the building blocks of social order," and destabilize community life. Professor Dorothy Roberts has described how mass incarceration "damages social networks," starting at the family level and then "reverberat[ing] throughout communities where the families of prisoners are congregated." While one family can bear the strain of a family member's imprisonment by relying on "networks of kin and friends," multiple families relying on the same network eventually strain and weaken the community. The absence of family members also means fewer people in community groups that "enforce informal social control." Communities that are destabilized by high incarceration rates cannot thrive and are not safer.'").

Here, not only would Trammel and Carr's children be affected by long incarcerations, their network would also be affected. In fact, it already has begun to be affected as Carr's older daughter (who is in her early 20's) and her spouse are now tasked with and bear the responsible of raising their children. The Court should consider the strain a long incarceration would place on Trammel's family.

Further, public safety does not call for a sentence of 168 months and such a sentence is not Just Punishment for the offenses Trammel was found guilty of. In the present case, while Trammel benefited from the scheme alleged by the Government, he was not fully aware of it until he was pulled by the Arizona police in August of 2012. Trammel takes full responsibility for his role in the case once he became aware of it. After the search of the home on Kaibab, Trammel and Carr ended their relationship and Trammel had no more involvement in the conspiracy.

In *U.S v. Haynes* 557 F.Supp.2d 200 (D. Mass. 2008), the Defendant was convicted of selling drugs and guidelines called for 33-41 months. The Court sentenced Mr. Haynes time served because sentence public safety did not call for this sentence.

> "While public safety certainly calls for the incapacitation of some, there is another side to the equation, which, after [Booker] may finally be given the serious

consideration it deserves." The court must "confront the inescapable fact that disadvantaged communities like Bromley-Heath are injured both by crime and by the subsequent mass incarceration of their young men. *See* Donald Braman*, Criminal Law and the Pursuit of Equality,* 84 *Tex. L. Rev.* 2097, 2114-17 (2006)*. Compare* Randall Kennedy*, Race, Crime, and the Law 373-76 (1997), with Todd R. Clear, Imprisoning Communities: How Mass Incarceration Makes Disadvantaged Neighborhoods Worse* (2007)*.* Courts may no longer ignore the possibility that the mass incarceration of nonviolent drug offenders has disrupted families and communities and undermined their ability to self-regulate, without necessarily deterring the next generation of young men from committing the same crimes.

In Trammel Thomas' case as with Haynes public safety seems to require a departure from the Guidelines.

### Role in offense was less than that of codefendants

Trammel's role in the offense was less than that of all of his co-defendants. He spent 10 months of the conspiracy in the El Paso County Jail. The bulk of the conspiracy required the use of computers to carry out and Trammel simply was unable to use a computer the way that was necessary. He provided a few addresses but not more than Diaz had and he completed no course work like Green had. Green could not point to any significant active involvement that she witnessed from Trammel.[1] Carr originally stated that Trammel knew about the conspiracy and had played a large role. She recanted those statements and put herself in jeopardy when she refused to testify to them.[2] All of Trammel's co-defendant received significantly shorter sentences than what is being sought against him by the Government. In fact, in the case of all Trammel's co-defendant's, the Government did not seek the same or similar amounts of time that they are seeking against Trammel.  Both Diaz and Green had criminal records that were significant as well.

The 10th Circuit affirmed a decision by the sentencing court conclusion that the sentencing range set in the guidelines overstated the defendant's role in the crime. The court citing *Kimbrough v. United States*, ___ U.S. ___, 128 S.Ct. 558,570,  169 L.Ed.2d 481 (2007), stated ("In sum, while [§ 3553(a)] still

---

[1] See Green testimony pg 14-23
[2] See Carr sentence statement pg 24; 34-38

requires a court to give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." (citations omitted)).

Accordingly, the Court can consider the lesser role that Trammel played in the offense and sentence Trammel to a lighter sentence than requested by the Government.

### The defendant is a good parent

Trammel Thomas is a good parent to his children Milani and Tru. Trammel, despite growing up without his biological father in his life and watching his step-father abuse his mother, was determined to be the best parent he could to his children. While he was unable to attend the birth of Milani, Trammel was in her daily life until he was taken into custody in the present case. He attended the birth of his son Tru and even though he was not in a romantic relationship with the child's mother. Made sure to be a part of his son's daily life as well.  Trammel worked with Carr when they discovered Tru's diagnosis. Trammel made it his mission that his son have the best life he could despite his disabilities.

In *U.S. v. Pauley,* 511 F.3d 468 (4th Cir. 2007), the Court's decision to depart downward in part because the defendant was a good parent was found to be a "valid consideration § 3553(a)".  Trammel Thomas asks that this court consider his paternal circumstances and his actions as a father to his children during sentencing.

### Model prisoner while in post-trial confinement.

Trammel has been a model prisoner while being detained. He has furthered his education and became an ordained minister for other prisoners.  In *U.S. v. Thavaraja*, 740 F.3d 253 (2d Cir.2014), the defendant was convicted of conspiring to provide support to terrorist organization and fell into the guidelines at 240 months. However the  Court's sentence of 108 months not unreasonable in part because "for the six years he was incarcerated he was a model prisoner who tutored other prisoners."  Further in *United States v. Maurer*, 76 F.Supp.2d 353, 362 (S.D.N.Y.,1999), a low end sentence was warranted  in

9

part because defendant "has proved to be a model prisoner for the time in which he has been incarcerated" before sentencing.

## LETTERS OF SUPPORT

Submitted along with this memorandum, the Court will find support letters and photos of Trammel's family from those who know Trammel best. They have known him longer than this Court, myself, the prosecutor, or the probation department. These letters speak more eloquently about Trammel then I ever could. Accordingly, I direct the Court's attention to these sincere and meaningful submissions. Trammel's certificates he earned in during his post-trial detention are also attached.

## Title 18 United States Code §3553(a)

We seek a sentence which will be **sufficient, but not greater than necessary**, consonant with the purposes of sentencing as statutorily set forth in *Title 18 United States Code §3553.* This would be beneficial, advantageous and constructive given the **nature and circumstances of Trammel's participation in this criminal offense; but also viewed in the context of the history and characteristics of this defendant** as set forth above. *18 United States Code §3553(a)(1).*

**Such a sentence will reflect the seriousness of the offense**. Incarceration will reflect, to all, that a deprivation of liberty, and continuing and ongoing supervision for a period of years, will result as a minimum for such conduct. *18 United States Code §3553(a)(2)(A).* Such a sentence will **promote respect for the law and provide just punishment for this offense and this offender.** *18 United States Code §3553(a)(2)(A).*

Given the personal makeup and age of this defendant, such a sentence will **afford adequate deterrence to future criminal conduct**. *18 United States Code §3553(a)(2)(B)*. With ongoing supervision, and based upon all of the foregoing factors, the **public will thereby be protected from further crimes** of this defendant. *18 United States Code §3553(a)(2)(C).* The defendant can therefore immediately focus on

receiving, and participating in, the greatly needed correctional guidance and supervision, in the most effective manner. *18 United States Code §3553(a)(2)(D).*

**This sentence would also demonstrate that sufficient consideration has been given to all of the kinds of sentence available**. *18 United States Code §3553(a)(3).* **Such a sentence would take cognizance of the sentencing range established for this applicable category of offense and criminal offender.** *18 United States Code §3553(a)(4)(A).*

## CONCLUSION

It is respectfully prayed that this Court sentence Trammel Thomas to a term of federal imprisonment commensurate with each and all of the foregoing considerations, taking into account all aspects of the advisory sentencing guidelines, applications of any departures therefrom, and in view of all of the factors contained in *18 United States Code §3553(a).*

Alternatively, we pray this Court to impose a non-Guidelines sentence appropriate to all of the attendant circumstances, and consonant with this application. It is also respectfully requested that this defendant be allowed to participate in any and all relevant Bureau of Prisons programing for which he may be eligible, and that he be housed as close to his home and family as is possible.

Respectfully submitted,

/s/ Tasha A. Steward
Tasha A. Steward
Law Office of Tasha A. Steward, LLC
Attorney for Defendant
Bar Role Number: 51183
3570 E. 12th Ave
Denver, CO 80206