1          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLORADO
2
    Criminal Action No. 16-cr-0054-WJM-1
3
    UNITED STATES OF AMERICA,
4
    Plaintiff,
5
    vs.
6
    HEATHER CARR,
7
    Defendant.
8
    ------------------------------------------------------------
9
                    REPORTER'S TRANSCRIPT
10                     (Sentencing)

11  ------------------------------------------------------------

12      Proceedings before the HONORABLE WILLIAM J. MARTINEZ,

13  Judge, United States District Court for the District of

14  Colorado, commencing at 2:02 p.m., on the 4th day of

15  January, 2018 in Courtroom A801, United States Courthouse,

16  Denver, Colorado.

17
                        APPEARANCES
18
        MARTHA PALUCH and BRYAN FIELDS, Assistant U.S.
19  Attorney, 1801 California Street, Suite 1600, Denver,
    Colorado 80202, appearing for the plaintiff.
20
        MARY BUTTERTON, Office of the Federal Public Defender,
21  633 Seventeenth Street, Suite 1000, Denver, Colorado 80202,
    appearing for the defendant.
22

23              MARY J. GEORGE, FCRR, CRR, RMR
                901 19th Street, Denver, Colorado 80294
24          Proceedings Reported by Mechanical Stenography
                Transcription Produced via Computer
25

1    this case outlining the testimony we expected from this

2    witness would be presented and then we were forced in

3    closing to tell the jury that even though we promised you

4    all of this evidence, you would not hear from Ms. Carr.

5         The Court asked defense counsel about the nature

6    and circumstances of the offense and the Court's very well

7    aware of those and we've set forth our arguments in

8    opposition to the variance in our pleading, but there are a

9    few points that I would like to point out in addition to

10   those already made.

11        And as to the nature and circumstances of this

12   offense, what I'd like the Court -- for me to focus on is

13   the fact that this defendant had choices.  She chose to

14   participate in the scheme for over two years.  26 months is

15   the duration of the scheme as set forth in the indictment.

16   And during that time, she chose over and over and over

17   again to steal the identity of these inmates.  181 inmates'

18   identity stolen in 26 months, and that comes out to

19   approximately seven identities stolen each month.  Seven in

20   each of the 26 months.  Every single identity stolen by

21   this defendant, not by her codefendants.

22        Any possible argument -- and I don't believe she's

23   making this -- but that Trammel Thomas was responsible for

24   her involvement, he was in prison for 10 months; he was in

25   jail for 10 months.  During those 10 months, and in

1        THE COURT:  At the counsel table.  Okay.

2        THE DEFENDANT:  Yes, sir.  It was pretty much a

3   disaster because I've never -- my extent courtroom

4   experience is Law & Order.  Like I don't know how to answer

5   questions, like they were trying to prep me.  I was like

6   overexplaining everything.  They were getting really mad at

7   me.  You know, kind of saying that, Well, we can't lead you

8   to this, you have to say this.

9        And it was pretty much a disaster.  So they set up

10   a following phone call the following Monday.  That phone

11   call was a super disaster because Mr. Fields started

12   yelling at me -- okay, but let me -- let me lead up to

13   this.

14        First they asked me if Mr. Thomas had ever filled

15   out a FAFSA and I said to my knowledge, No, I had never

16   seen him fill out a FAFSA.  He started getting mad and then

17   was like, Well, if this is the way you're going to answer

18   questions you're in for a lot of trouble.

19        THE COURT:  Okay.  Ms. Carr, let me step in here.

20   Your allocution is an opportunity -- you have the -- and

21   your right to speak to me, giving me your opportunity to

22   tell me who you are and why you did what you did and give

23   me a window into, from your perspective, the criminal

24   activity that you engaged in.

25        It's really going to be very unhelpful and of

1    little use for you to go into discussions you had with the

2    Government's attorneys prior to trial because that's not

3    what you were indicted for.  All right?  What I'm

4    interested in is your discussion and explanation and your

5    opportunity to show me remorse and acceptance of

6    responsibility for your crimes.  Okay?

7             Your phone calls with the Government are -- is not

8    what's going to drive your sentence.

9             THE DEFENDANT:  Okay.

10            THE COURT:  So --

11            THE DEFENDANT:  He just told me he was --

12            THE COURT:  Hold on.  If this is all a lead-up to

13   an explanation of why you didn't testify, just give me

14   that, you know, in a 30-second summary.  Don't go into how

15   you were abused on the phone call by the prosecutors, which

16   I have now seen Mr. Fields on at least a couple of trials,

17   Ms. Paluch on one.  I find it hard to believe that they

18   would be abusive on the phone to you, but go ahead and give

19   me your version.

20            THE DEFENDANT:  Okay.  He started yelling at me.

21   He told me he was going to rip up my deal and send me to

22   prison for a very long time, to which my lawyer had to

23   terminate the phone call and hang up on them, and did not

24   call them back until the following Monday.  The following

25   Monday, they promised me I would never have any contact

1   with Mr. Fields.  They apologized for his actions.  They

2   said he's usually very mild-mannered.  They had no idea

3   where the outburst came from.  And they said I would never

4   have any further contact with him.  That phone call went

5   well.

6         And then our last phone call the week of -- and I

7   tried to give them more information and they never sent

8   over an MOI.  They didn't want to hear the information.  So

9   I was scared that if I got on the stand, they were refusing

10  information that I knew I was going to be cross-examined on

11  and I would be like perjured or something.  And she was

12  like, Nope, nope, I don't want to hear it.  I don't want to

13  hear it.

14        And then the last phone call --

15        THE COURT:  No one can force you to perjure

16  yourself.  If a witness perjures themselves, it's because

17  of what they choose or how they choose to answer questions:

18  truthfully or not.  I mean, there's no -- there's no way

19  the Government is going to force you to perjure yourself.

20  I think that's an absurd contention.

21        THE DEFENDANT:  Maybe I phrased it wrong, but I

22  don't know, I -- just saying something wrong because I was

23  so -- he scared me.  Like he -- I was like, He scared me.

24  I was like hysterically crying when she called me back.  He

25  said he was going to rip up my deal and send me to jail for

```
 1      a very long time.  So, I mean, I'm already going to jail
 2      for a very long time, so I didn't know what to do.  I
 3      didn't think they would do this the week of Thanksgiving,
 4      the week before trial.
 5              And then another prep question was:  Did we
 6      promise you anything?  And I said yeah, 24 months and a
 7      third off the sentence for like acceptance of
 8      responsibility.  They were like, No, it just depends how
 9      you are in trial.
10              And Mr. Fields already hates me, and said he was
11      going to rip up my deal.  So --
12              THE COURT:  But there's no representation in your
13      plea agreement that you were promised a -- first of all,
14      the Government can only recommend to me a sentence.  I'm
15      the one that decides the sentence.
16              Secondly, there's nothing in your plea agreement
17      that tells me -- independent of what you're telling me
18      right now, but nothing in the plea agreement that the
19      Government committed itself to recommending 24 months or
20      any recommendation.  So -- but the point -- so we can wrap
21      up this portion of your allocution, you're telling me that
22      the reason you didn't testify was you were so traumatized
23      by your phone calls with Mr. Fields and the other
24      prosecutors that that's why you didn't testify.
25              THE DEFENDANT:  So I had called -- so the
```

1   Wednesday before the trial, I had e-mailed my lawyer:  Did

2   we ever get the MOI about the new information I had given

3   them?

4        I didn't get a response from her because it was,

5   obviously, Thanksgiving and she was probably with her

6   family.  So I went ahead and got on a plane and came out

7   here and went to her office.  And all the concerns I had I

8   went over with her and there --

9        THE COURT:  Don't go into your discussions with

10  Ms. Butterton.

11       THE DEFENDANT:  Okay.

12       THE COURT:  Those are attorney-client privileged,

13  so --

14       THE DEFENDANT:  Sorry.

15       THE COURT:  Proceed, but don't discuss what you

16  and Ms. Butterton told each other.

17       THE DEFENDANT:  So, yes, so due to the overall --

18  everything and him already telling me he was going to rip

19  up my deal and send me to jail for a very long time, I was

20  scared if I deviate anything from the M- -- the original

21  statement, which he wasn't even a part of, that meeting,

22  they were going to rip up my deal anyway, because he stated

23  he was going to rip up my deal and send me to jail for a

24  very long time.

25       THE COURT:  All right.  All right.  That's your