1

1           IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
    Criminal Action No. 16-cr-0054-WJM-2
3
    UNITED STATES OF AMERICA,
4
        Plaintiff,
5
    vs.
6
    TRAMELL THOMAS,
7
        Defendant.
8
    ------------------------------------------------------------
9
                    REPORTER'S TRANSCRIPT
10              (Final Trial Preparation Conference)

11  ------------------------------------------------------------

12      Proceedings before the HONORABLE WILLIAM J. MARTINEZ,

13  Judge, United States District Court for the District of

14  Colorado, commencing at 2:02 p.m., on the 17th day of

15  November, 2017, in Courtroom A801, United States

16  Courthouse, Denver, Colorado.

17
                        APPEARANCES
18
        MARTHA A. PALUCH and BRYAN FIELDS, Assistant U.S.
19  Attorneys, 1801 California Street, Suite 1600, Denver,
    Colorado 80202, appearing for the plaintiff.
20
        DANIEL T. SMITH, Attorney at Law, 4582 South Ulster,
21  Suite 1400, Denver, Colorado 80237 AND
        THOMAS E. GOODREID, Attorney at Law, 1801 Broadway,
22  Suite 1400, Denver, Colorado 80202, appearing for the
    defendant.
23

24              MARY J. GEORGE, FCRR, CRR, RMR
             901 19th Street, Denver, Colorado 80294
25          Proceedings Reported by Mechanical Stenography
                Transcription Produced via Computer

1          P R O C E E D I N G S

2          (Call to order of the court at 2:02 p.m.)

3          THE COURT:  We're on the record in criminal case

4   No. 16-cr-054, United States of America versus Tramell

5   Thomas, defendant No. 2.  I'll take appearances of counsel.

6          MS. PALUCH:  Good afternoon, Your Honor, Martha

7   Paluch appearing on behalf of the United States.  With me

8   at counsel table is Assistant U.S. Attorney Bryan Fields

9   and Special Agent Sandra Ennis.

10          MR. FIELDS:  Good afternoon, Your Honor.

11          SPECIAL AGENT ENNIS:  Good afternoon, Your

12   Honor.

13          THE COURT:  Good afternoon to the three of you.

14          For the defendant.

15          MR. SMITH:  Good afternoon, Your Honor.  Daniel

16   Smith and Thomas Goodreid appearing for Mr. Thomas, whose

17   appearance has been waived for purposes of this hearing.

18          THE COURT:  All right.  Good afternoon to the two

19   of you.

20          MR. GOODREID:  Good afternoon.

21          THE COURT:  We're here for a final trial

22   preparation conference in this case.  This matter is set

23   for a five-day jury trial to begin Monday morning at 8:30,

24   on November 27th.  As is my practice at these hearings, I'm

25   going to go through some of the matters that I require

1    counsel to deliver to me prior to trial and see where we

2    stand with respect to those, and also to address some other

3    matters with respect to the trial and the jury selection.

4         I'm going to begin with opening statements.  Per

5    my practice standards, my default is 20 minutes.  I don't

6    see a huge reason here to go beyond that, and unless

7    counsel really strongly feels they need more than 20

8    minutes, that's what we're going to go with.  What's the

9    Government's view?

10        MS. PALUCH:  We are fine with 20 minutes, Your

11   Honor.

12        THE COURT:  Okay.  Defendant.

13        MR. GOODREID:  Your Honor, same for defense.

14        THE COURT:  Okay.  20 minutes it will be.

15        Are there now or will there be any stipulations of

16   fact?

17        MS. PALUCH:  Yes, Your Honor, there are

18   stipulations.  Would you like at this time for me to

19   explain those stipulations?

20        THE COURT:  Okay.  Have you filed them already?

21        MS. PALUCH:  We have not filed them.

22        THE COURT:  Okay.  Why don't you just generally

23   describe them to me.

24        MS. PALUCH:  Certainly, Your Honor.  The first

25   one, which is probably the most important for purposes of

1    today, is the fact that we have stipulated as to what the

2    six individuals named in Counts 2 through 7 would testify

3    to if called to testify.  And for Your Honor, those are the

4    initials of the individuals in Counts 2 through 7.  These

5    are what we're calling inmate witnesses.

6              And what the parties have agreed:  If called to

7    testify, they would state that they were incarcerated at

8    the time FAFSA's requesting federal student aid and related

9    school documents were submitted to the Department of

10   Education, and to the various schools.

11             Two, that they did not submit these documents to

12   the Department of Education or to the schools in question.

13             And, three, they did not authorize anyone else to

14   submit these documents in their names using their personal

15   identifying information.

16             We have just recently entered into that

17   stipulation and, because of that stipulation, we would move

18   at this time for the Court to quash the writs that were

19   issued for the four incarcerated inmates.  Two of the six

20   are not incarcerated, four of them are incarcerated, and we

21   had previously asked this Court for writs for their

22   appearance in this trial.

23             THE COURT:  I have signed -- already signed those.

24             MS. PALUCH:  You have.  You have, Your Honor, and

25   it's our understanding these individuals are en route here

1  to Colorado.

2          THE COURT:  Okay.

3          MS. PALUCH:  Those four individuals are Manuel

4  Abate, Eddie Jones, Dennis Miller, and Robert Pickens.  The

5  writs pertaining to those individuals are found at ECF

6  184-2, 185-2, 186-2, and 187-2 respectively.  So at this

7  time, in light of our stipulation as to their testimony,

8  we're asking that the Court quash those writs and those

9  inmates may be returned to their institutions where they

10  were previously held.

11          THE COURT:  All right.  Let me hear from the

12  defendant.  First of all, that the defendant agrees the

13  facts that the Government has stated have been stipulated

14  to?

15          MR. SMITH:  We have stipulated to those facts,

16  Your Honor.  I believe there's one other aspect to the

17  stipulation, though.

18          THE COURT:  Okay.

19          MR. SMITH:  None of those six witnesses will be

20  called at trial.

21          THE COURT:  All right.  But there were only four

22  that I signed the writs for --

23          MR. SMITH:  That's correct.

24          THE COURT:  -- because they were incarcerated.

25  All right.  And does the defendant have any objection to

1    the quashing of those writs?

2           MR. SMITH:  Absolutely not, Your Honor.

3           THE COURT:  Okay.  All right.  So that motion --

4    the motion to quash the four writs to the four incarcerated

5    witnesses is granted.  And it's now the Court's

6    understanding, based on counsel's representations, that the

7    other two witnesses will also not testify given the

8    stipulations.  Is that --

9           MS. PALUCH:  That is correct, Your Honor.  And

10    what you may notice on the witness list that we filed, we

11    had listed Ishmael Omar as one of our witnesses.  Now that

12    we've entered into this stipulation we will be filing a

13    revised witness list to remove his name.

14           THE COURT:  Okay.  Very well.

15           MS. PALUCH:  Okay.  The second matter I'd like to

16    bring to the Court's attention is --

17           THE COURT:  Are we still on stipulations of fact?

18           MS. PALUCH:  We are, Your Honor.

19           THE COURT:  Go ahead.

20           MS. PALUCH:  We have reached a stipulation

21    regarding Federal Rules of Evidence regarding 902.11

22    records in which we've agreed that neither side is required

23    to call as witnesses records custodian who has provided

24    business records and we have agreed that these records fall

25    within the business records exception to the rule against

1    hearsay found at Federal Rules of Evidence 803.6.

2              THE COURT:  Okay.

3              MS. PALUCH:  We are contemplating -- we are

4    still -- there is a possibility of a stipulation on summary

5    charts.  The Government intends to proceed by way of

6    summary charts given the voluminous nature of the records

7    in this case.  That is still a possible stipulation that we

8    can advise the Court on at the beginning of trial whether

9    or not we've reached that stipulation.

10             THE COURT:  All right.

11             MS. PALUCH:  The last one I believe, Your Honor,

12   is -- actually, a couple more agreements.  We have reached

13   a stipulation regarding the defendant's incarceration in

14   the Colorado Department of Corrections between the years

15   2000 and 2009.  The Government has agreed that it will not

16   introduce evidence in its case in chief regarding this

17   period of incarceration.

18             Upon his release from custody, the defendant was

19   allowed to transfer his parole supervision to Arizona.

20   During the search of the hard drives -- the hard drive from

21   the computer, the Government will argue, was used by the

22   defendant in this scheme.  There is e-mail correspondence

23   found between the defendant and his Arizona parole officer.

24             To avoid referencing the defendant's parole

25   status, the parties have agreed to the following:

1          That during the direct exam of computer forensic

2    expert Alison Stailey, she will be asked whether she

3    located on that hard drive e-mail communication between the

4    defendant and an Arizona state agency employee.  She will

5    respond yes to that.

6          She will then be asked:  What was the name of that

7    employee?  And she will respond Adrian Sambora.  That will

8    be the extent of the testimony.  We will not be introducing

9    as an exhibit the e-mail communication between the two.

10          Because of this stipulation, it's necessary for

11   the Government to remove Exhibit No. 36.  We will be filing

12   a revised exhibit list to remove that --

13          THE COURT:  Yes, you will both be filing amended

14   exhibit lists, and I'll tell you why.  I have my own reason

15   why you're going to.

16          MS. PALUCH:  Right.

17          THE COURT:  Go ahead.

18          MS. PALUCH:  And you have probably noticed, Your

19   Honor, we had a duplicate exhibit on --

20          THE COURT:  That's not my concern.  My concern is

21   the woefully low number of exhibits that have been

22   stipulated to.  But we'll get to that later.  Keep going

23   with your stipulation.

24          MS. PALUCH:  Okay.  Certainly, Your Honor.  We've

25   also reached a stipulation that between January and

1    November of 2011, the defendant was detained in the El Paso

2    County Jail.  The parties have reached a stipulation to

3    advise the jury of the dates of his detention at that

4    facility, as well as the fact that all charges on which he

5    had been detained were dismissed.

6         That concludes the stipulation portion.  I have

7    two other issues to bring to the Court's attention and I

8    can address those later if you would prefer.

9         THE COURT:  Yes, I would prefer that.  You can

10   bring them up either when I raise something that is

11   relevant to those other two matters or at the end when I've

12   covered everything I need to cover at this hearing, and

13   then I always give counsel an opportunity to bring up any

14   additional matters they think we need to cover today.

15        MS. PALUCH:  Thank you, Your Honor.

16        THE COURT:  All right.  Let me first confirm with

17   the defendant that the defendant is stipulating to the

18   matters that Ms. Paluch has just summarized.

19        MR. SMITH:  That is correct, Your Honor.  And we

20   will certainly notify the Government concerning the

21   proposed summary chart exhibits, hopefully early next week.

22   We've just received them, so --

23        THE COURT:  Okay.

24        MR. SMITH:  -- we don't foresee a problem.

25        THE COURT:  All right.  So let me tell you, Ms.

1      Paluch, what I'd like you to do.  There was a lot there

2      that you just summarized.  It goes beyond what I'm looking

3      for in terms of a very specific thing, which is specific

4      factual stipulations that I read as part of my preliminary

5      injunction -- preliminary injunction -- preliminary -- I've

6      had a number of those in addition to a number of trials --

7      but once we impanel the jury, once we have the 13 in the

8      box, I read preliminary instructions.  At the end of those

9      instructions, I read the parties' stipulations of fact, all

10     right?  And then those are included as part of the final

11     set of jury instructions that go back to the deliberation

12     room.

13            You have some additional stuff there.  So what I'm

14     going to ask you to do is file what you just read to me, or

15     summarized to me, as it is, file it, docket it with the

16     Court, and then from that, excise out the precise facts

17     that both parties agree should be read to the jury at the

18     beginning of the trial.  Is that -- am I clear on that?

19            MS. PALUCH:  You are, Your Honor, with one

20     exception.

21            THE COURT:  Okay.

22            MS. PALUCH:  All of those stipulations are

23     prepared to be filed; we can do that this afternoon.

24            THE COURT:  Okay.

25            MS. PALUCH:  The one side agreement that we are

1    not putting in the stipulation, because we don't want the

2    jury to know about that, is the Colorado Department of

3    Education --

4              THE COURT:  I know, but you just summarized for me

5    you had -- you were discussing that this person's not going

6    to do this, and in lieu of that, we're going to do this.

7    That's not what I'm reading to the jury.

8              MS. PALUCH:  Right.

9              THE COURT:  What I'm going to read to the jury,

10   the light was red, the car was a Ford, et cetera,

11   et cetera.  Those are the facts that I want to read to the

12   jury.

13             MS. PALUCH:  Certainly, Your Honor.

14             THE COURT:  Okay.  All right.  So separate those

15   out from the document you have, just distill out the actual

16   brass tacks facts that you are stipulating to, give them to

17   me in a separate document, and that's what I will read to

18   the jury once they're impaneled as part of my preliminary

19   instructions.

20             MS. PALUCH:  I apologize, Your Honor.  I just want

21   to make sure I'm clear.

22             THE COURT:  Okay.

23             MS. PALUCH:  The stipulations regarding business

24   records exceptions, that's a stipulation that we've marked

25   as an exhibit.  And when we have witnesses on the stand,

1    we'll refer to admissibility pursuant to that stipulation

2    found at Exhibit 33.  Is that something that you read to

3    the jury?

4              THE COURT:  No.  You -- if you have a stipulation

5    that Exhibit X comes in and you've put that stipulation

6    into writing, that's fine.  I don't require you to do that.

7    You just -- all you really have to do is put on your

8    exhibit list, just check the column that says Stip --

9              MS. PALUCH:  Okay.

10             THE COURT:  -- and then it comes in.  The jury

11   doesn't have to know all of the background and the reasons

12   for why you stipulated that Exhibit 92 is coming in.  They

13   just -- you just get up and say, "Pursuant to the

14   stipulation of the parties, the Government moves for the

15   admission of 92," I grant it, it's in, simple.

16             MS. PALUCH:  I'm with you.  Thank you for

17   explaining.

18             THE COURT:  All right.  Thank you.

19             All right.  Is there going to be anyone at counsel

20   table, either in the front counsel table or in the back

21   table, other than the five of you here and, obviously, the

22   defendant?  Let's start with the Government.

23             MS. PALUCH:  Yes, Your Honor.

24             THE COURT:  Okay.

25             MS. PALUCH:  In the courtroom today is Special

1    Agent Sonia Hacker with the United States Postal Service.

2              THE COURT:  Okay.

3              MS. PALUCH:  She has agreed to display exhibits

4    from both sides during this trial.

5              THE COURT:  Okay.  All right.

6              MS. PALUCH:  And so she will be running Trial

7    Director in the courtroom.

8              THE COURT:  I take it she's not going to be a

9    witness.

10             MS. PALUCH:  She will not be a witness.

11             THE COURT:  Okay.  All right.  So what I'll need

12   you to do -- and I'll ask the defendant the same questions

13   in a moment -- to just send an e-mail to my chambers

14   sometime in the next couple of days identifying everyone

15   that's going to be at either of the two tables by name and

16   their title and role in the case.

17             And the reason I do that is because when I conduct

18   the Court portion of the voir dire, I identify everyone in

19   the courtroom, including my staff and myself, to the venire

20   panel so they can tell us, do they know anyone on the

21   staff, any of the lawyers, IT staff, paralegals, law

22   students, whoever, special agents, defendants.  And because

23   I -- obviously you want to know and I want to know if

24   anybody in the -- on the venire knows anybody.  So we'll

25   need that.  Just send an e-mail.

1         MS. PALUCH:  Certainly.

2         THE COURT:  All right.  Beside you two gentlemen

3    and your client, will there be anyone else at counsel table

4    during the trial?

5         MR. SMITH:  We don't believe so, Your Honor.

6         THE COURT:  Okay.  Good.  So --

7         MR. SMITH:  Do you still want an e-mail that --

8         THE COURT:  No.  I can remember that.

9         MR. SMITH:  Thank you.

10         THE COURT:  Okay.  All right.  Because the other

11    three defendants in this case have pled, and we are now

12    down to one defendant, I have reduced the length of the

13    trial to five days.  So in my -- it's my practice for jury

14    trials of five days or less to have just one alternate

15    juror.  If it's six days or more, I go with two alternates.

16    So there's going to be 13 folks in the box.

17         You should make note that during the voir dire

18    process and during the peremptory challenge process, using

19    the procedure that I use, you need to know that the

20    alternate will be the individual seated in seat 2.  So that

21    is the back row, second seat from the left.  All right?

22         Because under -- because I use the jury selection

23    procedure that I think a number of judges have used in this

24    district for a number of years, and among other things --

25    well, beyond the most obvious, which is that person is not

1    going to be deliberating the verdict, is also the last

2    round of the peremptory challenges can only be asserted

3    against that individual.  All right?  So if you read -- if

4    you read that jury selection process closely, that's what

5    you'll see.

6            I want to stress that that's whoever's sitting in

7    that seat during the voir dire and the peremptory challenge

8    process.  In all my criminal trials I move folks around

9    after that because there's -- we want to get them -- the

10   seats on the left side of the box, there's issues with

11   respect to the exhibit screens and footrests and all that.

12   So I will just confirm with counsel before we start moving

13   folks around that it's Mary Smith in seat 2 that is our

14   alternate who will be excused at the conclusion of the

15   trial.

16           So, anyway, I'll -- for your purposes, you just

17   have to remember during voir dire and the peremptories,

18   seat 2 -- the individual seated in seat 2 is the alternate.

19   Any questions on that?

20           MS. PALUCH:  No, Your Honor.

21           THE COURT:  All right.  Okay.  The defendant is

22   not in custody, so we don't have to deal with the issue of

23   civilian clothing or restraints.

24           Okay.  Let me turn to witness lists.  The -- you

25   folks have complied with my practice standards on witness

1   lists but, obviously, now you are taking six folks off the

2   witness list, so you're going to be filing an amended

3   witness list?

4           MS. PALUCH:  Your Honor, only one of those six was

5   on the witness list.  We --

6           THE COURT:  Okay.  I'm confused, then.  Why did I

7   sign writs for folks to come here?  Just to watch the trial

8   or what?

9           MS. PALUCH:  No.  At the time we filed the writs,

10  we did not have a stipulation as to their testimony.

11          THE COURT:  Okay.

12          MS. PALUCH:  One of the two individuals, who is

13  not in custody, we had planned on calling him.

14          THE COURT:  Okay.  So are any of the six that now

15  we have discussed are not going to testify, are they

16  included in your current -- your most current witness list

17  filing?

18          MS. PALUCH:  Only one.

19          THE COURT:  Okay.  So just file an amended witness

20  list deleting that individual.

21          MS. PALUCH:  Yes.

22          THE COURT:  Okay.  And please do that by Tuesday,

23  the 21st.

24          Defendant has listed four witnesses.  Is there any

25  change to that list?  Mr. Smith?

1          MR. SMITH:  As of this time, no, Your Honor.

2          THE COURT:  Okay.  All right.  So we'll go with

3     that.

4          All right.  Exhibits.  The Government has endorsed

5     117 -- is the -- do the 117, does that include potential

6     Rule 1006 summary exhibits?

7          MS. PALUCH:  It does, Your Honor.

8          THE COURT:  So like how many of those are there?

9          MS. PALUCH:  Four.

10         THE COURT:  Four.  So the 117, four are 1006

11    summaries of more voluminous documents.

12         MS. PALUCH:  Right.  Your Honor, also on that

13    point there are a number of exhibits that are the disks

14    that the custodians -- their declarations pertain to, so

15    there's a number of exhibits on this list that pertain

16    to the -- the disk, for example, is 60, the declarant's

17    declarations is 60-A.

18         THE COURT:  Okay.

19         MS. PALUCH:  So -- and that's something that we've

20    stipulated to.

21         THE COURT:  Is that a declaration for foundation?

22         MS. PALUCH:  Correct.  Well --

23         THE COURT:  If you're stipulating to the

24    admission, why do you need a declaration?  Because you

25    didn't at the time know you were going -- got it.

1       MS. PALUCH:  Yeah.

2       THE COURT:  I'm figuring out how you guys have

3   been doing this.  Okay.  So 117 exhibits for the

4   Government.  Maybe we're reading it wrong, but it seems

5   to -- the way we read the Government's exhibit list

6   document, that only 16 of those 117 have been stipulated to

7   in terms of admissibility.  Are we misreading that

8   exhibit -- your list?

9       MS. PALUCH:  One moment, Your Honor.

10       THE COURT:  Sure.

11       MS. PALUCH:  So, Your Honor, with the ones that

12   you referenced, it's our understanding that the defense is

13   admitting to authenticity but is reserving rights to

14   challenge relevance.

15       THE COURT:  The important one, the admission.

16       MS. PALUCH:  Exactly.

17       THE COURT:  Admissibility.  Okay.  So we're not

18   misreading your exhibit list.  The defendant has listed 44

19   exhibits, 14 of which are stipulated for admissibility.  Am

20   I reading that correctly, Mr. Smith?

21       MR. SMITH:  I believe you are, Your Honor.

22       THE COURT:  Okay.  So here's the problem:  We have

23   161 exhibits, potentially, with only 30 stipulations.  When

24   I'm saying "stipulations," that's shorthand for stipulation

25   for admissibility.  Because while I appreciate admission --

1    stipulations, rather, to authenticity, obviously the

2    important one is admissibility, and now that I find out

3    that four of the 117 are 1006 summary exhibits.

4              So the issue for me is -- let's see, 161 -- 131

5    exhibits without stipulation for admission is going to bog

6    down this trial tremendously and we're not going to get it

7    done in a week if anything like 160 exhibits are going to

8    be offered if we have to do battle on admissibility --

9    or -- and foundation and all that.

10             So I'm going to direct the lawyers to, no later

11   than the end of Monday, this Monday, the 20th, to meet face

12   to face, and you're going to run through your exhibit lists

13   and you're going to do a much better job at coming to an

14   agreement as to far more than 30 exhibits to which you're

15   going to stipulate to admissibility.

16             And then no later than Wednesday, the 22d, each

17   side is going to file their amended final exhibit lists

18   which maximizes, to the greatest extent possible, obviously

19   consistent with your fiduciary duties to your clients, the

20   number of exhibits that have been stipulated to.

21             You know, you will thank me for forcing you to go

22   through this because it makes for a much smoother trial,

23   the jurors are much happier, and nothing turns them off, in

24   my experience, than having to -- for them having to sit

25   through exhibit after exhibit where we're wading through

1     foundation and all that.

2             So any questions on what I've just ordered?

3             MS. PALUCH:  No, Your Honor.

4             THE COURT:  All right.  For the defendant?

5             MR. GOODREID:  Your Honor, may I make an inquiry

6     with respect to that?

7             THE COURT:  You may.

8             MR. GOODREID:  Would the Court countenance sort of

9     a halfway position there, that the parties would agree as

10    to foundation, to that sort of stuff, but simply reserve a

11    relevance objection because, as we were going through that,

12    most of them were not -- the Government couldn't lay a

13    foundation, but, rather, just wanted to reserve the point

14    of relevance.

15            THE COURT:  I understand that you were reserving

16    the ultimate decision of stipulating to admissibility, but

17    let me tell you what has always happened.  All my prior

18    trials, whenever I have put the lawyers through this

19    exercise, magically the amended list comes up with far more

20    exhibits that have been stipulated to than previously.  So

21    I think the fact that you -- that I'm going to force you to

22    sit across the table from each other and you're going to go

23    through this list will end up with -- now, if you believe

24    you can't in good faith, and consistent with your duties to

25    your client, stipulate to admission, then I can't force you

21

1    to do that.

2           It's just what -- the reason to go through this is

3    because it's been my experience, after nearly 50 trials,

4    that lawyers, because they've been too busy or their focus

5    has been elsewhere, have not put in the time to really

6    crunch through what the -- they can agree to that comes in

7    and what doesn't.  And by doing this -- again, you will

8    thank me for forcing to you do this because it will be a

9    much smoother trial.

10          All right.  Voir dire questions.  We're going to

11   use the default length of 20 minutes for each side.  Both

12   sides have submitted their proposed voir dire.  All right.

13          So let me tell you, Monday, the 27th, we're going

14   to meet up again here at 8:30.  We're going to run through

15   any last-minute items that need to be dealt with before we

16   bring up the venire panel at 9:00.  One of the things I'll

17   tell you at 8:30, is -- because I have yet to do it -- is

18   which, if any, of your proposed voir dire questions I will

19   not allow you to ask.  And usually those are in the

20   minority, but I've had some trials where there were a

21   number of voir dire questions that I thought were

22   inappropriate.

23          So you are then allowed to ask any questions that

24   I do not preclude you from asking and any reasonable

25   follow-up to those questions.  You will -- you will

1    learn -- or you will see that I conduct a pretty exhaustive

2    voir dire, myself, so I'm going to take the wind out of a

3    lot of your sail and ask a lot of your questions, but I

4    think that's good for you because then you can focus on

5    what you really want to focus, as opposed to asking people,

6    have they been on a jury before, has anybody been a

7    defendant or a party in a case.

8          I will go through those kind of questions and then

9    you can focus on the fact-specific nature of your inquiry

10   for this trial.  But in any event, you will learn that that

11   8:30 session which, if any, of your proposed questions you

12   cannot answer.  Or you cannot ask, rather.  Any questions

13   on voir dire?

14         MS. PALUCH:  No, Your Honor.

15         THE COURT:  Okay.

16         MR. GOODREID:  Your Honor, just one, and that is:

17   Your practice standards says the parties are confined to

18   the questions that they've submitted to the Court.  But

19   since we're going second, I assume -- but please -- I'd

20   like to ask:  Are we free to follow up on any point the

21   Government raised even if it wasn't something which was

22   specifically on our list?

23         THE COURT:  That's a good question.  No one has

24   ever asked me that.

25         MR. GOODREID:  Thank you, Your Honor.

1      THE COURT:  But I think that's a good question.

2  And the answer would be yes.

3      MR. GOODREID:  Okay.

4      THE COURT:  The reason in my practice standards I

5  say that no voir dire question can be asked that hasn't

6  been pre-cleared with me is because, you know, you can't

7  put the toothpaste back -- once it comes out, it comes out.

8  And if I don't know what's coming, I can't stop it

9  beforehand.  And it might be a question that it could be

10  highly prejudicial to the other side.

11      So if I've cleared the question for either side,

12  then it's fair game for both sides.  That's -- like I said,

13  I never thought of that, no one's asked me that, that's a

14  good point.  And if there's a question on the Government's

15  list that I have not directed the Government to refrain

16  from asking, you're free to ask.  Okay.

17      Let's turn to jury instructions.  You folks did an

18  excellent job on the jury instructions.  I commend you for

19  what you've done there.  I guess you took a good look at

20  the Yurek trial instructions and that's helpful.

21      So -- and I think this -- I think this is accurate

22  for me to say this, that I have never had a case where

23  there's been any disputed -- where there has been no

24  disputed instructions.  I'm happy to see that.  It will

25  make it much -- the task of dealing with jury instructions

24

1    will be much simpler for Mr. Foster and I, given that.

2            So now, the one thing I do want to cover with you

3    is the statement of the case instruction.  So it's, you

4    know, the usual practice amongst most of my colleagues, I

5    believe -- and I do this when there isn't a stipulated

6    statement of the case -- is to read the instruction -- to

7    read the indictment to the jury during the voir dire

8    process.  But oftentimes the indictment is very lengthy.

9    This one is not as lengthy as some of the others, but even

10   when length is not an issue, sometimes the -- both sides

11   can agree that a statement of the case should be read in

12   lieu of the indictment.

13           So I just want to confirm -- so it looks like you

14   folks did file a stipulated statement of the case, and I

15   just want to confirm from both of you that you are agreeing

16   that that is what I will use to inform the jury -- the

17   venire panel of what this case is about in lieu of reading

18   the indictment.

19           MS. PALUCH:  Yes, Your Honor.

20           THE COURT:  Okay.

21           MR. SMITH:  Yes, Your Honor.

22           THE COURT:  Okay.  And so we're talking about ECF

23   201, instruction No. 1; is that correct?

24           MS. PALUCH:  That's correct, Your Honor.

25           THE COURT:  Okay.  All right.  So I will read

1    that.  And that is helpful.

2              Oh, and the other thing you haven't done with the

3    instructions and your proposed stipulated instructions and

4    your verdict forms is that you've not e-mailed them to my

5    chambers in editable form.  So only one side has to do

6    that, so I'll ask the Government to do that.  If you can

7    get that in to us by Monday, Tuesday, next week, that's

8    fine.

9              MS. PALUCH:  Okay.

10             THE COURT:  Just get that to us and we can work

11   with those in that format.

12             Trial briefs I only allow if I'm requested or I

13   order them.  You've not requested and I am not going to

14   order them.  I think I'm familiar enough with this case and

15   the issues and the facts that I don't need trial briefs.

16   So that's one less thing for you folks to have to do

17   between now and the 27th.

18             The last thing that I'm going to cover is I always

19   make a practice to ask this, even if I know what the answer

20   probably will be.  Does there remain any potential for a

21   pretrial resolution of this case?

22             MS. PALUCH:  Not to my understanding, Your Honor.

23             THE COURT:  Okay.  The defendant, does the

24   defendant concur?

25             MR. SMITH:  I concur, Your Honor.

1          THE COURT:  Okay.  That's what we're here for, to

2    put on trials.

3          All right.  I'm done covering the items I need to.

4    Let's turn to the Government.  And, Ms. Paluch, you had two

5    other matters that I think I have not raised since you

6    haven't brought them up, so go ahead and bring those up

7    now.

8          MS. PALUCH:  Thank you, Your Honor.

9          Two of the witnesses listed on the defendant's

10   list are Matthew Sanders and Michael Cox.  Sanders is a

11   friend of the defendant; they met while they were both

12   incarcerated.  And Sanders introduced the defendant to

13   Heather Carr, his stepsister.  Sanders' address -- so

14   Sanders and Carr are step-siblings --

15         THE COURT:  Okay.  Got it.

16         MS. PALUCH:  Okay.  And so Sanders' address was

17   used on multiple FAFSAs submitted to the Department of

18   Education.

19         THE COURT:  And Ms. Carr is an endorsed witness.

20         MS. PALUCH:  She is, Your Honor.

21         THE COURT:  All right.  Okay.

22         MS. PALUCH:  So Sanders' address was used on a

23   number of FAFSAs that were submitted to the Department of

24   Education and, in fact, 11 debit cards were mailed to his

25   address.

1           Michael Cox is the defendant's cousin.  His

2    address was used on multiple FAFSAs and four debit cards

3    were mailed to his address.  Carr implicates Sanders and

4    Cox in this scheme.  The Government did not have enough

5    evidence to charge either of those individuals, but is

6    concerned that if they're called to testify, both could

7    invoke their rights not to incriminate themselves.  For

8    this reason --

9           THE COURT:  You're not planning on calling them.

10          MS. PALUCH:  We are not calling them.

11          THE COURT:  Okay.

12          MS. PALUCH:  Now, I would qualify that by saying

13   at the very -- months and months ago when we were -- knew

14   this was going to trial, we did subpoena both individuals,

15   but we have decided for these reasons to not call them --

16   in addition to other reasons -- but to not call them as

17   witnesses in our case.  Our concern is if they're called to

18   testify and they invoke in front of the jury.

19          So we're bringing this to the Court's attention to

20   address whether or not counsel should be appointed to

21   advise them of their rights.  Now, I'm sorry, Your Honor,

22   could I throw one more situation in there?

23          THE COURT:  Sure.

24          MS. PALUCH:  We have a witness on our -- and I

25   apologize for interrupting you.

1          THE COURT:  That's all right.

2          MS. PALUCH:  We have a witness listed on our

3    witness list named Kimmisha Mullett.  Her address was used

4    in this scheme as well.  She has told us in statements that

5    the defendant asked if he could use her address, that he

6    said he wouldn't tell her what it was about because he

7    didn't want her to get involved.  She's a witness, she's

8    flying in, she's scheduled to testify for us.  The same

9    reasons we're concerned for Cox and Sanders -- because she

10   lives in St. Croix, we haven't had the chance to speak with

11   her yet, and we're hoping to get her on the phone before

12   she flies in to Denver.  But for the same reasons --

13         THE COURT:  Bring her all the way from the

14   Carribean --

15         MS. PALUCH:  Absolutely, Your Honor.

16         THE COURT:  She must be an important witness to

17   you.

18         MS. PALUCH:  To us, she is.  But for the same --

19   in fairness, if we're saying Cox and Sanders' addresses

20   were used in this scheme and we think they might need

21   advice of counsel, I think it's only fair to say we've

22   endorsed a witness who might be in the same boat as those

23   two.

24         THE COURT:  All right.

25         MS. PALUCH:  We just don't know at this point.

1    And so we're --

2            THE COURT:   What do you mean you don't know?

3            MS. PALUCH:   Well, we don't know --

4            THE COURT:   You know if you're going to call her

5    or not.

6            MS. PALUCH:   Oh, absolutely we're going to call

7    her.

8            THE COURT:   So what don't you know?

9            MS. PALUCH:   Well, we need to talk to this woman

10   to make sure that there's nothing that could somehow

11   implicate her in the scheme.   Based on our -- her

12   testimony -- or her statement that she gave to

13   investigating agents, we felt she had no involvement in the

14   scheme.

15           THE COURT:   Okay.

16           MS. PALUCH:   So I guess what I'm just previewing

17   for the Court are possible issues with respect to the three

18   of them.

19           THE COURT:   So this concern that you have for --

20   what's her name again?

21           MS. PALUCH:   Kimmisha Mullett.

22           THE COURT:   Mullen?

23           MS. PALUCH:   Mullett.

24           THE COURT:   For Ms. Mullett.   This hasn't come up

25   for -- this issue hasn't come up before in terms of your

1    discussions with her or your -- you know, I'm a little
2    surprised that this doesn't come up until now when you're
3    ready to call her as a witness.
4              MS. PALUCH:  Right.  She was interviewed -- was it
5    2013?  2013 was when she was interviewed.
6              THE COURT:  Did she have counsel then?
7              MS. PALUCH:  She did not.
8              THE COURT:  Okay.
9              MS. PALUCH:  And her statement was that she had no
10   involvement in this.
11             THE COURT:  Okay.
12             MS. PALUCH:  Some of the exhibits pointed out by
13   defense counsel, we think Ms. Mullett is going to have some
14   credibility issues on some other aspects.  It's caused us
15   to wonder, could there be an argument that she was somehow
16   involved if mail was going to her address.  Did she really
17   not know what was going on?
18             So I'm just saying this as a matter of candor
19   that, until we get her on the phone and talk and tell her
20   our line of questioning, I don't know at this point.  But I
21   felt it unfair to bring up the Cox and Sanders but not --
22   without mentioning this woman.
23             THE COURT:  I appreciate that.  Let me deal with
24   Ms. Mullett first.  Don't you think before this is really a
25   ripe issue that I need to deal with that you need to have

1    that preliminary discussion with her?  Just like any lawyer

2    that's talking to someone to get a sense of:  Is this

3    someone represented by another -- so I'm thinking civil

4    litigation -- someone represented by someone else or in a

5    criminal context?  Is this someone potentially chargeable

6    with a crime for purposes of the prosecutor's office, and

7    that we should then stop the discussion and the

8    questioning, so then you know enough that, yes, there is an

9    issue or there's not an issue.

10            MS. PALUCH:  Absolutely.

11            THE COURT:  So that's what I'm saying.  I'm

12   surprised you haven't had that discussion previously such

13   that you're now standing up to tell me, "Judge, we had that

14   discussion.  It went for about three minutes and from what

15   we learned from the answers to our preliminary questions,

16   it's clear to us that this is someone that could

17   potentially be chargeable and, therefore, we believe she

18   needs separate counsel, or not."

19            But you haven't done that so I think, you know --

20   I have enough to do dealing with issues that are ripe for

21   decision I have to decide now.

22            MS. PALUCH:  Your Honor --

23            THE COURT:  You're presenting me with a

24   hypothetical that may not -- I may not need to rule on.

25            MS. PALUCH:  You're absolutely correct on that.

1   What I would point out that since the hurricanes have hit

2   the Carribean, it's been extremely difficult to communicate

3   with this woman.

4           THE COURT:  Okay.  I want -- I don't want to be

5   heard to be saying I'm laying blame on -- I'm somewhat

6   surprised, yes, I now understand with the hurricane and all

7   that, there's reasons why maybe you've not been able to

8   communicate with her much up until now.  That's no

9   longer -- I'm not concerned about why you didn't do it and

10  any of that.  The point is that you haven't.  And until you

11  do, you don't know whether you have the same issue as the

12  defendant may have with Sanders and Cox if the defendant

13  calls them -- is planning on calling them.

14          MS. PALUCH:  And you've read it absolutely

15  correct.  We felt, given that Sanders and Cox are on their

16  witness list, that we needed to raise this issue, and in a

17  sense of completeness, which I agree is premature, we

18  brought up Mullett --

19          THE COURT:  Okay.

20          MS. PALUCH:  -- in that vein.  But we do believe

21  that since Cox and Sanders are on their witness list, that

22  the issue is ripe for them.

23          THE COURT:  Okay.  Let --

24          MS. PALUCH:  Go right ahead.

25          THE COURT:  Hold on right there.  Let me turn to

33

1    the defense counsel.  All this is completely moot if you're

2    not planning on calling them.  So where do we stand on

3    that?  I mean, I know you don't want to necessarily

4    telegraph your trial strategy, but we are dealing with a

5    situation where if I need to be appointing counsel to

6    advise a witness on their potential, you know,

7    self-incrimination issues, I'd rather know sooner than the

8    27th or the 28th.

9              MR. SMITH:  I understand, Your Honor.  And we will

10   certainly do our best.  I can't give you an answer to your

11   question right now.

12             THE COURT:  Okay.

13             MR. SMITH:  As to Mr. Cox, I have talked to him

14   one time and it was about five weeks ago.  It was a phone

15   conversation and it was very brief.  He indicated to me at

16   that time that he was under subpoena and expected to be in

17   Denver on the 27th.

18             THE COURT:  Subpoena from you?

19             MR. SMITH:  No.

20             THE COURT:  From whom?

21             MR. SMITH:  From the Government.

22             THE COURT:  I thought you said you weren't calling

23   them as a witness.

24             MS. PALUCH:  I did, Your Honor.  At the very

25   beginning when this case was set for trial, we did subpoena

1    the individuals.  Then we determined that we were not going
2    to call Cox and Sanders for the reasons I've explained, but
3    we did have them under subpoena.  We have tried to contact
4    them to tell them the Government is not intending to call
5    them.  We've left a message for one, have had no luck
6    reaching the other.
7            THE COURT:  Okay.  Would it help advance the
8    discussions with them if I were to get the Government to
9    make an oral motion to quash those subpoenas and then you
10   can represent to them that they're no longer under a
11   Government subpoena?
12           MR. SMITH:  My problem --
13           THE COURT:  I'm just asking would it help or would
14   it hurt?
15           MR. SMITH:  I don't believe it would help.
16           THE COURT:  Okay.  All right.  Go ahead.
17           MR. SMITH:  I have never been able to talk to Mr.
18   Sanders.  I've never been able to reach him.  I understand
19   he's under subpoena.  Because of the position that we
20   understand these two gentlemen were in, we think they are
21   important witnesses for this trial.  Whether they would
22   exercise their rights under the Fifth Amendment, I have no
23   idea, especially with Sanders.  I've never been able to
24   talk to him.
25           THE COURT:  Okay.

1          MR. SMITH:  The witness Diaz doesn't fall into

2    this area, but since the Court is asking --

3          THE COURT:  Where's Diaz?  I thought we were

4    talking about Sanders and Cox.

5          MR. SMITH:  We were, but you asked about my

6    witnesses.

7          THE COURT:  Okay.  Go ahead.

8          MR. SMITH:  Diaz is a witness that has pled guilty

9    before Your Honor.  She was codefendant in this case.

10          THE COURT:  Right.

11          MR. SMITH:  I listed her because of the Court's

12    requirements, as I read them in your practice standards.  I

13    have not been able to talk to her either.  Her counsel will

14    not permit that and he will not accept subpoenas, so I

15    don't have her under subpoena.

16          THE COURT:  Okay.

17          MR. SMITH:  Which leaves only one witness, Ms.

18    Eubanks.  She is not under subpoena.  She said she didn't

19    require one.  She's an attorney licensed to practice in

20    Colorado, and will appear on my summons.

21          THE COURT:  All right.  Well, here's what I think

22    we're going to do, and I think the only thing we can do,

23    based on what both of you have told me, is that as soon as

24    the defense makes a definitive decision that Messrs.

25    Sanders and/or Cox are going to be called as witnesses,

1    then you need to notify the Government and notify the

2    Court.  And then I agree with Ms. Paluch, because there's

3    at least a potential that these folks are involved to such

4    an extent that they might have engaged in chargeable

5    conduct that they would need to have counsel to advise them

6    on whether, amongst several other things, to invoke their

7    Fifth Amendment rights.

8         So I think as to them, also it's quite not ripe

9    this moment, like you said -- the first thing you said --

10   but at the point where it crystallizes and you know that's

11   the path, the direction, you're going, you need to tell the

12   Government and me right away and we'll get someone in here.

13        MR. SMITH:  We'll do so, Your Honor.

14        THE COURT:  All right.  Thank you.

15        Okay.  Your second point, Ms. Paluch.

16        MS. PALUCH:  Yes, Your Honor.  Thank you.  This is

17   a point that we just want to alert the Court to, and this

18   is what the Government alleges is the defendant's

19   involvement in a prostitution business.  Government witness

20   Christine Duncan has stated that she and the defendant were

21   involved in a prostitution business with the defendant

22   essentially acting as Ms. Duncan's pimp.  This conduct led

23   in part to the defendant being detained in El Paso County

24   Jail.

25        The Government has no intention of introducing

1    witness testimony in its case in chief of the prostitution
2    activities.  It may --
3              THE COURT:  So why are you calling Ms. Duncan?
4              MS. PALUCH:  Ms. Duncan had communications with
5    the defendant regarding the financial aid fraud.
6              THE COURT:  Okay.
7              MS. PALUCH:  It may be --
8              THE COURT:  So they had a number of conversations
9    about different things.
10             MS. PALUCH:  Absolutely.  So we view the
11   prostitution situation as completely separate.  What we are
12   calling her --
13             THE COURT:  I'm glad you view it that way.
14             MS. PALUCH:  Yes.  I don't think we would get
15   anywhere near 404(b) on that topic.
16             THE COURT:  Okay.
17             MS. PALUCH:  So she will be asked about any
18   communication with the defendant about financial aid
19   fraud.
20             THE COURT:  Okay.
21             MS. PALUCH:  It may be that the defendant chooses
22   to impeach Ms. Duncan about her prior activities as a
23   prostitute.  We are just alerting the Court to --
24             THE COURT:  Does she have a conviction?  On
25   prostitution?

1    MS. PALUCH:  On prostitution, I don't think she

2  has.  She has other prior convictions, but I don't think

3  she's been convicted of being a prostitute.

4    THE COURT:  All right.  Well --

5    MS. PALUCH:  There's evidence --

6    THE COURT:  How do you think the defendant is

7  going to impeach someone without there being a conviction

8  of -- that gets in under the FRE of potential other

9  criminal conduct?

10    MS. PALUCH:  I believe the way that that would

11  possibly come in is when the defendant was incarcerated in

12  2011, Ms. Duncan was encouraged to go to Arizona and engage

13  in prostitution activities to raise money, what she

14  believed would be used to pay for the defendant's lawyers,

15  for his defense, while he was in custody.

16    Ms. Carr will testify --

17    THE COURT:  Okay.

18    MS. PALUCH:  -- that she gave money from the

19  scheme to pay for the defendant's legal fees.  I would

20  assume that defense counsel would be attempting to impeach

21  Ms. Carr's testimony that proceeds from the conspiracy were

22  used to pay for his legal fees.  What we've proposed is

23  that we phrase it in the terminology of "working."  Ms.

24  Duncan was working in order to provide money for the

25  defendant's defense.  We're just alerting the Court to the

1    fact --

2          THE COURT:  You're -- I think I'm not following

3    you.  You've proposed to do what -- what in what context?

4          MS. PALUCH:  Well, nothing.  The defense counsel

5    and I have had very candid conversations about this whole

6    prostitution issue and who's staying away from it and who's

7    possibly going near it.  We have no intention of going near

8    it.

9          THE COURT:  Okay.

10         MS. PALUCH:  We're just saying to the extent that

11   the defense attempts to impeach this witness, however they

12   can, with information about her being a prostitute, we feel

13   that we would be entitled on redirect to elicit from this

14   witness that the defendant, himself, was involved in the

15   prostitution business.

16         THE COURT:  Okay.  Well, let me just make a

17   comment here.  I think the -- first of all, whether you

18   would be able to get past an objection to attempting to

19   impeach someone for being an alleged prostitute with no

20   conviction, I think the odds of that are pretty -- are in

21   the single digits.

22         Secondly, if you were successful, I have to agree

23   with Ms. Paluch, you would be risking opening a huge door,

24   a huge door to the extent your client is somehow involved

25   with these activities.  I'm not going to tell you how to

1    put on your case or put on your trial, but word to the

2    wise.

3              Okay.  Anything else?

4              MS. PALUCH:  Some other housekeeping matters, Your

5    Honor.

6              THE COURT:  Sure.

7              MS. PALUCH:  Can I address them now?

8              THE COURT:  Go ahead.

9              MS. PALUCH:  Use of exhibits during opening and

10   closing.  I was going to inquire of the Court as to your

11   practice.

12             THE COURT:  In opening, only -- well, actually

13   opening and closing, only exhibits that have been

14   stipulated to and admitted.  In opening you won't have

15   anything admitted but if they've been -- if an exhibit has

16   been stipulated to in terms of admissibility, it may be

17   used in opening statement.

18             In closing argument, an exhibit that has been

19   received into evidence may be used.  And also the final

20   set -- any one or more of the jury instructions in the

21   Court's final set is going to go back to the jury.  That's

22   why I instruct before the closing arguments so that you're

23   all free to use a jury instruction in your closing to the

24   extent you think appropriate.  That's why the final final

25   set we give you of the instructions are non- -- are

1    unannotated, without the citations at the bottom of the

2    page.  They're clean instructions that you can put up on

3    the Elmo and use as you see fit.

4               Now, when you say exhibits, are you also using

5    demonstrative exhibits?  Do you have any?

6               MS. PALUCH:  I would, Your Honor.  Like, for

7    example, if we were to put up the elements and click as to

8    how we believe we've proved that element, is that something

9    that is allowable?

10              THE COURT:  If the defendant has no objection,

11   that's allowable.  If you think that it's an unreasonable

12   objection -- I mean, something like that, the element --

13              MS. PALUCH:  And it would --

14              THE COURT:  Well, I guess you have no disputed

15   instructions, so you stipulated to the elements of the

16   counts.

17              MS. PALUCH:  Right.

18              THE COURT:  I think it would be unreasonable for

19   the defendant to object to you using a slide that lists the

20   elements of the charged conduct in your opening.  And then

21   you can raise that with me and I would probably rule that

22   you can use it.  But, again, the principle point being is

23   there an agreement between the parties, especially in

24   opening, where nothing has been admitted and all that.  If

25   you have a stipulation, if you have an agreement, then you

1    can go ahead and use it.

2            MS. PALUCH:  Okay.  As for the opening, I don't

3    envision that to be a problem at all.  As to the closing, I

4    think where I might be trying to drill down is if we put up

5    the element and I click on five ways that I think we've

6    proven that element and the defense disputes the

7    characterization of that evidence, that might not be

8    something that they would --

9            THE COURT:  Well, that's -- you're talking about a

10   slide that summarizes your argument.

11           MS. PALUCH:  Exactly.

12           THE COURT:  Right.

13           MS. PALUCH:  Is that helpful?

14           THE COURT:  I don't require the defendant to

15   stipulate to your argument.  You can just -- you just go

16   ahead and put on your argument and put -- go through your

17   slides, and if there's an objection in closing -- which I

18   would counsel the lawyers to think very carefully about

19   doing -- but if there is, I'll rule on it.

20           But I can tell you now if it's just -- you're just

21   arguing from the elements and you are saying, "This is what

22   this means and what you need to find that has been

23   established," then that's fine with me.

24           MS. PALUCH:  Thank you, Your Honor.

25           THE COURT:  All right.  Any additional matters

1    that -- from the defendant's perspective that we didn't

2    deal with today?

3              MR. SMITH:   Your Honor, I just -- I wasn't quick

4    enough on my feet when you were -- some of the exhibits and

5    your concern about stipulations.

6              THE COURT:   Okay.   Right.

7              MR. SMITH:   When we come back, I just want to

8    advise the Court, there are still going to be a number of

9    defense exhibits that are not going to be stipulated to.

10   They are only listed on our exhibit list because of the

11   Court's requirements.

12             THE COURT:   Right.

13             MR. SMITH:   They're witnesses' statements and I

14   don't think they will ever be offered.   They are there lest

15   I or my cocounsel need them for cross-examination.

16             THE COURT:   Again, understood.   Again, let me just

17   stress, I can't force you -- like I can't force you to get

18   a plea in this case, I can't force you to stipulate to the

19   admissibility of certain exhibits.

20             My only reason for putting you through the

21   exercise I've ordered you to go through is that it's been

22   my experience over seven years of sitting where I'm

23   sitting, and 50 trials, that that usually gets a large

24   number of additional exhibits stipulated to, and whatever

25   we can do in that regard, I think that's in everybody -- it

1   inures to everybody's benefit.  But you need to draw a line

2   and take a stand where you think it's appropriate based on

3   your duties to your client, then that's what you're going

4   to do.  I'm not going to get upset about it.

5           Anything else from the defendant's perspective?

6           MR. SMITH:  No, Your Honor.  Thank you.

7           THE COURT:  All right.  Very well.  We'll see you

8   at 8:30 on Monday, November 27th.

9       (Proceedings concluded at 2:56 p.m.)

10

11                *       *       *       *       *

12                   REPORTER'S CERTIFICATE

13

14      I certify that the foregoing is a correct transcript

15   from the record of proceedings in the above-entitled

16   matter.

17      Dated at Denver, Colorado, this 8th day of August,

18   2019.

19

20

21

22

        MARY J. GEORGE, FCRR, CRR, RMR

23

24

25