FILED
United States Court of Appeals
Tenth Circuit

September 15, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TRAMMEL THOMAS,

    Defendant - Appellant.

No. 19-1209
(D.C. No. 1:16-CR-00054-WJM-2)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

A jury convicted Trammel Thomas of one count of conspiracy to defraud the government with respect to claims, in violation of 18 U.S.C. § 286, and six counts of aiding and abetting mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. He filed a motion for new trial based on newly discovered evidence, relying on *Brady v. Maryland*, 373 U.S. 83 (1963). The district court denied the motion and sentenced him to 120 months' concurrent incarceration on each count, followed by three years

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of supervised release. Thomas appeals, challenging the denial of his new-trial motion. We affirm.

## BACKGROUND

The government indicted Thomas along with co-defendants Heather Carr, Mercedes Diaz, and Marcelle Green. Carr, Diaz, and Green pleaded guilty. The counts against Thomas were tried to a jury.

The government charged that the defendants defrauded the United States Department of Education (DOE) by filing false and fraudulent claims for federal student aid. Their scheme took place between approximately August 2010 and October 2012.

The conspirators searched inmate locator websites to obtain names and dates of birth for prison inmates. Carr then used a database at her workplace to obtain the inmates' social security numbers. The conspirators used the information they had acquired to apply for federal student assistance funds in the names of the inmates by submitting fraudulent FAFSA (Free Application for Federal Student Aid) forms. The FAFSA forms contained materially false representations about the applicants' identities, purported address, and intent to attend college. The conspirators then applied for admission to schools within the Colorado Community College System and elsewhere using the inmates' identities. These applications listed false mailing address information, allowing the conspirators to intercept mail sent by the schools to the purported students.

Based on the false information contained on the FAFSA forms, the DOE disbursed funds to the schools on behalf of the purported students. After deducting the cost of tuition, the schools issued "refunds" of the remaining funds. The refunds took the form of deposits to the purported students' accounts, checks made payable to them, or debit cards in their names. The conspirators arranged for the refunds to be sent to various addresses they controlled, intercepted these refunds, and kept the proceeds for themselves.

Eventually, an official at Pikes Peak Community College became suspicious when she realized that certain students were clustered at the same addresses, had enrolled in the same classes, and had similar references and email addresses. The college contacted DOE, which began investigating the scheme. A DOE investigator determined that someone had applied for student loans in the names of inmates without the inmates' authorization. The investigator traced the false applications to physical and internet addresses associated with the conspirators, including the home that Thomas and Carr shared in Arizona.

Meanwhile, in August 2012, a Tempe, Arizona police detective stopped a white Dodge Charger after he observed it weaving within and across its lane. The Charger was registered to Carr. Thomas was at the wheel. Thomas claimed to be coming from his post office box in downtown Tempe. As the officer scanned the vehicle's interior with a flashlight, he observed a plastic bag on the back passenger side seat. The bag contained a very thick stack of what appeared to be credit cards.

The officer asked Thomas to get the bag for him. At first, Thomas just looked at the bag and the officer and did nothing. When the officer asked again, Thomas picked up the bag, placed it onto the rear passenger side floorboard, and tucked it underneath the front passenger seat. He then handed the officer a different, empty Ziploc bag.

After a second officer arrived, the officer retrieved the bag containing the credit cards from beneath the seat. The bag contained 52 debit cards imprinted with the names of inmates, including inmates who were ultimately identified as victims of the aiding and abetting charges against Thomas. Thomas was arrested and searched. Inside his wallet the officer found an additional debit card that contained the wording "CCCS refund card," also imprinted with the name of a prison inmate. R., Vol. 6 at 235 (internal quotation marks omitted). In addition, a laptop seized from the car included hundreds of "hits" on community college websites and inmate names and search results related to FAFSA application pages.

Officers later executed a search warrant at the house shared by Carr and Thomas. Inside the house they found torn-up pieces of paper in a toilet. These pieces of paper contained acronyms relating to financial student aid, such as FAFSA, and the name of at least one prison inmate from the Florida Department of Corrections. The officers also found a broken cell phone in a closet containing men's clothing. Text messages found on the broken phone's SD card implicated Thomas in the conspiracy.

Green testified at Thomas's trial and described the scheme. The government also endorsed Carr as a trial witness. Carr's plea agreement required her to testify, and she flew to Denver for that purpose. But at the last minute she refused to testify.

After Thomas was convicted, but before he was sentenced, Carr executed an affidavit describing her pretrial interviews with the government. This affidavit became the centerpiece of Thomas's new trial motion.

In the affidavit, Carr stated that during a telephone interview on October 30, 2017, she had "told the government representatives . . . that [she] had had never seen . . . Thomas fill out a FAFSA loan application nor did [she] know if he knew how to fill out such an application." R., Vol. 1 at 739. At this, Assistant United States Attorney Fields allegedly "became quite upset" and accused her of changing her story from an earlier interview. *Id.* at 740. Then, at an interview on November 6, 2017, she denied that Thomas had threatened her or otherwise forced her to be involved in the scheme and stated that she, Diaz, and Green were "the main participants in the scheme." *Id*. Fields allegedly became frustrated and began yelling at her, threatening to "rip up [her] fucking plea agreement and send [her] to jail for a long time." *Id.* (internal quotation marks omitted).

Carr described several other statements she made during her government interviews that allegedly were not disclosed to Thomas, but which he considers exculpatory:

(1) The conspirators had used Michael Cox's address as a mail drop for the scheme. Carr told investigators that Cox had dated Diaz. At trial, the government

5

identified Cox as Thomas's cousin, implying that it was Thomas who had provided Cox's address for use in the conspiracy. But Thomas argued that Carr's statement about Cox dating Diaz suggested that it was Diaz who provided Cox's address, not Thomas.

(2) Carr said she had purchased the Dodge Charger in which Thomas was stopped with the bag of credit cards for Roderick Smith, the father of Green's children. She further stated Green had "continually borrowed and operated that automobile for her own personal needs." *Id.* at 741.

(3) Carr stated that Thomas did not "provide" the address on Radiant Drive where he had resided, that was used in the conspiracy. *Id.* at 740.[1]

(4) Carr claimed that Thomas did not participate in or knowingly benefit from the scheme while he was incarcerated from approximately late January 2011 through early November 2011.

Carr's affidavit did not recant her previous statements implicating Thomas in the conspiracy. But Thomas complained the prosecution failed to provide him with the "exculpatory and material" facts she now detailed. *Id.* at 728. The district court concluded, however, that none of the allegedly undisclosed facts Thomas cited represented a *Brady* violation or warranted a new trial.

---

[1] In his brief, Thomas has confused Cox's address on Rice Drive with the Radiant Drive address. *Compare* Aplt. Opening Br. at 6 *with* R., Vol. 6 at 780.

## DISCUSSION

### 1. Standard of Review

"[W]e review de novo a district court's ruling on a *Brady* claim asserted in the context of a new-trial motion," while reviewing the district court's factual findings for clear error. *United States v. Reese*, 745 F.3d 1075, 1083 (10th Cir. 2014). Arguments based on theories not argued in district court, however, are reviewed only for plain error. *See, e.g.*, *United States v. Williams*, 934 F.3d 1122, 1127 (10th Cir. 2019). And where the defendant has failed to make a plain-error argument on appeal, "we ordinarily deem the issue waived . . . and decline to review [it] at all." *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).

### 2. *Brady* Issues

"A defendant who seeks a new trial . . . based on an alleged *Brady* violation must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." *United States v. Velarde*, 485 F.3d 553, 558 (10th Cir. 2007) (internal quotation marks omitted). "Evidence is 'material' under *Brady* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 559 (internal quotation marks omitted). "In evaluating the materiality of withheld evidence, . . . we review the cumulative impact of the withheld evidence, its utility to the defense as well as its potentially damaging impact on the prosecution's case." *Simpson v. Carpenter*, 912 F.3d 542, 572

7

(10th Cir. 2018) (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 390 (2019); *see also Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

Thomas argues the prosecution's suppression of four pieces of material evidence warranted a new trial: (1) Carr's opinion that he played only a minor role in the conspiracy; (2) Green's use of the Dodge Charger; (3) Diaz's relationship to Cox; and (4) Thomas's lack of participation in the conspiracy while incarcerated.[2] Even assuming the prosecution suppressed this information, it does not satisfy *Brady*'s materiality standard.

The charges for which Thomas was convicted did not require a showing that he was a main participant in the crimes. Nor was Carr's statement that Thomas was not a major participant reasonably likely to have persuaded the jury he had not "done anything wrong" or that he was "essentially irrelevant" to the conspiracy. Aplt. Opening Br. at 17-18. In addition to the evidence presented at trial concerning Thomas's involvement in the scheme, Carr's statements about Thomas's extensive participation, which she did not recant in her affidavit, decisively rebut his argument. *See, e.g.*, R., Vol. 1 at 735-38.

It is undisputed that Thomas was caught driving the Charger with a bag of student debit cards and a laptop used in the fraud scheme. In addition, Carr stated that on the night of the traffic stop Thomas retrieved the laptop and the debit cards

---

[2] To the extent Thomas makes passing reference to other statements in Carr's affidavit, he fails to develop a *Brady* argument concerning these statements and we will not construct such an argument for him. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

from a girlfriend's house. *See id.* at 893. Thomas's attempts to hide the debit cards from law enforcement during the stop strongly suggest his knowledge of their illicit nature. And he had a debit card with an inmate's name in his wallet.

Even if the jury might have concluded that Diaz rather than Thomas provided Cox's address for the scheme, this would not have disproved Thomas's participation in the scheme. Among other things, debit cards mailed to Cox's address were found in Thomas's possession. *See* R., Vol. 6 at 780.

Finally, the government provided evidence that Thomas intentionally aided and abetted the fraud before he went to jail. The evidence does not show that Thomas withdrew from the conspiracy during his time in jail. And he was caught with the debit cards and laptop *after* he was released from jail.

In sum, our assessment of the cumulative impact of the allegedly withheld evidence in light of the entire record does not persuade us that there is a reasonable probability that had the evidence been disclosed to the defense the result of the proceeding would have been different. Given the evidence presented at trial and Carr's own statements about Thomas's participation, the cited evidence was not material. The district court properly denied Thomas's motion for a new trial based on *Brady*.

### 3. Additional Issues Reviewed Under Plain-Error Standard

The government argues Thomas failed to raise two additional appellate arguments in district court and those arguments are therefore waived. Thomas claims that (1) the government intimidated Carr, resulting in a either a *Brady* violation or a

9

due process violation that prejudiced him per se; and (2) he should have received an evidentiary hearing on this "intimidation" claim.[3]

Although both Carr's affidavit and the new-trial motion mentioned the prosecutor's alleged intimidation, Thomas did not argue that the intimidating conduct violated *Brady* or his due process rights, that it was per se prejudicial, or that the issue deserved an evidentiary hearing. *See* R., Vol. 1 at 728-32. His argument therefore represents a new theory raised on appeal. Thomas does argue that plain-error review does not apply to his evidentiary-hearing argument because a request for a hearing was inherent in his request for a new trial. But we disagree. *Cf., e.g.*, *United States v. Piper*, 839 F.3d 1261, 1269 n.8 (10th Cir. 2016) (rejecting defendant's argument that "raising a fact dispute [was] tantamount to requesting a hearing" and could thus circumvent plain-error review). We thus agree with the government that Thomas failed to preserve these issues for our review.

Thomas has not requested plain-error review of these waived issues in his opening brief. We could therefore simply refuse to address them. *See Leffler*, 942 F.3d at 1196. But in response to the government's waiver argument he has argued for plain-error review in his reply brief. We have discretion to address his arguments under the plain-error standard. *See id.* at 1197-98. Even if we exercise our discretion, however, Thomas has not demonstrated plain error.

---

[3] Thomas sprinkles his brief with suggestions that he should have received an evidentiary hearing on other issues as well. These occasional references to an evidentiary hearing are insufficient to develop an argument for our appellate review.

To satisfy the plain-error test, a defendant must show (1) an error that (2) is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Williams*, 934 F.3d at 1127. Thomas has failed to show that the prosecution's failure to disclose the prosecutor's alleged intimidation of Carr, or the district court's failure to hold an evidentiary hearing on this claim, affected his substantial rights.

First, he fails to satisfy *Brady*'s materiality requirement, even if the effect of the evidence of intimidation is considered cumulatively with his other alleged *Brady* evidence. Carr's statements contained a significant number of facts inculpating Thomas, and she did not recant these facts even when she arguably could have done so in her affidavit. Nor does Thomas's other assertion, that he could have used the prosecutor's alleged intimidation of Carr during interviews to cast a shadow across the government's case, suggest the likelihood of a different result at trial.

The prosecutor's alleged menacing also did not represent intimidation of a defense witness, as Thomas argues, citing *United States v. Schlei*, 122 F.3d 944, 991-92 (11th Cir. 1997). There is no evidence that the government attempted to intimidate Carr into refusing to testify as a defense witness. In fact, the government listed Carr as a trial witness, and Thomas did not. *Compare* R., Vol. 1 at 327 *with id.* at 303. And although Thomas notes that under an agreement with the government he could have called Carr as a witness, and seems to suggest that he could have "flipped" her to be a favorable witness for him, her unrecanted statements suggest otherwise.

11

Given the facial lack of merit of his "government intimidation" claim, Thomas also fails to show that an evidentiary hearing would have made any difference concerning that claim. His evidentiary hearing argument therefore also fails to satisfy the plain-error test.

## CONCLUSION

The district court's judgment is affirmed.

                                      Entered for the Court


                                      Bobby R. Baldock
                                      Circuit Judge

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert　　　　　　　　　　　　　　　　　　　　　　　　Jane K. Castro
Clerk of Court　　　　　　　　September 15, 2020　　　　　　　　Chief Deputy Clerk

Mr. Ryan Thomas Truskoski
1300-G El Paseo Road, Suite 122
Las Cruces, NM 88001

**RE:**　　**19-1209, United States v. Thomas**
　　　　　Dist/Ag docket: 1:16-CR-00054-WJM-2

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

　　　　　　　　　　　　　　　　　　　　Sincerely,

　　　　　　　　　　　　　　　　　　　　Christopher M. Wolpert
　　　　　　　　　　　　　　　　　　　　Clerk of the Court

cc: Paul Farley
Bryan David Fields
James C. Murphy
Martha A. Paluch
Susan Begesse Prose

CMW/jjh