UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. Tramell Thomas, Defendant. | CASE NUMBER: 1:16-CR-00054-WJM <br><br> JUDGE William J. Martinez <br><br> **FILED** <br> UNITED STATES DISTRICT COURT <br> DENVER, COLORADO <br><br> FEB 15 2022 <br> JEFFREY P. COLWELL <br> CLERK |

DEFENDANT'S REQUEST FOR REDUCTION IN SENTENCE UNDER COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Pursuant to 18 U.S.C. § 3582(c)(1)(A), Tramell Thomas, hereinafter Defendant, respectfully moves this court for a reduction in sentence due to the continuous threat of COVID-19

## I. Background

On November 30th 2017, Defendant was found guilty by a jury trial for one count of Conspiracy to defraud the government with respect to claims, in violation of 18 U.S.C. § 286, and six counts of Aiding and Abetting mail fraud, in violation of 18 U.S.C. § 1341 and 2.

1.

On June 4th 2019, Defendant was sentenced to 120 months and 3 years of supervised release with a restitution order of ~~█████~~ $563,890.85

## II. Application of the Liberal Construction Doctrine

As a pro se inmate, Defendant has no benefit of formal training ~~as~~ as an attorney and no access to a law library or computer. As a result of his status, this motion must be held to less stringent standards than those drafted by attorneys. (Haines v. Kerner, 404 U.S. 519 (1972).

## III. Exhausted Remedies

Defendant has exhausted his remedies pursuant to 18 U.S.C. § 3582(c)(1)(A). -<u>Please see Exhibit A.</u>

## IV. Extraordinary and Compelling Reasons

Per FSA, the Court has broad discretion in determining what constitutes as extraordinary and compelling reasons ~~that~~ would warrant a reduction in sentence. Defendant is cognizant that the Court is fully aware of the mayhem, turmoil, and catastrophic affects that COVID-19 has had not only in our great nation, but on a global scale. Therefore, he will not burden the Court with countless examples of COVID-19 and it's affect on mankind. However, Defendant would like to briefly mention one example - the one that lies behind the walls of confinement. Imagine what this pandemic has done inside the prison system. Everyday for the last 2 years has been nothing but continuous lockdowns. Your only view is that of watching other inmates around you contracting the virus and then being

2.

sent to another unit - slowly but surely. You're taking every precaution necessary to stay safe, but nothing is preventing the inevitable. You're sitting there literally waiting to contract the virus. It is no surprise that correctional institutions have consistently been the nation's largest known sources of COVID-19 infections. This is despite all attempts by the BOP to prevent the virus from entering these facilities, including the lockdown measures that the BOP implemented as their response to the virus. Despite assurances from the BOP and the Department of Justice that the BOP has systems in place to deal with COVID-19, it is clear that the federal prisons are dramatically overwhelmed by the virus and ill-equipped to deal with the outbreak - leading to an increasing number of corrections staff getting sick and inmates contracting the virus.

    Prisons also lack the medical staff and equipment needed to monitor and treat large numbers of infected patients. And those who develop severe complications may not receive timely treatment, making them less likely to recover and survive. In the federal system, the combination of overcrowding, chronic staffing shortages and aging facilities makes prison facilities particularly ill-equipped to adapt to social distancing, ventilation, sanitation and other health guidelines that the Centers for Disease Control and Prevention has issued to mitigate the spread of the Coronavirus and different variants.

    Defendant has been diagnosed with conditions that makes him more susceptible for severe infection according to CDC. <u>- Please see Exhibit B.-</u>

3.

Also, Defendant has experienced extreme adverse reactions from previous vaccinations due to his immune disorder. Defendant could not walk for over a week after his last vaccination. Defendant contracted COVID-19 in December 2020 and experienced a level of illness that is incomparable to any sickness that he experienced in his entire life. He thought he would die. Defendant still suffers from long haulers of COVID-19 in which the facility has stated that they are unable to treat. Please see Exhibit B-1. COVID-19 long Haulers have been deemed as disabilities according to the American Disability Act.

Phoenix FCI is currently operating at Level 3 (RED) due to the Omicron outbreak. Please see Exhibit C.

Furthermore, when the Defendant was sentenced, the Court recommended that the Defendant receive "full credit for time served in pretrial detention." Please see Exhibit D

BOP Awarded the Defendant full time credit for pretrial detention dating back to 3·8·16, giving the Defendant an estimated release date of 10·2·24. Please see Exhibit E This release date qualified the Defendant to participate in RDAP (Residential Drug Abuse Program). The interview for the program was conducted at Victorville FCI, however, Victorville does not offer the program so on 8·31·21 the Defendant was transferred to Phoenix FCI in order to participate in the program. Completion of the program (with the 10·2·24 release date) would have made the Defendant eligible for release in the fall of 2022. Once the Defendant arrived at Phoenix

4.

FCI, he was advised by his case manager that his date has been changed to 10-2-26 and that he would not be able to participate in the program until 2024. PLEASE SEE Exhibit F & G. The Defendant and his family was absolutely devastated. Defendant then spoke to his grandmother (his voice of reason) and she said "maybe this is God's way of creating another path." This inspired the Defendant to reach out to Choice Recovery to see if they offered a program similar to RDAP. To the Defendant's surprise, they did. Defendant was accepted to participate in the programs at Choice Recovery in the event that he is released. PLEASE SEE Exhibit H. Omicron was beginning to emerge at the time.

## V. § 3553(a)

The Court must consider the factors under 18 U.S.C. § 3553(a) and the Sentencing Guidelines policy to determine whether a reduction in sentence is warranted. Importantly, evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a § 3582(c) proceeding. In Pepper v. United States, 562 U.S. 476, 131 S.Ct. 1229, 1241, 179 L.Ed.2d 196 (2011), the Court emphasized the important nature of post-sentence rehabilitation, stating that "there would seem to be no better evidence than a defendant's post incarceration conduct." Indeed, the Court continued, "Post-sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to impose a sentence

5.

sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(A)(2)." The Defendant has received over 28 certificates (16 listed on program review, 12 enclosed; 1 from a faith based program called Threshold that's not on file but picture of graduation is enclosed; 1 completed but have yet to receive certificate) during his incarceration. Defendant also has a low-risk to recidivate according to his PATTERN score. PLEASE SEE exhibit I. Defendant has not received any disciplinary infractions and is considered low security custody. Choice Recovery offers all the FSA needs that the unit team recommends for the Defendant - Family/Parenting, Substance Abuse; Trauma. PLEASE SEE exhibits H; I - underlined items Defendant has paid his assessment fee in full and has a comprehensive plan to pay off the remaining restitution order in a expeditious manner in hopes to finally being closure in ~~case~~ ~~to~~ this case for all parties involved. PLEASE SEE exhibit I. Defendant is remorseful at how the last arrest took place so he created a non profit organization called Vertically Integrated Communities in order to bridge the gap between police officers and the community. Defendant is waiting for approval before registering the non profit. However, Defendant did reach out to Sgt. Tammy Thompson with the Phoenix Police Department After

6.

reading his article in the Arizona Republic about police and community unification. Defendant has not heard back from Sgt. Thompson, but he will continue to try.

Defendant also played an instrumental role in a mental health project called "The Rebuild Your Mind" that was later passed into legislation - Senate Bill 21-138. <u>Please see Exhibit K.</u> Defendant is extremely proud of this particular project and he is confident that this Bill will help reduce crime and develop safer communities in the district of Colorado. It is our goal to make Colorado the most efficient Trauma-Informed, Trauma-Conscious, Trauma-Responsive state in the nation. Defendant views this as a way to give back to the communities that he has previously taken from. Defendant has future plans to honor the community in various programs.

Pertaining to § 3553 (a)(1)-(2), the government was comfortable offering the Defendant a 51 month sentence in return for a plea deal. Therefore, the 168 months (the amount that the government seeked before the adjustment for obstruction of justice following the arrest) was punishment not for the conduct, but for Defendant's decision to put the government to its proof. It bore no relationship at all to the severity of the offense conduct. That is a 117 month difference simply for the Defendant exercising his right to a jury trial. Defendant has now done close to 51 months without including good time.

7.

## VI. Conclusion

When the Court sentenced the Defendant, the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought by a global pandemic. Therefore, the Defendant is requesting a 23-33 percent reduction from the original sentence. This is how the Defendant arrived at this number. The 23 percent represents the time that BOP first awarded the Defendant but later took away. As previously stated, the government offered Defendant a plea of 51 months which would fall into the top range of Base level 18, Criminal History IV - 41-51 months. Starting from there, once you add the 2 point enhancement for obstruction of justice during arrest and 3 points for not accepting responsibility - that would put it in Base level 23, 70-87 months. 26-33 percent would represent the top end of that range.

With this reduction, the Defendant's sentence would still be significantly longer than any of the co-conspirators, none of whom had to endure being incarcerated during a pandemic. They have all been released for longer than 18 months now, and by the government's own assertion, for conduct similar or more severe than the Defendant's. During Mercedes Diaz's sentencing, the Court asked the government to rank the conspirators for culpability and the government stated that Defendant was #2 or #3.

8.

The 3553(a) factors now support a lesser sentence than when the court imposed the original sentence.

This proposed sentence modification does not stray too far from the original sentence and will make Defendant eligible for early release via FSA, therefore the Defendant is praying for a favorable outcome.

Lastly, the Defendant realizes that he cannot change his past, but he can dictate his future. He is truly sorry and remorseful for any pain that his actions may have inflicted. He will continue his efforts in righting his wrongs and will always strive ~~at~~ making a profound difference in our communities. This is his way of showing God that he is grateful for all His Blessings.

Respectfully Submitted,

_/s/ Tramell Thomas_

Tramell Thomas
Phoenix FCI
37910 N. 45th Ave
Phoenix, Arizona
85086

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document has been mailed this 7th day of February 2022

_/s/ Tramell Thomas_

9.